JESSICA M. SIMON – SBN 277581
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Blvd., 12th Floor
Encino, California 91436
Tel.: (818) 501-3800
Fax: (818) 501-2985
Email: jsimon@hrhlaw.com

Attorneys for Creditor,
BANK OF AMERICA, N.A.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WILLIAM DOKOS BUTLER and ANNE HARMSEN BUTLER,<br><br>Debtors. | CASE NO.: 25-51814<br><br>CHAPTER 11<br><br>**MOTION OF BANK OF AMERICA, N.A. TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing<br>Date: October 23, 2026<br>Time: 10 a.m.<br>Ctrm: 215 (Hon. Cara Masako Porter) or Remote<br><br>(Hearing conducted via Zoom or in person - see notice filed and served concurrently herewith)<br><br>[Notice of Hearing, Declarations of Cami Corkery and Jessica Simon filed concurrently herewith] |

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

**TO THE HONORABLE CARA MASAKO PORTER, DEBTORS, DEBTORS' ATTORNEY, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:**

**MOTION**

Bank of America, N.A. ("Bank") moves this Honorable Court on October 23, 2026 at 10 a.m. PST in the above-captioned Court for entry of an order dismissing the chapter 11 bankruptcy case of William Dokos Butler and Anne Harmsen Butler (the "Debtors"). The Motion is made upon the grounds that, among other things, there has been, and will continue to be, a substantial or continuing loss to, or diminution of, the estate, there is no reasonable likelihood of rehabilitation, the Debtors have grossly mismanaged the estate, and the Debtors have, and continue to, fail to comply with reporting requirements, each of which serves as an independent basis warranting dismissal. Dismissal is in the best interest of creditors to return this case to status quo, given the Debtors' lack of liquidity, defunct and closed businesses, real property headed to foreclosure, and lack of meaningful and contingent assets for the estate.

The relief sought herein is based on 11 USC § 1112(b), Federal Rule of Bankruptcy Procedure 2002, Local Bankruptcy Rule 9014-1(b)(1)(C), the Notice filed concurrently, this Motion and Memorandum of Points and Authorities, the Declarations of Cami Corkery and Jessica Simon filed concurrently and the exhibits thereto, and all papers, records and documents on file with the Court, and upon evidence, oral and documentary, that may be presented during the hearing on the Motion.

**Opposition**: Pursuant to Local Bankruptcy Rule 9014-1(c)(1), "[a]ny opposition shall be filed and served on the initiating party at least 14 days prior to the actual scheduled hearing date. Any reply shall be filed and served at least 7 days prior to the actual scheduled hearing date."

Dated: September 25, 2026

HEMAR, ROUSSO & HEALD, LLP

/s/ *Jessica Mickelsen Simon*

By: ____________________________
JESSICA M. SIMON
Attorneys for Creditor,
BANK OF AMERICA, N.A.

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 1

A. The Indebtedness to the Bank ..... 1

1. The Loan, Card Agreement, and Debtors' Guarantees ..... 1

B. Borrower's Bankruptcy Case ..... 2

C. Pappas Piping Bankruptcy Case. ..... 2

D. Bank's State Court Lawsuit and Writs of Attachment ..... 3

E. Debtors' Bankruptcy Case ..... 3

1. The Debtors' Nondisclosures and Inaccurate Information in Their Schedules and SOFA ..... 4

a. Undisclosed Pappas payments, equity interest, and expected compensation from the Pappas Bankruptcy Case ..... 4

b. Inaccurate Disclosure of Debtors' interest in and valuation of the Ormond Corporation ..... 5

c. Unsubstantiated and undisclosed HFLP write-down (from $2.95M to $250k) based on a purported liquidation clause in an operating agreement ..... 5

d. Debtors' gross under-reporting of past income and anticipated income ..... 6

e. Undisclosed financial accounts and transfers ..... 7

f. Undisclosed postpetition transfer in March MOR ..... 8

g. Undisclosed separate households and divorce ..... 8

h. Sale of the Debtors' real property, the Mora Property, was unsuccessful and the property is headed to foreclosure ..... 8

2. Debtors' Failure to Comply with Reporting Requirements & Attempted Substitution of Counsel ..... 9

III. ARGUMENT ..... 9

A. Section 1112 ..... 9

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 3 of 21

B. Cause Exists to Dismiss the Debtors' Case. ..... 10

1. There Is Continuing Loss To, or Diminution of, the Estate and There is No Reasonable Likelihood of Rehabilitation. ..... 10

a. Standard. ..... 10

b. Continuing Loss or Diminution in Value ..... 11

c. There is No Chance of Rehabilitation. ..... 12

d. Gross Mismanagement of the Estate. ..... 12

e. Failure to Comply Timely with Reporting Requirements ..... 14

2. Dismissal is In the Best Interests of Creditors ..... 15

IV. CONCLUSION ..... 15

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 4 of 21

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

## TABLE OF AUTHORITIES

Cases | Page

*Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989) ........ 10

*In re AdBrite Corp.*, 290 B.R. 209 (Bankr. S.D.N.Y. 2003) ........ 11

*In re ARS Analytical, LLC*, 433 B.R. 848 (Bankr. D. N.M. 2010) ........ 11

*In re Babayoff,* 445 B.R. 64 (Bankr. E.D. N.Y. 2011) ........ 14

*In re Charles Street African Methodist Episcopal Church of Boston*, 499 B.R. 66 (Bankr. D. Mass. 2013) ........ 13, 14

*In re Congaree Triton Acquisitions, LLC*, 492 B.R. 843 (Bankr. D. S.C. 2012) ........ 13

*In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184 (Bankr. D. P.R. 2014) ........ 14

*In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51 (6th Cir. BAP 2013) ........ 10, 11, 12

*In re Dutch Flat Inv. Co.*, 6 B.R. 470 (Bankr. N.D. Cal. 1980) ........ 10

*In re East Coast Airways, Ltd.,* 146 B.R. 325 (Bankr. E.D.N.Y. 1992) ........ 10

*In re First Lewis Road Apartments, Inc.*, 11 B.R. 576 (Bankr. E.D. Va. 1981) ........ 11

*In re Kanterman,* 88 B.R. 26 (S.D.N.Y. 1988) ........ 10

*In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707 (Bankr. D. Md. 2011) ........ 14

*In re Little Creek Dev. Co.,* 779 F.2d 1068 (5th Cir. 1986) ........ 1

*In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014) ........ 10, 11

*In re Miller*, 496 B.R. 469 (Bankr. E.D. Tenn. 2013) ........ 11

*In re Moore Const. Inc.*, 206 B.R. 436 (Bankr. N.D. Tex. 1997) ........ 10

*In re Motel Properties, Inc.,* 314 B.R. 889 (Bankr. S.D. Ga. 2004) ........ 10

*In re No Rust Rebar, Inc.*, 641 B.R. 412 (Bankr. S.D. Fla. 2022) ........ 13

*In re Om Shivai, Inc.*, 447 B.R. 459 (Bankr. D. S.C. 2011) ........ 10

*In re Paterno*, 511 B.R. 62 (Bankr. M.D. N.C. 2014) ........ 11

*In re Sunnyland Farms, Inc.*, 517 B.R. 263 (Bankr. D. N.M. 2014) ........ 12

*In re Tucker*, 411 B.R. 530 (Bankr. S.D. Ga. 2009) ........ 14

*In re V Companies*, 274 B.R. 721 (Bankr. N.D. Ohio 2002) ........ 11

*In re Vanilla Woodward, LLC*, 501 B.R. 322 (Bankr. E.D. Mich. 2012) ........ 13

*In re Winshall Settlor's Trust,* 785 F.2d 1136 (6th Cir. 1985) ........ 1



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 5 of 21

*In re Wright Air Lines, Inc.*, 51 B.R. 96 (Bankr. N.D. Ohio 1985) ........................................... 11

Statutes

11 U.S.C. § 1112 ........................................................................................... 9, 10
11 U.S.C. § 1112(b)(1) ................................................................................... 9, 15
11 U.S.C. § 1112(b)(4) ................................................................................... 9, 12
11 U.S.C. § 1112(b)(4)(A) ................................................................................... 9
11 U.S.C. § 1112(b)(4)(B) ................................................................................. 12

Other Authorities

Local Rule 2015-2(b) ...................................................................................... 9, 14

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 6 of 21

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The "purpose of Chapter 11 reorganization is to assist financially distressed [debtors] by providing them with breathing space in which to return to a viable state." *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986) (*quoting In re Winshall Settlor's Trust,* 785 F.2d 1136, 1137 (6th Cir. 1985)). There is no hope of rehabilitation in this case to return to that state. Indeed, the Debtors bankruptcy case has demonstrated that they are only capable of gross mismanagement of their companies and assets, including among other things lack of material financial disclosures and assets, and inability to comply with reporting requirements. Bank respectfully requests that the Court dismiss this case without delay, which is in the best interests of creditors under the totality of these circumstances.

## II.

## STATEMENT OF FACTS

### A. The Indebtedness to the Bank

#### 1. The Loan, Card Agreement, and Debtors' Guarantees

On or about March 1, 2024, Movant extended a line of credit to borrower Decorative Plumbing Distributors, LLC ("Borrower") in the original principal amount of $4,000,000.00 for the operation of its business (the "LOC"), pursuant to terms of a Note dated March 1, 2024 (the "Note") and Master Credit Agreement and Financial Covenant Agreement of even date (together, the "LOC Agreement"). (Declaration of Cami Corkery ["Corkery Decl."], ¶ 7, **Exhibit 1** [Proof of Claim ("POC"), attaching the Note and LOC Agreement].) Pursuant to terms of the Note and LOC Agreement, Borrower agreed to repay the monies extended. (Id.) Borrower borrowed and received up to $4,000,000.00 pursuant to the terms of the Note. (Id.) The LOC expired by its terms on February 28, 2025 (the "Expiration Date"). (Id.)

On or about March 1, 2024, Borrower also executed and delivered to Bank a Commercial Card Account Agreement ("Card Agreement"). (Corkery Decl., ¶ 8, Ex. 1.) Borrower agreed to repay such amounts pursuant to the terms and conditions contained therein. (Id.) Pursuant to the terms of the Card

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 7 of 21

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

Agreement, amounts charged under the Card Agreement are all due and immediately payable in full. (Id.)

To induce Bank to enter into the Note, on or about March 1, 2024, Debtors executed and delivered to Bank a Guaranty and Collateral Agreement (the "Guaranty"), unconditionally guaranteeing the prompt payment and performance of the obligations of Borrower under the Note. (Corkery Decl., ¶ 9, Ex. 1.) Debtors have failed to pay their obligations under the Guaranty. (Id.) By virtue of the above, Debtors are jointly and severally liable to Bank for the indebtedness owed by the Borrower. (Id.) On or about March 1, 2024, Debtors also executed and delivered to Bank a Personal Guaranty, as incorporated in the Card Agreement, unconditionally guaranteeing the payment and performance of the obligations of Borrower under the Card Agreement. (Id.) Debtors have failed to pay their obligations under the Personal Guaranty, and they are jointly and severally liable to Bank for the indebtedness owed by Borrower. (Id.) (The Guaranty and Personal Guaranty are together referred to herein as the "Guarantees.")

**B. Borrower's Bankruptcy Case**

Borrower defaulted under terms of the LOC, and subsequently on January 28, 2025 (the "Petition Date"), filed a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court, pending as Case No. 25-40140 ("Borrower's Bankruptcy Case"). (Corkery Decl., ¶ 10.)

On July 15, 2025, Bank filed a Motion to Convert the Borrower's Bankruptcy Case to Chapter 7, which the Court granted by Order entered on September 1, 2025 (Dkt. 127 in the Borrower's Bankruptcy Case). The Borrower's Bankruptcy Case is still pending. (Corkery Decl., ¶ 11.)

**C. Pappas Piping Bankruptcy Case.**

On January 6, 2026, Pappas Piping Services, Inc. ("Pappas") filed a case under Chapter 11 of the Bankruptcy Code, pending as Case No. 8:26-bk-10033 ("Pappas Bankruptcy Case"). Mr. Butler is the President, CFO and Secretary of Pappas. (Corkery Decl., ¶ 12, Ex. 9 [Status report filed January 20, 2026 in the Pappas Bankruptcy Case reflecting Mr. Butler's interest in Pappas].) On June 10, 2026, Pappas filed a Disclosure Statement (Dkt. 126) and Chapter 11 Plan of Reorganization (Dkt. 125 in the Pappas Bankruptcy Case).[1] As part of the Disclosure Statement, Pappas filed a declaration of Joshua

---

[1] Bank respectfully requests the Court to take judicial notice of the Plan and Disclosure Statement filed

Teeple, Pappas's Chief Restructuring Officer, which attached a list of creditors as Exhibit 4. (Id., ¶ 13, Ex. 10 [redacted Disclosure Statement with Teeple Decl. and Ex. 4 thereto].) On Exhibit 4, Mr. Butler is listed as a secured creditor of $537,923.70 and an unsecured creditor in the amounts of $20,786.00 and $495,000.00. (Id.) The Pappas Plan is a 100% payment plan, such that all unsecured creditors are expected to get paid in full. (Id.) A Plan confirmation hearing is scheduled on October 27, 2026 in the Pappas Bankruptcy Case. (Id., Ex. 11.)

**D. Bank's State Court Lawsuit and Writs of Attachment**

On or about March 12, 2025, Bank filed a Complaint against the debtors William D. Butler and Anne H. Butler (the "Debtors") for breach of their Guarantees in the Superior Court of the State of California, County of Santa Clara, pending as Case No. 25CV460941 (the "State Court Action"). In the State Court Action, the Bank filed applications for Writs of Attachment ("WOA") against the Debtors' property. (Corkery Decl., ¶ 14, Ex. 1 [POC].) The State Court granted the WOA applications, and Right to Attach Orders ("RTAOs") were entered on June 18, 2025 against the Debtors' real properties and personal property. (Id.) The RTAOs were recorded in the County of Santa Clara and attach to the Debtors' real property located at 730 Mora Drive, Los Altos, CA 94024 (the "Mora Property"). (Id. [recorded RTAOs as Ex. 4 to POC]).

**E. Debtors' Bankruptcy Case**

On November 20, 2025 (the "Petition Date"), the Debtors filed a Chapter 11 voluntary petition for relief under the Bankruptcy Code in this Court.

On November 20, 2025, Debtors filed their Schedules and Statement of Financial Affairs ("SOFA"). (*See* Dkt. 1; Declaration of Jessica Simon ["Simon Decl."], ¶ 2, **Exhibit 2** [Schedules]; Corkery Decl., ¶ 16.)

On January 14, 2026, a continued 341 Meeting of Creditors ("341 Meeting") was held, during which Bank appeared, by and through counsel, to question the Debtors on the assets and liabilities of

---

in the Pappas Bankruptcy Case, pursuant to Federal Rule of Evidence 201, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017. *See* Fed. R. Evid. 201(b)(2), (c)(2); Fed. R. Bankr. P. 9017.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

their estates. (Simon Decl., ¶ 3, **Exhibit 4** [341 Recording]; Corkery Decl., ¶ 17.)

Based on the Debtors' testimony at the 341 Meeting, Bank and the United States Trustee ("UST") requested that Debtors amend their Schedules and SOFA to correct numerous deficiencies in their Schedules and SOFA. (Simon Decl., ¶ 4, Ex. 4; Corkery Decl., ¶ 17.)

On June 15, 2026, Debtors filed their Amended Schedules and SOFA ("Amended Schedules and SOFA," Dkt. 60). The Amended Schedules and SOFA do not correct the numerous nondisclosures and material inaccuracies of their financial information. (Simon Decl., ¶ 5, **Exhibit 3** [Amended Schedules]; Corkery Decl., ¶ 17.)

On July 22, 2026, Bank conducted a 2004 Examination (the "2004 Exam") of Debtors, pursuant to the Court's Order Granting Bank's Application for Examination (the "2004 Order," Dkt. 41). Pursuant to the 2004 Order, the Court also ordered the Debtors to produce documents requested in the Bank's Motion for 2004 Exam ("2004 Motion"). (*See* Dkts. 39, 41.) Debtors failed to produce all documents, which resulted in months of meet and confer discussions on the documents. To date, all documents have not been produced and the meet and confer discussions did not resolve the myriad issues in this case, as detailed herein, thus leading to this Motion. (Corkery Decl., ¶ 18; Simon Decl., ¶¶ 6-7, **Exhibit 5**.)

### 1. The Debtors' Nondisclosures and Inaccurate Information in Their Schedules and SOFA

The Debtors' Schedules and SOFA are riddled with red flags demonstrating diminution of the estate and no reasonable likelihood of rehabilitation, gross mismanagement of the estate, and continued failure to comply with reporting requirements. Specifically, but without limitation, some of the continued deficiencies follow:

a. **Undisclosed Pappas payments, equity interest, and expected compensation from the Pappas Bankruptcy Case.** Despite an anticipated recovery from the Pappas Bankruptcy Case, ranging from approximately **$557,000.00 to $1,053,709.70** (*see* Simon Decl., ¶ 6, Ex. 5, Tr. 23:15-20, 24:14-25, Tr. 77:7-25, 78:9-81:17[2]) plus anticipated annual compensation of approximately

[2] All citations to "Tr." are to **Exhibit 5**, 2004 Examination Transcript, attached to the Simon Decl., ¶ 6.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

**$175,000 per year** from Pappas for 20 hours per week of work (*see* Tr. 22:15-22], (1) Amended Schedule A/B, line 19 lists the Debtors' interest in Pappas Piping Service Inc. as **"N/A%"** and values it at **$0.00** (*see* Tr. 21:7-22:15), (2) Mr. Butler could not identify where the Pappas loans, anticipated claim recovery, or anticipated income were disclosed in his amended schedules (*see* Tr. 85:4-25, 86:1-15); and (3) Amended Schedule I identifies only Simple Products Corporation as Mr. Butler's employer, with $5,000.02 in monthly gross wages, and lists zero in each category of "other income" (*see* Tr. 90:4-25, 91:21-92:13). (*See* Exs. 2 and 3 Schedules and Amended Schedules.) The Amended Schedules and SOFA have not been further amended to correct these deficiencies. (Simon Decl., ¶ 6; Tr. 90:22-25, 92:23-93:4 (confirming Pappas-related income/equity remained unamended as of the 2004 Exam]; *see* Exs. 2 and 3 [Schedules and Amended Schedules].)

b. **Inaccurate Disclosure of Debtors' interest in and valuation of the Ormond Corporation.** The Debtors inaccurately subscribe no value to the shares of the Ormond Corporation (**"Unknown**") or ownership interest in it (**"N/A%")** when it is owned by the Debtors' Ormond Corporation 401(k) Plans with a scheduled value totaling **$945,462.23**, the majority of which reflects the value of the Ormond Corporation (*see* Exs. 3 Amended Schedules; *see* Tr. 103:9-20 [confirming a 401(k) balance of "942,000-plus," of which approx. $100,000 is Anne Butler's separate 401(k) and the remainder is the Ormond Corporation 401(k) holding the Pappas Piping shares); the $945,462.23 figure appears at No. 21 on Amended Schedule A/B, Ex. 3].)

c. **Unsubstantiated and undisclosed HFLP write-down (from $2.95M to $250k) based on a purported liquidation clause in an operating agreement.** Amended Schedule A/B lists Anne Butler's 13% HFLP LLC interest at **$250,000** (*see* Tr. 109:15-25, 110:1-25, 33:6-24), despite the Butlers valuation of her interest in HFLP at **$2.95 million** in a November 2023 personal financial statement (*see* Tr. 32:5-9, 32:14-16, 33:6-24). (*See* Amended Schedule A/B, No. 19, Ex. 3.) At the 2004 Exam, the Debtors confirmed the November 2023 valuation of her interest but reduced the value of her

---

Tr. 23:15-19, 24:14-22 (unsecured claim $515,786 + secured claim $537,923.70 = $1,053,709.70); Tr. 77:7-17 (secured claim $537,923.70 plus separate unsecured claim $20,786, reconciling to approx. $558,709.70)].)

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

interest in HFLP in their schedules by a whopping **91.5%** based on an oral liquidation value by Ms. Butler's father. (*See* Tr. 32:5-9, 32:14-16, 33:6-24, 110:1-14 [confirming the $2.95 million November 2023 valuation was reduced to $250,000 — a reduction of approx. 91.5% — based on the figure provided by Ms. Butler's father].) That supposed oral liquidation value is based on purported language in an operating agreement containing a bankruptcy-triggered liquidation provision that supposedly would reduce Ms. Butler's interest in HFLP. Nonetheless, Bank subsequently received a copy of the HFLP Operating Agreement, which merely provides at Section 10.1.1. that upon an "adjudicated bankruptcy, insolvency, or permanent legal incapacity of any Member [including Ms. Butler], the company shall have the option to purchase the entire Membership Interest of the Member," which shall be the member's "pro rata share of the company's book value, as determined in accordance with generally accepted accounting principles (GAAP) and based on the most recent annual financial statement." It further provides that the company elects to purchase the membership interest and may "Pay in full or over 5 years of equal payments beginning 60 days from election, interest to accrue at five percent (5%) . . ." It does <u>not</u> provide anything about a reduction in the valuation or interest and does not substantiate or support Mr. Butler's testimony explaining the write-down. It further provides at Section 10.2 that: "Each Member shall have the right to sell, transfer or assign, for cash, or cash and notes, by a written instrument, all or part of its right to receive distributions of cash or other property from the Company . . . ." . (Simon Decl., ¶ 8, Ex. 12 [pertinent, redacted and excerpted provisions of the HFLP Operating Agreement].)

d. **Debtors' gross under-reporting of past income and anticipated income.** Amended Schedule I reports $5,000.02 in gross monthly wages for Mr. Butler, no income for Ms. Butler, and no other monthly income. (*See* Exhs. 2 and 3, Schedule I, Dkt. I and Amended Schedule I, Dkt. 60.) The SOFA, Part 2, No. 4 reports only $16,153.90 for Mr. Butler from January 1, 2026 through the petition date, $8,196.00 in 2024, and $7,350 in 2023. (*See* Tr. 157:16-25 (calculating wages of "16,153" for Mr. Butler; cf. Tr. 87:6-25 (SOFA reflects gross income of $8,196 for one debtor and $7,639 for calendar year 2024); SOFA, Part 2, No. 4, Dkt. 1.) Nonetheless, at the 2004 Exam, Mr. Butler testified that he received $175,000 annually from Pappas in 2024 (and 2023) and conceded that the "whole section needs to be rechecked," "it's just not clerically accurate." (*See* Tr. 27:22-28:11 [confirming

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

receipt of Pappas Piping income through December 2024 at $175,000 annually]; Tr. 157:20-25 [conceding the whole wage section "needs to be rechecked," "it's just not clerically accurate"], 88:4-85:7.) Moreover, the Schedules have not been amended to include the $175,000 in anticipated annual compensation from the Pappas Piping Bankruptcy. (*See* Tr. 22:15-22, 92:7-25, 93:1-4.) During the 2004 Exam, Mr. Butler further confirmed that in their Schedules they failed to disclose Debtors' salaries – $100,000.00 to Mr. Butler and $125,000.00 to Ms. Butler – that they received from Decorative in 2023 and 2024. (*See* Tr. 153:4-14.)

e. **Undisclosed financial accounts and transfers.** Amended SOFA Part 8, Question 20 asks whether, during the year before filing, financial accounts or instruments held in the Debtors' names or for their benefit were closed, sold, moved, or transferred. The amended SOFA answers **"No,"** but that should have been "Yes" based on the following (*see* Tr. 44:20-25, 45:1-8); Amended SOFA Part 8, Question 20).

i. Seven Bank of America accounts were closed on June 18, 2025 before the November 20, 2025 petition date and not disclosed on the bankruptcy schedules — accounts ending in 3831, 4131, 4186, 4748, 6565, 5096, and 5122 (*see* Tr. 48:23-49:24 [confirming seven Bank of America accounts closed June 18, 2025 and not disclosed on the schedules because "in [Mr. Butler's] mind," they were their children's accounts but that does not negate the disclosure requirement].).

ii. Merrill Lynch Wealth Management Savings Account #2535 was closed on June 18, 2025 but not disclosed (*see* Tr. 48:3-17 [identifying account ending -2535 as a Merrill Lynch-branded Bank of America savings account that was closed]).

iii. Merrill Lynch Account 52-24923 had a net portfolio value of $504,500.77 and Merrill Lynch Account 852-92465 had a net portfolio value of $17,253.43 as of January 21, 2025 but valued at $0 on Schedule A/B, Item No. 18. Not only is it unclear where those funds went (no clear documentation) but that also would require a "yes" answer on Question 20 (*see* Tr. 41:19-25, 42:1-17, 42:20-43:2).

iv. Between May and June 2025, Debtors cashed out $19,309.63 and transferred securities of $52,795.41 out of Fidelity Account #1614 but did not disclose that (*see* Tr. 55:11-25).

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800


Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 13 of 21

f. **Undisclosed postpetition transfer in March MOR.** At the 2004 Exam, Ms. Butler testified to a **$72,484.97** postpetition withdrawal from a Mountain America account on March 6, 2026 supposedly to consolidate funds into the Chase account, but the March 2026 Monthly Operating Report ("MOR") did not reflect the asserted deposit. To be clear, the MOR reflects the withdrawal by check from the Mountain America account, but not the deposit into the Chase account. The $72,484.97 also is not reflected in the April 2026 MOR. (*See* Tr. 65:5-122 [withdrawal); Tr. 66:4-10 (disbursement not reflected in the monthly operating report]; Simon Decl., ¶ 8, **Exhibit 6** [March 2026 MOR], **Exhibit 7** [April 2026 MOR].) While Debtors' Amended Schedules A/B identify Mountain America savings, money-market, and checking accounts, it does not identify the post-petition transfer.

g. **Undisclosed separate households and divorce.** At the 2004 Exam, Mr. Butler testified he resides predominantly in California, and Ms. Butler resides at 929 Claremont Drive, Bountiful, Utah (since June 2025), and pays $3,000.00 per month in rent. (*See* Tr. 160:23-161:1, 161:23-25 [Mr. Butler confirming California residence]; Tr. 163:12-23, 163:4-6 [Ms. Butler confirmed her residence at 929 Claremont Drive, Bountiful, Utah for $3,000/month rent].) They also confirmed that their divorce was entered on December 16, 2025 in Utah — four weeks post-petition — without disclosing this to the Court or filing Form 106J-2 required by Schedule J, Part 1, No. 1. (*See* Tr. 164:15-24 [divorce decree entered December 16, 2025 in Davis County, Utah, approx. four weeks post-petition; bankruptcy court not notified of the change in marital status]; Tr. 166:19-25, 167:2-6, 167:19-23 [Form 106J-2/Schedule J separate-household discussion].) When asked why they did not submit Form 106J-2 for separate households, Ms. Butler testified the situation was "nuanced" and that they had shared expenses. (*See* Tr. 167:19-24, 168:1-5.) But that was after they testified that they were living separately in different states.

h. **Sale of the Debtors' real property, the Mora Property, was unsuccessful and the property is headed to foreclosure.** Although Debtors, in part, filed their bankruptcy petition to try to sell the Mora Property, the first lienholder obtained stay relief to foreclose. (*See* Order Granting Motion for Relief From the Automatic Stay, Dkt. 64.) Thus, any equity for the estate that could have been realized will not be realized.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

**2. Failure to Comply with Reporting Requirements & Attempted Substitution of Counsel**

a. By April 22, 2026, Debtors had not filed any monthly operating reports in this case, resulting in the Court ordering an Order to Show Cause re: Dismissal or Conversion ("OSC," Dkt. 45).

b. While the OSC was vacated (Dkt. 51), Debtors have continued with their noncompliance of reporting requirements by failing to file a MOR ending July 2026. Debtors last MOR was filed on July 28, 2026 (Dkt. 62) for the reporting period ending June 30, 2026. The MOR ending July 2026 should have been filed no later than August 21, 2026. In addition, the MOR ending August should have been filed no later than September 21, 2026. (*See* Local Rule 2015-2(b).) To date, neither have been filed. (Simon Decl., ¶ 8.)

c. Debtors representation by counsel is currently unclear and in flux. On September 2, 2026, Debtors filed a Substitution of Attorney for Debtors in Possession (Dkt. 66) to substitute their prior counsel, Mr. Brent Meyer, with new counsel, Mr. Daniel Chudleigh. On September 7, 2026, this Court denied Debtors application to employ Mr. Chudleigh (Dkt. 68). Most recently, on September 18, 2026, the Debtors filed a second Substitution of Attorney (Dkt. 70) to substitute Mr. Chudleigh with new counsel, David N. Chandler, and disclosing payment of $30,000 by Ms. Butler's father as a retainer trust deposit, plus an hourly fee arrangement (Dkt. 71). At the time of this filing, an Order has not been entered on the Substitution.

## III.

## ARGUMENT

**A. <u>Section 1112</u>.**

Any party in interest may move to dismiss a Chapter 11 case. 11 U.S.C. § 1112(b)(1). Section 1112(b)(4), sets forth the following examples of what may constitute "cause" for dismissal. These examples include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," and the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" [*see* 11 U.S.C. § 1112(b)(4)(A), (B), and (F)]. The factors in


Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 15 of 21

Section 1112(b)(4) are not exclusive, but indicative. *See e.g.*, *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989) (Code's enumerated grounds are "not exhaustive"); *In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) ("the list contained in § 1112(b)(4) is illustrative, not exhaustive"); *In re Dutch Flat Inv. Co.*, 6 B.R. 470, 472 (Bankr. N.D. Cal. 1980) ("the causes for dismissal specifically enumerated in that subsection as grounds are not exclusive").

**B. <u>Cause Exists to Dismiss the Debtors' Case</u>.**

The Bank submits that "cause" exists to dismiss the Debtors' Chapter 11 bankruptcy case pursuant to 11 USC §1112(b)(4) for diminution, lack of reasonable likelihood of rehabilitation, gross mismanagement of the estate, and the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter"

**1. <u>There Is Continuing Loss To, or Diminution of, the Estate and There is No Reasonable Likelihood of Rehabilitation</u>.**

**a. Standard.**

In deciding whether to dismiss a Chapter 11 case, the Court must engage in a two-step analysis, under which it first decides whether, post-petition, the debtor has suffered or continued to experience a negative cash flow or, alternatively, declining asset value, and then considers whether the debtor has any reasonable chance of rehabilitation. *In re Om Shivai, Inc.*, 447 B.R. 459 (Bankr. D. S.C. 2011).

For purposes of establishing a substantial or continuing loss to, or diminution of, the estate, the loss to the estate may be either "substantial" or "continuing"; it need not be both. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 57 (6th Cir. BAP 2013). There need not be significant diminution in the estate in order to justify dismissal of a Chapter 11 case on a "substantial or continuing loss or diminution" theory; all that needs to be found is that the estate has suffered **some** diminution in value. *Mense*, *supra*, 509 B.R. at 284 (*citing In re East Coast Airways, Ltd.,* 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992) and *In re Kanterman,* 88 B.R. 26, 29 (S.D.N.Y. 1988)).

The bankruptcy court must look beyond the debtor's financial statements and fully evaluate the present condition of the debtor's estate. *In re Moore Const. Inc.*, 206 B.R. 436, 438 (Bankr. N.D. Tex. 1997); *In re Motel Properties, Inc.,* 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004). The requirement can be satisfied by showing a negative cash flow after the entry of the order for relief or a showing of an actual

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

depreciation in the value of estate property. *In re First Lewis Road Apartments, Inc.*, 11 B.R. 576, 577 (Bankr. E.D. Va. 1981). Likewise, an inability on the part of the debtor to pay current expenses as they come due, combined with an absence of reliable income, can satisfy the standard. *In re Paterno*, 511 B.R. 62, 67 (Bankr. M.D. N.C. 2014).

Furthermore, the term "rehabilitation," for purposes of establishing the lack of a reasonable likelihood of rehabilitation under the statute, means to put back in good condition and reestablish on a sound basis. *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003); *In re V Companies*, 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002)(*citing In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985)); *In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D. N.M. 2010). The absence of a reasonable likelihood of rehabilitation is not the same as the absence of a reasonable likelihood of reorganization. While "reorganization" can involve liquidation, "rehabilitation" signifies something more. *In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013); *Creekside, supra,* 489 B.R. at 57.

A reasonable likelihood of rehabilitation is absent when the debtor's business operations do not justify the continuance of its reorganization effort. *Mense*, 509 B.R. 269, 284. This requirement is a much more demanding standard than the absence of a reasonable likelihood of reorganization. If the Chapter 11 debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time, then the debtor may have a reasonable likelihood of rehabilitation. *Creekside, supra,* 489 B.R. at 57.

**b. Continuing Loss or Diminution in Value.**

Continuing diminution of Debtors' estate is the only thing that is happening in this case. Since the Debtor has not filed a MOR since the month ending June 2026, we do not know the current state of their finances.

Nonetheless, based on the past MORs, what we do know is that the estate has consistently reflected a loss with assets decreasing in value post-petition: the March MOR reflects a loss of $-1,585.00 ending March 31, 2026, when compared to an even greater loss of $-10,781.00 in the June MOR ending June 30, 2026 (*see* Exhibits 6 and 8 [March and June MORs, Part 9.j. (difference between total income and total expenses)]). Moreover, the Mora Property, the estate's principal remaining real property asset, is now proceeding toward foreclosure, eliminating any equity that might otherwise have

been available to creditors; the Debtors have generated no apparent wage income and any income that Debtors may have in the future from the Pappas Piping Bankruptcy was not disclosed; hundreds of thousands of dollars have moved out of the Debtors' Bank of America, Merrill Lynch, Fidelity, and Mountain America accounts, both before and after the Petition Date, without adequate disclosure, explanation or documentation; and all of the Debtors' businesses are either bankrupt, closed, defunct, or any value has been materially and substantially written down. As a result, Bank submits that this requirement has been satisfied.

**c. There is No Chance of Rehabilitation.**

The question with respect to this example of "cause" is not whether the Debtors can confirm a plan of reorganization, but whether they can rehabilitate (*i*.e, put themselves back on solid financial footing within a reasonable amount of time). *Creekside,* 489 B.R. at 57.

As set forth above, Debtors claim to any financial footing appears to depend entirely on confirmation of a Chapter 11 plan in the Pappas Piping Bankruptcy, which distributions Debtors may not see for years and which Debtors have consistently failed to disclose in this case (including any interest in Pappas Piping in their Schedules and Amended Schedules). In addition, Debtors' 13% interest in HFLP was written down more than 90% based on an unverified, self-interested oral valuation from Ms. Butler's father that is unsupported by the operating agreement. The Debtors' other business interests — including Borrower, Bilt Distributions, Shapes Supply, DPD Group, H&H Cattle, and WMCO — are each closed, defunct, or in bankruptcy, and none generate income for the Debtors. Ms. Butler draws no salary, and Mr. Butler's disclosed salary is only $5,000.02 per month (*see* Exhibit 3, Part 2, Amended Schedule I), and the Debtors' primary remaining real property, the Mora Property, is now proceeding toward foreclosure.

In short, the Debtors' current status, and their history, all suggest that the Debtors cannot rehabilitate on any timeline that makes sense, and it has been ten months since this case was filed.

**d. Gross Mismanagement of the Estate.**

The next example of "cause" for dismissal of this case is gross mismanagement of the estate. 11 U.S.C. § 1112(b)(4)(B). To constitute cause for dismissal of a Chapter 11 case, the alleged gross mismanagement must occur post-petition. *In re Sunnyland Farms, Inc*., 517 B.R. 263, 267 (Bankr. D.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 18 of 21

N.M. 2014). For purposes of this provision, mismanagement of the estate is concerned with the handling of estate assets. *In re Charles Street African Methodist Episcopal Church of Boston*, 499 B.R. 66, 114 (Bankr. D. Mass. 2013). It can also be found based on breaches in fiduciary duty, such as filing inaccurate and misleading MORs [*In re Congaree Triton Acquisitions, LLC*, 492 B.R. 843, 852 (Bankr. D. S.C. 2012)], making significant omissions from the statement of financial affairs [*In re Vanilla Woodward, LLC*, 501 B.R. 322, 323-324 (Bankr. E.D. Mich. 2012)], and commingling a debtor's assets with the assets of related entities, in a manner that, at best, constitute incompetence and gross mismanagement of the affairs of debtor and, at worst, caused substantial loss to the estate for which there was little reasonable likelihood of recovery unless action was taken, and where the exit strategy was not reasonably likely (*In re No Rust Rebar, Inc.*, 641 B.R. 412, 423-429 (Bankr. S.D. Fla. 2022)).

This may be the most prominent reason for dismissal: the record reflects that the Debtors have grossly mismanaged their estate. They have moved substantial funds among themselves and through a web of related entities and accounts without disclosure in this case post-petition — Bank of America, Merrill Lynch, Fidelity, and Mountain America accounts, and companies including Borrower, Pappas Piping, Ormond Corporation, and HFLP — and without contemporaneous or substantiated documentation showing where the money went or why. They withdrew $72,484.97 postpetition from a Mountain America account on March 6, 2026, without any indication of where that money went (i.e., they testified that it went into the Chase account but there is no record of that in the March or April MORs). The Debtors' Schedules and SOFA, both as originally filed and as amended, contain significant, repeated omissions: undisclosed equity and anticipated income exceeding $1 million from the Pappas Piping Bankruptcy, an unexplained 91.5% write-down of Ms. Butler's HFLP interest based on an unsubstantiated liquidation clause, undisclosed closures of at least nine financial accounts, and an undisclosed divorce and change in household status — all of which remain uncorrected, even after the Debtors were given the opportunity to amend over nine months ago following the 341 Meeting when these issues initially were raised in January 2026, and again after the 2004 Exam in July 2026. The Debtors have also failed to timely and accurately file their monthly operating reports, as detailed below. Each of these categories – commingling of assets among related entities, material omissions from the Schedules and SOFA, an undisclosed post-petition transfer, and inaccurate or missing MORs – are

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

independently recognized as, and bases of, gross mismanagement.

**e. Debtors' Failure to Comply Timely with Reporting Requirements**

To establish a Chapter 11 debtor's unexcused failure to satisfy reporting requirements as cause to dismiss the case, the movant must specify a filing or reporting requirement and prove a failure to satisfy it. *Charles Street, supra*, 499 B.R. 66, 115. An unexcused failure to report or file required information will constitute cause under this provision even if the debtor attempted to cure the deficiency. *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 199 (Bankr. D. P.R. 2014).

The debtor's operating reports and the financial disclosures which accompany them are the lifeblood of the Chapter 11 process, as providing the means by which creditors can monitor the debtor's post-petition operations, and the filing of such reports is an important obligation of a Chapter 11 debtor in possession, which the debtor's habitual noncompliance with calls into question the debtor's ability to effectively reorganize. *In re Tucker*, 411 B.R. 530, 535-536 (Bankr. S.D. Ga. 2009). Thus, the failure to file monthly operating statements, whether based on an inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal from Chapter 11. *Costa Bonita, supra*, 513 B.R. at 199; *see also In re Babayoff,* 445 B.R. 64, 81 (Bankr. E.D. N.Y. 2011).

In addition to the actual filing of the required reports, the court will also consider evidence of the accuracy of the reports since the mere filing of a piece of paper by the debtor would be meaningless if the content is inaccurate, misleading, or wrong. *Tucker, supra*, 411 B.R. at 532. The Court has the discretion to determine whether the debtor's reporting failure rises to the level of "cause." *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 716 (Bankr. D. Md. 2011).

In this case, the Debtors have repeatedly failed to satisfy their reporting obligations. By April 22, 2026, the Debtors had not filed a single monthly operating report in this case, prompting the Court to issue an Order to Show Cause re: Dismissal or Conversion. Although the OSC was later vacated, the Debtors' compliance has not held: their last MOR, for the period ending June 30, 2026, was filed on July 28, 2026, and the MOR for the period ending July 31, 2026 and MOR for the period ending August 31, 2026 (due by August 21, 2026 and September 21, 2026, respectively, under Local Rule 2015-2(b)) remain unfiled as of the filing of this Motion. The Debtors also have failed to disclose or account for the whereabouts of the $72,484.97 withdrawn from the Mountain America account postpetition. In

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800


Case: 25-51814 Doc# 73 Filed: 09/25/26 Entered: 09/25/26 15:09:18 Page 20 of 21

addition, the Debtors' Schedules and SOFA, as originally filed and as amended, have never been made accurate or complete, despite the Bank's and the UST's requests that the Debtors correct the deficiencies identified at the 341 Meeting. This pattern of late, incomplete, and inaccurate reporting constitutes the unexcused failure that Section 1112(b)(4)(F) is designed to address.

**2. Dismissal is In the Best Interests of Creditors**

Dismissal is in the best interests of creditors. 11 U.S.C. § 1112(b)(1). The Debtors' liquid accounts have already been closed. The Debtors only real property is headed to foreclosure and any payments from the Pappas Piping Bankruptcy – by the Debtors own testimony – either are being funneled into a retirement account to shield them from the estate or will take years to realize value for this estate (if it materializes, and no plan has been confirmed in the Pappas Piping Bankruptcy by the time of this hearing). Any wages from that bankruptcy case also will take years to materialize. The Debtors' gross mismanagement, non-disclosures, and underreporting of assets and income in this case further demonstrate that they and their records are unreliable. The best scenario in this situation is to return this case to status quo before the Petition was filed and allow the creditors to continue with their collection actions and realize what they can from the Debtors without further hindrance or delay. Bank respectfully requests that the Court dismiss this case on this Motion.

## IV.

## CONCLUSION

Based on the foregoing, cause exists to dismiss this Chapter 11 case under 11 U.S.C. § 1112(b) for continuing diminution of the estate with no reasonable likelihood of rehabilitation, gross mismanagement of the estate, and unexcused failure to timely and accurately satisfy the Debtors' reporting obligations. The Bank respectfully requests that the Court enter an order dismissing this chapter 11 case, with a bar on refiling.

Dated: September 25, 2026

HEMAR, ROUSSO & HEALD, LLP

/s/ *Jessica Mickelsen Simon*

By: ______________________________

JESSICA M. SIMON
Attorneys for Creditor,
BANK OF AMERICA, N.A.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800