JESSICA M. SIMON – SBN 277581
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Blvd., 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
Email: jsimon@hrhlaw.com

Attorneys for Creditor,
BANK OF AMERICA, N.A.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WILLIAM DOKOS BUTLER and ANNE HARMSEN BUTLER,<br><br>Debtors. | CASE NO.: 25-51814<br><br>CHAPTER 11<br><br>**DECLARATION OF CAMI CORKERY IN SUPPORT OF BANK OF AMERICA, N.A.'S MOTION TO DISMISS CHAPTER 11 CASE**<br><br>Hearing<br>Date: October 23, 2026<br>Time: 10 a.m.<br>Ctrm: 215 (Hon. Cara Masako Porter) or Remote<br><br>(Notice of Motion, Motion and Memorandum, and Declaration of Jessica Simon filed concurrently herewith) |

I, CAMI L. CORKERY, declare and state as follows:

1. I am over the age of 18 years. If called upon to testify as a witness, I could and would competently testify as set forth herein.

2. I am employed by BANK OF AMERICA, N.A., a national banking association ("Bank") as its Senior Vice President. I am charged with the collection of the obligations described herein below.

3. In my capacity as a Senior Vice President of Bank, I am familiar with the identity and mode of preparation of the documents which comprise the claim described below. Each of the entries upon the account of the Debtors William Dokos Butler and Anne Harmsen Butler ("Debtors") was and is made in the regular course of Bank's business at or about the time of the actual transaction, by a person with knowledge of said events. It is the business practice of Bank to make and keep careful records of all charges and payments of its accounts and these records are audited regularly to preserve their accuracy. Additionally, I am also personally familiar with the account of the Debtors subsequent to transfer of the account to Bank's special assets division. To the extent necessary to make this declaration I have reviewed Bank's books and records.

4. I make this declaration in support of Bank's Motion to Dismiss (the "Motion").

5. I have personally examined each document attached as an exhibit to this declaration.

6. Bank's books and records for Debtors' account herein were kept in the manner described above.

**The Loan, Card Agreement, and Debtors' Guarantees**

7. On or about March 1, 2024, Bank extended a line of credit to Decorative Plumbing Distributors, LLC ("Borrower") in the original principal amount of $4,000,000.00 for the operation of its business (the "LOC"), pursuant to terms of a Note dated March 1, 2024 (the "Note") and Master Credit Agreement and Financial Covenant Agreement of even date (together, the "LOC Agreement"). Attached hereto as **Exhibits 1** is a true and correct copy of the Proof of Claim ("POC") that Bank caused to be filed in this case, including a true and correct copy of the Note as Exhibit 1 thereto. The POC and all Exhibits thereto are incorporated herein by this reference as though set forth in full. Pursuant to terms of the Note and LOC Agreement, Borrower agreed to repay the monies extended. Borrower borrowed and received up to $4,000,000.00 pursuant to the terms of the Note. The LOC expired by its

terms on February 28, 2025 (the "Expiration Date").

8. On or about March 1, 2024, Borrower also executed and delivered to Bank a Commercial Card Account Agreement ("Card Agreement"). A true and correct copy of the Card Agreement is attached to the POC as Exhibit 2 thereto. Borrower agreed to repay such amounts pursuant to the terms and conditions contained therein. Pursuant to the terms of the Card Agreement, amounts charged under the Card Agreement are all due and immediately payable in full.

9. To induce Bank to enter into the Note, on or about March 1, 2024, Debtors executed and delivered to Bank a Guaranty and Collateral Agreement (the "Guaranty"), unconditionally guaranteeing the prompt payment and performance of the obligations of Borrower under the Note. A true and correct copy of the Guaranty is attached to the POC as Exhibit 3 thereto. Debtors have failed to pay their obligations under the Guaranty. By virtue of the above, Debtors are jointly and severally liable to Bank for the indebtedness owed by Borrower. On or about March 1, 2024, Debtors also executed and delivered to Bank a Personal Guaranty, as incorporated in the Card Agreement, unconditionally guaranteeing the payment and performance of the obligations of Borrower under the Card Agreement. A true and correct copy of the Personal Guaranty of the Card Agreement is located on page 14 of the Card Agreement, which is Exhibit 2 to the POC. Debtors have failed to pay their obligations under the Personal Guaranty, and they are jointly and severally liable to Bank for the indebtedness owed by Borrower. The Guaranty and Personal Guaranty are together referred to herein as the "Guarantees."

**Borrower's Bankruptcy Case**

10. Borrower defaulted under terms of the LOC, and subsequently on January 28, 2025 (the "Petition Date"), filed a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court, pending as Case No. 25-40140 ("Borrower's Bankruptcy Case"). Bank was a senior secured creditor in that case.

11. On July 15, 2025, Bank, by and through its counsel, filed a Motion to Convert the Borrower's Bankruptcy Case to Chapter 7, which the Court granted by Order entered on September 1, 2025 (Dkt. 127 in the Borrower's Bankruptcy Case). Upon information and belief, the Borrower's Bankruptcy Case is still pending.

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 3 of 114

## Pappas Bankruptcy Case

12. On January 6, 2026, Pappas Piping Services, Inc. ("Pappas") filed a case under Chapter 11 of the Bankruptcy Code, pending as Case No. 8:26-bk-10033 ("Pappas Bankruptcy Case"). I know this as I personally reviewed the bankruptcy petition and further bankruptcy documents filed in the Pappas Bankruptcy Case. This includes a Status Report that Pappas filed on or about January 20, 2026 providing that Mr. Butler is the President, CFO and Secretary of Pappas. Attached hereto as **Exhibit 9** is a true and correct copy of the Status Report that I reviewed. On June 10, 2026, Pappas filed a Disclosure Statement (Dkt. 126) and Chapter 11 Plan of Reorganization ("Pappas Plan," Dkt. 125 in the Pappas Bankruptcy Case.

13. I personally reviewed the Disclosure Statement and Pappas Plan. As part of the Disclosure Statement, Pappas filed a declaration of Joshua Teeple, Pappas's Chief Restructuring Officer, which attached a list of creditors as Exhibit 4. Attached hereto as **Exhibit 10** is a true and correct copy of pertinent parts of the declaration of Joshua Teeple and Exhibit 4 thereto. Based on my review of Mr. Teeple's declaration and Exhibit 4, Mr. Butler is listed on Exhibit 4 as a secured creditor of $537,923.70 and an unsecured creditor in the amounts of $20,786.00 and $495,000.00. Based on my review of the Pappas Plan, I understand and believe that the Pappas Plan is a 100% payment plan, such that all unsecured creditors are expected to be paid in full. A Plan confirmation hearing is scheduled in the Pappas Bankruptcy Case on October 27, 2026. Attached hereto as **Exhibit 11** is a true and correct copy of the Court's order in the Pappas Bankruptcy Case approving the Disclosure Statement and setting the Pappas Plan confirmation hearing.

## State Court Lawsuit and Writs of Attachment

14. On or about March 12, 2025, Bank filed a Complaint against Debtors for breach of their Guarantees in the Superior Court of the State of California, County of Santa Clara, pending as Case No. 25CV460941 (the "State Court Action"). In the State Court Action, Bank filed applications for Writs of Attachment ("WOA") against the Debtors' property. The State Court granted the WOA applications, and Right to Attach Orders ("RTAOs") were entered on June 18, 2025 against the Debtors' real properties and personal property. The RTAOs were recorded in the County of Santa Clara and attach to the Debtors' real property located at 730 Mora Drive, Los Altos, CA 94024 (the "Mora Property").

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800


Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 4 of 114

True and correct copies of the recorded RTAOs are attached to the POC as Exhibit 4 thereto.

**Debtors' Bankruptcy Case**

15. On November 20, 2025 (the "Petition Date"), the Debtors filed a Chapter 11 voluntary petition for relief under the Bankruptcy Code.

16. I personally reviewed the Debtors' Schedules and Statement of Financial Affairs ("SOFA") filed on the Petition Date (Dkt. 1), and the Debtors' Amended Schedules and SOFA ("Amended Schedules and SOFA") filed on or about June 15, 2026 (Dkt. 60). Based on my review, the Debtors' Schedules and SOFA and Amended Schedules and SOFA contain numerous deficiencies and inaccuracies, which are set forth in detail in the Motion.

17. Based on the inaccuracies in the original Schedules and SOFA, Bank appeared, by and through its counsel, at the January 14, 2026 continued 341 Meeting of Creditors ("341 Meeting") to question the Debtors on the assets and liabilities of their estate. Upon information and belief, I understand that at the 341 Meeting, Bank and the United States Trustee ("UST") requested that Debtors amend their Schedules and SOFA to correct numerous deficiencies therein. Debtors subsequently amended their Schedules and SOFA, which I reviewed, but failed to correct numerous nondisclosures and inaccuracies of their financial information.

18. On July 22, 2026, Bank, by and through its counsel, conducted a 2004 Examination (the "2004 Exam") of Debtors, pursuant to the Court's Order Granting Bank's Application for Examination (the "2004 Order," Dkt. 41). In Bank's Motion for 2004 Exam ("2004 Motion"), Bank also requested that Debtors produce various documents to it, which the Court granted. (*See* Dkts. 39, 41.) Debtors failed to produce all documents, which resulted in months of meet and confer discussions between Bank's counsel and Debtors' counsel on the documents that still required production. To date, all documents have not been produced and the meet and confer discussions did not resolve the myriad issues in this case, thus leading to the filing of this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 24th day of September 2026, at Glendale, California.

[signature]
CAMI L. CORKERY

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

# EXHIBIT 1

**U.S. Bankruptcy Court**

**California Northern Bankruptcy Court**

Notice of Electronic Claims Filing

The following transaction was received from Simon, Jessica on 3/6/2026 at 4:06 PM PST

File another claim

| | |
|---|---|
| **Case Name:** | William Dokos Butler and Anne Harmsen Butler |
| **Case Number:** | 25-51814 |
| **Creditor Name:** | Bank of America, N.A.<br>c/o Jessica M. Simon<br>Hemar, Rousso & Heald, LLP<br>15910 Ventura Blvd., 12th Floor<br>Encino, CA 91436 |
| **Claim Number:** | 16 Claims Register |
| **Amount Claimed:** | $3116388.21 |
| **Amount Secured:** | |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Proof of Claim.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=3/6/2026] [FileNumber=40727558-0
] [024ba6251269cbf84666bf09ac13aedde9c79b904348f9ca82dc2519d8b112b4401
0ee56e3d17216981147249f5c3ed20d15cf8f5d884c7c5acabe4d004618d2]]

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | WILLIAM DOKOS BUTLER |
| Debtor 2 (Spouse, if filing) | ANNE HARMSEN BUTLER |
| United States Bankruptcy Court for the: | Northern District of California (State) |
| Case number | 25-51814 |

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Bank of America, N.A.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ______

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes. From whom? ______

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: Hemar, Rousso & Heald, LLP, Attn: Jessica M. Simon | Name: Bank of America, N.A., Attn: Cami Corkery, SVP/Special Assets |
| Number Street: 15910 Ventura Blvd., 12th Floor | Number Street: 611 N. Brand Boulevard (Mail Code: CA7-504-09-93) |
| City: Encino State: CA ZIP Code: 91436 | City: Glendale State: CA ZIP Code: 91203 |
| Contact phone (818) 501-3800 | Contact phone (747) 272-9094 |
| Contact email jsimon@hrhlaw.com | Contact email cami.corkery@bofa.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

[X] No
[ ] Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No
[ ] Yes. Who made the earlier filing? ______

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

[X] No
[ ] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**

$ 3,116,388.21

**Does this amount include interest or other charges?**

[ ] No
[x] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Attachment Liens & Guaranty of Note and Card Agreement

**9. Is all or part of the claim secured?**

[ ] No
[x] Yes. The claim is secured by a lien on property.

**Nature of property:**

[x] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
[ ] Motor vehicle
[x] Other. Describe: All property set forth in Attachment 9(c) to Recorded Notices of Attachment

**Basis for perfection:** Recorded Notices of Attachment

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ Unknown

**Amount of the claim that is secured:** $ Unknown

**Amount of the claim that is unsecured:** $ Unknown (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 3,116,388.21 (matured note)

**Annual Interest Rate** (when case was filed) 6.224320%

[ ] Fixed
[x] Variable

**10. Is this claim based on a lease?**

[X] No
[ ] Yes. **Amount necessary to cure any default as of the date of the petition.** $ ____________

**11. Is this claim subject to a right of setoff?**

[X] No
[ ] Yes. Identify the property: ____________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

- [X] No
- [ ] Yes. *Check one:*

| | | Amount entitled to priority |
|---|---|---|
| [ ] | Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ ________ |
| [ ] | Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ ________ |
| [ ] | Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ ________ |
| [ ] | Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ ________ |
| [ ] | Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ ________ |
| [ ] | Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ ________ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

- [ ] I am the creditor.
- [X] I am the creditor's attorney or authorized agent.
- [ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
- [ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 03/06/2026
MM / DD / YYYY

/s/ *Jessica M. Simon*
Signature

**Print the name of the person who is completing and signing this claim:**

Name: JESSICA M. SIMON
First name | Middle name | Last name

Title: Attorney for creditor, Bank of America, N.A.

Company: HEMAR, ROUSSO & HEALD, LLP
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 15910 Ventura Blvd., 12th Floor
Number | Street

Encino | CA | 91436
City | State | ZIP Code

Contact phone: (818) 501-3800 | Email: jsimon@hrhlaw.com

## SUMMARY OF PROOF OF CLAIM

In re: William Dokos Butler and Anne Harmsen Butler, Chapter 11
Bankr. N.D. Cal. Case No. 25-51814

BANK OF AMERICA, N.A. ("Claimant") submits this summary of its claim in the above-referenced bankruptcy. Claimant is a creditor in this Chapter 11 bankruptcy case of William Dokos Butler and Anne Harmsen Butler (the "Debtors").

### A. The Note

On or about March 1, 2024, Decorative Plumbing Distributors LLC ("Borrower") executed and delivered to Claimant a Note for purposes of providing a $4,000,000.00 line of credit for the operation of its business. A true and correct copy of the Note is attached hereto as **Exhibit 1** and incorporated herein by this reference as though set forth in full. Borrower agreed to repay those amounts pursuant to the terms and conditions contained in the Note. Borrower borrowed and received up to $4,000,000.00 pursuant to the terms of the Note. Claimant performed all of the terms and conditions of the Note, unless excused or prevented by the conduct of Borrower or the Debtors. The Note matured by its own terms on February 28, 2025, and payment in full was not made.

### B. The Card Agreement

On or about March 1, 2024, Borrower executed and delivered to Claimant a Commercial Card Account Agreement ("Card Agreement"). Borrower agreed to repay such amounts pursuant to the terms and conditions contained therein. A true and correct copy of the Card Agreement is attached hereto as **Exhibit 2** and incorporated herein by this reference as though set forth in full. Claimant performed all of the terms and conditions of the Card Agreement required to be performed by it, unless excused or prevented by the conduct of the Borrower or the Debtors. Pursuant to the terms of the Card Agreement, amounts charged under the Card Agreement are all due and immediately payable in full. Borrower and/or Debtors have failed to pay those amounts

The Note and Card Agreement further provide that Borrower and Debtors will pay all of Claimant's expenses of any nature, including but not limited to reasonable attorneys' fees and costs incurred in enforcing its terms.

### C. The Guaranty

To induce Claimant to enter into the Note, on or about March 1, 2024, Debtors executed and delivered to Claimant a Guaranty and Collateral Agreement, unconditionally guaranteeing the prompt payment and performance of the obligations of Borrower under the Note. A true and correct copy of the Guaranty that the Debtors executed in connection with the Note is attached hereto as **Exhibit 3** and incorporated herein by this reference as though set forth in full. Borrower and/or the Debtors have failed to pay their obligations under the Guaranty despite demands to do so. By virtue of the above, Debtors are jointly and severally liable to Claimant for the indebtedness owed by the Borrower.

To induce Claimant to enter into the Card Agreement, on or about March 1, 2024, Debtors executed and delivered to Claimant a Personal Guaranty, unconditionally guaranteeing the

payment and performance of the obligations of Borrower under the Card Agreement. A true and correct copy of the Personal Guaranty is made a part of the Card Agreement as **Exhibit 2**, page 14. Borrower and/or the Debtors have failed to pay their obligations under the Personal Guaranty despite demands to do so. By virtue of the above, Debtors are jointly and severally liable to Claimant for the indebtedness owed by the Borrower.

(The Note, Card Agreement, Guaranty, Personal Guaranty and all related loan documents are collectively referred to herein as the "Loan Documents.")

**D. Attachment**

Pre-petition, Claimant obtained Writs of Attachment against Debtors from the Superior Court of California, County of Santa Clara. On September 5, 2025, Claimant caused Notices of Attachment to be recorded in Santa Clara County, as Instrument Nos. 25865568 and 25865569 (together, the "Notices of Attachment"). True and correct copies of the Notices of Attachment are attached hereto as **Exhibit 4** and incorporated herein by this reference as though set forth in full. Pursuant to the Notices of Attachment, Claimant's lien attached to the real property located at 730 Mora Drive, Los Altos, CA 94024 and all other property set forth in Attachment 9(c) to each of the Notices of Attachment. The value of all of the Debtors' property attached is unknown.

**E. Amount of Claim**

Debtors agreed to repay the monthly payments due pursuant to the terms and conditions of the Loan Documents. Debtors breached their obligations under the Loan Documents by failing to make the monthly payments on the Loan Documents, as and when required. Pursuant to the terms of the Loan Documents, the total amount due, owing and unpaid from Debtors to Claimant as of November 20, 2025 ("Petition Date") equals not less than **$3,116,388.21** broken down as follows:

*As to the Note:*

| | |
|---|---|
| Principal | $3,013,627.74 |
| Accrued Interest | $1,563.28 |
| Total | **$3,015,191.02** |
| *Per Diem:* **$521.05** | |

*As to the Card Agreement:*

| | |
|---|---|
| Principal | $101,197.19 |
| Total | **$101,197.19** |

**TOTAL CLAIM: $3,116,388.21**

Late charges and other fees and costs may continue to accrue so long as the Debtors are in default, and Claimant reserves the right to amend this proof of claim accordingly. All other rights, remedies, claims and defenses are expressly reserved, and nothing herein constitutes a waiver.

# EXHIBIT 1

BANK OF AMERICA

# NOTE

| TRANSCTION SUMMARY | | | |
|---|---|---|---|
| **Credit Limit:** | $4,000,000.00 | **Date of Note:** | March 1, 2024 |
| **Interest Rate:** | Term SOFR Daily Floating Rate plus 2.15 percentage points | | |
| **Expiration Date:** | February 28, 2025 | | |
| **Loan Account Number:** | [redacted] | | |
| **Loan Fee:** | $8,000.00 | **Unused Credit Limit Fee:** | N/A |
| **Name(s) of Borrower:** | Decorative Plumbing Distributors LLC | | |
| **Location of Borrower:** | 41841 Albrae St | | |
| **City:** | Fremont | **State:** CA | **Zip:** 94538-3144 |
| **Direct Debit?** | | Yes | |
| **Bank of America Deposit Account No.:** | | [redacted] | |
| **Owner of Account:** | | Decorative Plumbing Distributors LLC | |

This Note, dated and effective as of March 1, 2024, is entered into between Decorative Plumbing Distributors LLC (collectively and individually, the "Borrower") and Bank of America, N.A. (the "Bank") to govern the Credit Facility, in connection with the Master Credit Agreement, dated as of March 1, 2024 (as amended from time to time, the "Master Credit Agreement"), between the Borrower, each other "Borrower" party thereto, and the Bank, the Covenant Agreement executed in connection therewith, each Related Guaranty and Collateral Agreement executed in connection herewith and each other Related Collateral Document, if any, executed in connection herewith.

1. **DEFINITIONS.**

1.1 **General**. Unless otherwise defined herein, capitalized terms used in this Note shall have the respective meanings ascribed thereto in Section 1 of the Master Credit Agreement and as otherwise may be provided in other provisions of the Credit Documents.

1.2 **In this Note**:

"Expiration Date" means the date set forth in the Transaction Summary.

"Guarantor" means, collectively and individually, each person or entity (if any) who signs as a Guarantor under the Related Guaranty and Collateral Agreement.

"Note" means this Note between the Borrower and the Bank, as amended from time to time.

"Obligations" means all loans, advances, debts, principal, interest, and other obligations now or hereafter existing, of the Borrower and the Guarantor to the Bank arising under (i) this Note, (ii) each Related Guaranty and Collateral Agreement as they relate to the Credit Facility, (iii) the Master Credit Agreement and the Covenant Agreement, in each case, as they relate to the Credit Facility (including under Sections 2, and 6 of the Master Credit Agreement), and (iv) under any other agreement or instrument, including any Related Collateral Document, executed in connection with the Credit Facility.

"Related Collateral Document" means each Related Guaranty and Collateral Agreement, if Collateral is pledged thereunder, and each mortgage, deed of trust, pledge agreement, assignment, financing statement,

control agreement and other document as shall from time to time secure or relate to the Obligations, as amended from time to time.

"Related Guaranty and Collateral Agreement" means the Guaranty and Collateral Agreement among the Borrower, each Guarantor and the Bank executed in connection with the Credit Facility, as amended from time to time.

"Transaction Summary" means the summary of terms relating to the Credit Facility set forth on page one of this Note.

## 2. CREDIT FACILITY.

### 2.1 Credit Facility Amount.

(a) During the availability period described below, the Bank will provide a line of credit (the "Credit Facility") to the Borrower. The amount of the Credit Facility (the "Credit Limit") is the amount stated in the Transaction Summary.

(b) This is a revolving line of credit. During the availability period, the Borrower may repay principal amounts and reborrow them.

(c) The Borrower agrees not to permit the principal balance outstanding to exceed the Credit Limit. If the Borrower exceeds this limit, the Borrower will immediately pay the excess to the Bank upon the Bank's demand.

### 2.2 Availability Period.

The Credit Facility is available between the date of this Note and the Expiration Date, or such earlier date as the availability may terminate as provided in this Note or any other Credit Document.

The availability period for the Credit Facility will be considered renewed if and only if the Bank has sent to the Borrower a written notice of renewal for the Credit Facility (the "Renewal Notice"). If the Credit Facility is renewed, it will continue to be subject to all the terms and conditions set forth in this Note except as modified by the Renewal Notice. If the Credit Facility is renewed, the term "Expiration Date" shall mean the date set forth in the Renewal Notice as the Expiration Date, and all outstanding principal plus all accrued interest shall be paid on the Expiration Date. The same process for renewal will apply to any subsequent renewal of the Credit Facility. A renewal fee may be charged at the Bank's option. The amount of the renewal fee will be specified in the Renewal Notice.

### 2.3 Repayment Terms.

(a) The Borrower will make payments monthly on the day of the month specified in the billing statement, until payment in full of all principal outstanding under this Note. The amount of each interest payment shall be the amount of accrued interest on the Credit Facility as of the interest payment date or such earlier accrual date as indicated on the billing statement for such interest payment.

(b) The Borrower will repay in full all principal, interest, charges and other Obligations outstanding under this Note and the other Credit Documents no later than the Expiration Date.

(c) The Borrower may prepay the Credit Facility in full or in part at any time. Each prepayment, whether voluntary, by reason of acceleration or otherwise, will be accompanied by the amount of accrued interest on the amount prepaid through, but not including, the date of prepayment.

### 2.4 Interest Rate.

(a) The interest rate is a rate per year equal to the Term SOFR Daily Floating Rate plus the number of percentage points stated in the Transaction Summary (as modified under Section 2.4 of the Master Credit Agreement at the option of the Bank).

(b) The "Term SOFR Daily Floating Rate" is a fluctuating rate of interest which can change on each banking day. The rate will be adjusted on each banking day to equal the Term SOFR Screen Rate two (2) U.S. Government Securities Business Days prior to the date of determination for a one month term beginning on that

date; provided that if such rate is not published prior to 11:00 a.m. Eastern time on such determination date then the Term SOFR Daily Floating Rate will be the Term SOFR Screen Rate on the first U.S. Government Securities Business Day immediately prior thereto for a one month term beginning on that date, in each case, plus the SOFR Adjustment. If at any time the Term SOFR Daily Floating Rate or any Successor Rate is less than zero such rate shall be deemed to be zero for the purposes of this Note. If at any time the Term SOFR Daily Floating Rate or any Successor Rate is less than 1.25, such rate shall be deemed to be 1.25 percent for the purposes of this Note.] For purposes of this paragraph only:

(i) "CME" means CME Group Benchmark Administration Limited.

(ii) "SOFR" means the Secured Overnight Financing Rate as administered by the Federal Reserve Bank of New York (or a successor administrator).

(iii) "SOFR Adjustment" with respect to the Term SOFR Daily Floating Rate, means 0.11448%.

(iv) "Term SOFR Screen Rate" means the forward-looking SOFR term rate administered by CME (or any successor administrator satisfactory to the Bank) and published on the applicable Reuters screen page (or such other commercially available source providing such quotations as may be designated by the Bank from time to time).

(v) "U.S. Government Securities Business Day" means any day except for (a) a Saturday, (b) a Sunday or (c) a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in United States government securities.

(c) If at any time an interest rate index provided for in this Agreement (a "Reference Rate") is not available at such time for any reason or the Bank makes the determination to incorporate or adopt a new interest rate index to replace such Reference Rate in credit agreements, then the Bank may replace such Reference Rate with an alternate interest rate index and adjustment, if applicable, as reasonably selected by the Bank, giving due consideration to any evolving or then existing conventions for such interest rate index and adjustment (any such successor interest rate index, as adjusted, the "Successor Rate"). In connection with the implementation of any Successor Rate, the Bank will have the right, from time to time, in good faith to make any conforming, technical, administrative or operational changes to this Agreement as may be appropriate to reflect the adoption and administration thereof and, notwithstanding anything to the contrary herein or in any other loan document, any amendments to this Agreement implementing such conforming changes will become effective upon notice to the Borrower without any further action or consent of the other parties hereto.

**2.5 Use of Proceeds.** The proceeds of the Credit Facility shall be used solely for general corporate purposes.

## 3. LOAN FEE; INTEREST AND FEE CALCULATION.

**3.1 Loan Fee.** The Borrower agrees to pay a loan fee in the amount specified in the Transaction Summary. This fee is due on the date of this Note and will be paid as provided in the Disbursement and Fee Statement provided by the Bank.

**3.2 Late Fee.** To the extent permitted by law, the Borrower agrees to pay a late fee in an amount not to exceed four percent (4%) of any payment that is more than fifteen (15) days late. The imposition and payment of a late fee shall not constitute a waiver of the Bank's rights with respect to the Default.

**3.3 Returned Payment Fee.** The Bank, in its discretion, may collect from the Borrower a returned payment fee each time a payment is returned or if there are insufficient funds in the designated account when a payment is attempted through automatic payment.

**3.4 Default Rate.** Upon the occurrence of any Default or after maturity or after judgment has been rendered on any Obligation under any Note, all amounts outstanding under the Credit Documents, including any unpaid interest, fees, or costs, will at the option of the Bank bear interest at a rate which is 6.0 percentage points

(6.0%) higher than the rate of interest otherwise applicable to the applicable Credit Facility. This may result in compounding of interest. This will not constitute a waiver of any Default.

**3.5 Interest and Fee Calculation**. Except as otherwise stated in the Credit Documents, all interest and fees, if any, will be computed on the basis of a 360-day year and the actual number of days elapsed. This results in more interest or a higher fee than if a 365-day year is used. Installments of principal which are not paid when due under this Note or any other Credit Document shall continue to bear interest until paid. To the extent that any calculation of interest or any fee required to be paid under any Credit Document shall be less than zero, such rate shall be deemed zero for purposes of the Credit Documents. Any payments of principal shall be accompanied by interest accrued through, but not including, the date of such payment.

**3.6 Banking Days**. Unless otherwise provided in this Agreement, a banking day is a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the state where the Bank's lending office is located, and, if such day relates to amounts bearing interest at a Reference Rate, in New York City. All payments and disbursements which would be due or which are received on a day which is not a banking day will be due or applied, as applicable, on the next banking day.

## 4. CONDITIONS PRECEDENT.

Before the Bank is required to extend any credit to the Borrower under this Note, the following conditions precedent must be satisfied and the Bank must receive any documents and other items it may reasonably require, in form and content acceptable to the Bank, including any items specifically listed below.

**4.1 Note**. The Borrower shall have executed this Note.

**4.2 Master Credit Agreement**. The Borrower and each other "Borrower" party thereto shall have executed the Master Credit Agreement.

**4.3 Covenant Agreement.** The Borrower shall have executed the Covenant Agreement and thereby shall have agreed to be bound by the terms contained therein.

**4.4 Guaranty and Collateral Agreement**. The Borrower and each Guarantor, if applicable, shall have executed a Related Guaranty and Collateral Agreement, each Guarantor thereby shall have agreed to be bound by the terms of the Continuing and Unconditional Guaranty contained therein, this Note, the Master Credit Agreement and the Covenant Agreement and each applicable Obligor thereby shall have agreed to be bound by the terms of the Security Agreement contained therein.

**4.5 Subordination Agreements**. Subordination agreements in favor of the Bank signed by William D. Butler.

**4.6 KYC Information.**

(a) Upon the request of the Bank, the Borrower shall have provided to the Bank, and the Bank shall be reasonably satisfied with, the documentation and other information so requested in connection with applicable "know your customer" and anti-money-laundering rules and regulations, including, without limitation, the PATRIOT Act.

(b) If the Borrower qualifies as a "legal entity customer" under the Beneficial Ownership Regulation, it shall have provided a Beneficial Ownership Certification to the Bank if so requested.

**4.7 Perfection and Evidence of Priority**. Evidence that the security interests and liens in favor of the Bank securing the Credit Facility (including those in each Related Guaranty and Collateral Agreement and in each other Related Collateral Document), if any, are valid, enforceable, properly perfected in a manner acceptable to the Bank and prior to all others' rights and interests, except those the Bank consents to in writing.

**4.8 Payment of Fees**. All fees, expenses and other amounts due and owing to the Bank shall be paid. If any fee is not paid in cash, the Bank may, in its discretion, treat the fee as a principal advance under this Note or deduct the fee from the loan proceeds.

**4.9 No Default.** No Default or Event of Default shall exist or will result from the signing of this Note, the Master Credit Agreement or any other Credit Document or the extension of credit under this Note.

**4.10 Representations and Warranties**. The representations and warranties of each Obligor in each Credit Document shall be true and correct on the date hereof and immediately before and after giving effect to any extension of credit under this Note (except for representations and warranties that expressly relate to an earlier date, in which case such representations and warranties shall be true and correct as of such earlier date).

5. **GOVERNING LAW.** Except to the extent that any law of the United States may apply, this Note shall be governed and interpreted according to the laws of New York, without regard to any choice of law, rules or principles to the contrary. Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of the Bank under federal law. This Note is subject to the venue, jurisdiction and dispute resolution provision clauses set forth in the Master Credit Agreement.

This Note is executed as of the date first written above.

Bank:

**Bank of America, N.A.**

DocuSigned by:

By: ______________________________

684CF2947C56428...

Authorized Representative

Borrower:

**Decorative Plumbing Distributors LLC**

DocuSigned by:

By: ______________________________

70D708AEAED845D...

William D. Butler, Manager

# EXHIBIT 2

BANK OF AMERICA

# Commercial Card Account Agreement

## BANK OF AMERICA COMMERCIAL CARD ACCOUNT AGREEMENT

THIS COMMERCIAL CARD ACCOUNT Agreement (**"Agreement"**) governs Commercial Card Accounts and is made by and between Bank of America, N.A., (the **"Bank"**) and **Decorative Plumbing Distributors LLC ("Company")** and shall be effective as of **March 1, 2024 ("Effective Date")**.

**1. DEFINITIONS.**

**Account.** Each MasterCard® or VISA® account, including a Cardless Account, which the Bank issues to Company or to a Cardholder pursuant to this Agreement, with the features and uses described in Section 4below. Each reference in this Agreement to "the Account" will mean Company's Account, a Cardholder's Account, or any combination of them, as applicable;

**AML/Sanctions Laws.** All applicable laws relating to client identification, the prevention of money-laundering, terrorism, the use of proceeds of crime, economic or political sanctions, including Sanctions, and any other similar matter.

**Applications.** Proprietary Software and/or Materials accessed through Bank's digital platforms or through any of Bank's third party vendor sites; and any related services used to provide the Services, including (i) the Global Reporting Management System ("GRAM") hosted by MasterCard, (ii) a pin platform run by Bank, (iii) a payment center for US cardholders run by Total Systems, (iv) the Works System, and (v) any other third party vendor Bank may use from time to time.

**Authorized User.** Any user with your actual, implied or apparent authorization to use the Applications.

**Billing Statement.** The official invoice provided to Company, Participant and/or Cardholder which identifies each Transaction posted during the billing cycle, the date of each Transaction and the applicable fees and charges, payment amount due and Payment Due Date.

**Business Day.** Each day on which the Bank is open for business related to the services covered by this Agreement.

**Business Use.** Use for business-related purposes.

**Card** or **Commercial Card.** Each plastic charge card which the Bank issues for an Account which is not a Cardless Account.

**Card Administrator.** One or more individuals designated by Company in writing, as Bank's primary contact for the Accounts, who is authorized to take actions necessary or appropriate to maintain the Accounts, including without limitation designating persons to receive Accounts, receiving communications from Bank related to Accounts, requesting the closure of Accounts and otherwise communicating with Bank with respect to the Accounts.

**Cardholder.** An employee of Company or any other person who Company designates in writing and who the Bank approves to receive an Account or a Device, including a Cardless Account. If a Cardholder or a Card Administrator makes a Device or a number associated with a Cardless Account available for use by another party, that person will be considered a Cardholder.

**Cardless Account.** An Account for which the Bank assigns only an Account number, but provides no Card or Convenience Checks.

**Cash Advance.** Use of a Card or Account to obtain cash from a participating financial institution, merchant or Automated Teller Machine, to write a Convenience Check or to obtain items readily convertible into cash, such as money orders, travelers checks, foreign currency, lottery tickets, casino chips and race-track wagers.

**Confidential Information.** All information concerning or relating to a party or any of its affiliates, employees, agents or representatives, including (i) a party's business practices and strategies or information concerning business practices or strategies, including any documents prepared by a party or any of its employees, agents or representatives (including lawyers, accountants and financial advisors); and (ii) any other information which is manifestly confidential by virtue of its nature or description or which a party expressly designates as being confidential.

**Convenience Check.** Each check which the Bank may provide to Company, upon Company's request, to draw on an Account.

**Data Protection Laws.** Collectively, all U.S. national and state laws or regulations, and all other applicable laws regarding the collection, use, storage, transfer and processing of data relating to individuals (or, where applicable, legal persons). The term Data Protection Laws includes any laws, regulations or decrees promulgated by a financial regulator governing the use and/or disclosure of customer data, including bank secrecy obligations.

**Data Protection Authority.** The competent authority for regulating the processing of Personal Data in a relevant jurisdiction.

**De-identification** or **De-identified.** Removing, obscuring, masking, or obfuscating enough Personal Data from a record to ensure that the remaining information does not directly or indirectly identify an individual.

**Device.** A device such as a Card, Account number or, where applicable, a Convenience Check which the Bank provides under this Agreement to use or make Transactions or other charges on an Account.

**E-Commerce Laws.** All applicable laws for or on the regulation of commerce and business via electronic means.

**Extended Workforce.** Any of Bank's subcontractors or vendors with access to Personal Data.

**Financial Services Industry Best Practices.** The standards, policies and practices generally used in the commercial card issuing business by banks of comparable size and scope to the Bank, including appropriate mitigating controls.

**Information Processing System(s).** The individual and collective electronic, mechanical, and software components of the Bank's and the Bank's Extended Workforce's operations that store, access, process or protect data related to the Services.

**Information Security Event.** Any situation where there is an actual or strong likelihood of the unauthorized acquisition or unauthorized use or disclosure of Personal Data such that (i) there is a reasonable likelihood of material harm to a Cardholder or (ii) there is a reasonable likelihood of identity theft or fraud against an individual as determined by Bank, using Financial Services Industry Best Practices assessment criteria.

**Information Security Policy.** Bank's information security policy, which may be amended from time to time by the Bank in its discretion.

**License.** A non-transferable, nonexclusive, worldwide, revocable, limited license to access and use the Applications and any related



V 0032020
© 2020 Bank of America Corporation

The authoritative document is owned by Bank of America, N.A. and this copy was created on 03/22/2024 02:08:48 PM EDT. 2698488908. This document is a COPY.
DocuSign Envelope ID: 4ECB44A5-0524-4935-AF3B-4742DB87F9BA



services, in a manner intended for authorised use, and to the extent authorised by the Bank.

**Materials.** The Software, user identification codes, passwords, codes, keys, test keys, security devices, embedded algorithms, digital signatures and certificates, other similar devices and information, User Documentation and related documentation the Bank provides to Company in connection with the Services.

**Participant.** A Subsidiary, affiliate or division of Company which Company designates in writing on a Participant Account Form and which Bank approves, for the Bank to issue a Card Account with its own account number. A Participant Account Form, upon completion by Company and approval by the Bank, will be made a part of this Agreement.

**Payment Due Date.** The payment due date shown on the Billing Statement which date shall be the last day of the Grace Days.

**PCI-DSS.** The Payment Card Industry - Data Security Standard as amended from time to time and any successor standard adopted by the payment card industry establishing security standards for payment cards.

**Personal Data.** Means (i) any "non-public personal information" as such term is defined under Title V of the U.S. Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. and the rules and regulations issued thereunder; or (ii) any other information that can specifically identify an individual, such as name, address and social security number ("SSN"), together, in each case, with any other information that relates to an individual who has been so identified.

**Program Data.** Any Software, Materials, data, technical assistance, training and related technical data, and any media in which any of the foregoing is contained.

**Sanctions.** Any sanctions administered or enforced by the United States Government (including the U.S. Department of the Treasury's Office of Foreign Assets Control), the United Nations Security Council ("UNSC"), , or any other relevant sanctions authority.

**Software.** Web-based applications accessed via a Website and/or the programs and data files provided by Bank for use on a computer in connection with the Services.

**Subsidiary.** Any entity in which more than 50% of the ownership interest is owned, directly or indirectly, by Company. The term "Subsidiary" does not include affiliates or other entities in which 50% or less of the ownership interest is owned, directly or indirectly, by Company.

**Transaction.** A purchase or reservation of goods or services or a Cash Advance made or facilitated by use of a Device or an Account.

**Unauthorized Use** Use of an Account or a Device by a person, (i) who is not a Cardholder or an employee or agent of Company, (ii) who does not have actual, implied or apparent authority to use the Account, Convenience Check or Card and (iii) whose use does not result in a direct or indirect benefit for Company. Any use of a Card Account, Convenience Check or Card after the Agreement has been terminated for any reason shall also be considered Unauthorized Use.

**User Documentation.** Any written information Bank provides to Company, including information in electronic format, as amended from time to time, which contains detailed instructions regarding the use of the Commercial Card service. Current User Documentation is available upon request.

**Website.** Any internet website and/or online access channel for use in accessing the Services.

**Workforce.** Bank's employees with access to Personal Data.

**2. ACCOUNT TYPE.** Company shall designate with respect to each Card whether it will have travel and entertainment, purchasing, Cash Advance and/or fleet features or the ancillary services set out in section 21 below (each a "Service", collectively, the "Services")..

**3. BANK'S OBLIGATIONS.**

A. Bank is responsible only for performing the Services expressly provided for in this Agreement. The Bank may contract with an outside vendor in performing the Services, however the Bank will remain responsible for their performance under the Agreement.

B. The Bank will provide the Services in a manner which is materially compliant with all laws to which Bank may be subject (including all AML/Sanctions Laws). The Bank represents and warrants to Company on and as of each day on which the Bank provides a Service to Company that Bank's performance of its obligations will not materially violate any law applicable to it.

C. The Bank will implement systemic protocols to decline attempted Transactions that would violate Sanctions, or that would result in a violation by any person (including any person participating in the Transaction, whether as advisor, investor or otherwise) of Sanctions. The Bank will monitor activity on Company and its Participant's Card Accounts for activity that may be expected to lend, contribute, or otherwise fund any activities of a business or person in countries subject to Sanctions and may review such activity with Company as may be necessary.

D. The Bank will assume the financial liability for all external fraud if Company, a Participant or Cardholder has not authorized or participated in the specific Transaction. If there is internal fraud or collusion the Bank offers misuse insurance to help Company with recovery from card networks. The Bank does not assume any liability for and is not responsible for internal fraud, including employee misuse of the Cards, Accounts, Applications or Services.

**4. USE OF ACCOUNT AND DEVICES.**

A. If an Account has the travel and entertainment feature, the Account is for Transactions in connection with travel and entertainment services. If an Account has the purchasing feature, the Account is for Transactions in connection with the procurement of goods and


© 2020 Bank of America Corporation
Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 21 of 114

services incidental to Company's business or business activities. If an Account has the fleet feature, the Account is for Transactions to obtain motor fuel and other automotive related products and services.

B. Company shall use the Account for Business Use only in accordance with the terms of the relevant Service. Company will pay for each Transaction, regardless of its purpose or whether Company signed a sales draft or received a receipt, and fees and charges which the Bank applies to the Account or Devices.

C. Company and each Cardholder will check to ensure that the information embossed on each new Card or printed on each Convenience Check is correct, and Company will contact Bank immediately if there is an error.

D. USD Cross Border. The Services which are provided pursuant to this Agreement are for Cardholders who are physically based in the United States and who may travel for business for periods not to exceed eight (8) consecutive weeks in a single jurisdiction outside the United States. Should any such Cardholder become resident of another jurisdiction other than the United States or be assigned to work in a single jurisdiction outside the United States for a period exceeding eight (8) consecutive weeks, we will require you to execute a USD Cross Border Addendum and comply with its requirements.

E. If the Bank, at Company's request, provides Convenience Checks, Company must have selected Cash Advance in order to have Convenience Checks. Convenience Checks may not be used to make payment on the Account. Convenience Checks will not be returned to Company or Cardholder. The Bank may pay a Convenience Check and post its amount to the Account regardless of any restriction on payment, including, without limitation, a Convenience Check which is post-dated, states that it is void after a certain date or states a maximum or minimum amount for which it may be written; If Company wishes to stop payment on a Convenience Check, Company must call Bank at the customer service number shown on Company's Billing Statement and provide such information as Bank requests or is required under the relevant User Documentation. Bank will stop payment if it receives Company's request on or before the Business Day before the Business Day on which Bank would otherwise pay the Convenience Check. The date on which Bank would pay a Convenience Check may be prior to the date it would post to Company's Account. A stop payment order will remain in effect for up to six months.

F. Bank may, at Company's request, establish a Cardless Account or establish an Account with a designation which is not an actual individual, including, without limitation, designation of a vehicle identification number, license number, department name or "Authorized Representative" on the Card Account. Company agrees to be solely responsible for the use of any such Cardless Account or Account, including, without limitation, any Unauthorized Use.

G. If Company desires to terminate the Account or Card use (including, where applicable, use of Convenience Checks), Cardholder or Company, as applicable, will notify the Bank and will destroy the Devices issued or provided to that Cardholder. If this Agreement terminates, Company will be responsible for destroying all Devices for the Account.

H. A Transaction may require the merchant, supplier or financial institution to seek prior authorization from the Bank before completing the Transaction. If Company advises the Bank in writing of its desire to restrict Transactions to those merchants falling within up to five (5) categories designated by the Bank, the Bank will take reasonable steps to prevent authorization of other types of Transactions. However, the Bank will not be liable to Company if merchants, suppliers or financial institutions nonetheless accept a Card, Convenience Check or the Account for that Transaction type.

I. The Bank is not liable if a merchant or supplier does not honor a Card or if authorization is not given.

J. Notwithstanding anything to the contrary in the "Limitation of Liability" section of this Agreement, Bank will not be liable for any failure to authorize a Transaction.

K. You are responsible for protecting and maintaining the security and confidentiality of your data and the data of your Cardholders (including any and all user IDs, passwords and card personal identification numbers (PINs) issued in connection with a Service), for ensuring that it is adequately backed-up and that no person makes such data available to any other person or for any unauthorized purpose. We are not responsible for your loss of your data or the data of your Cardholders that is not maintained on our or our vendors' systems.

L. You must comply, and you must ensure that your Cardholders and all Transactions comply, with all laws to which you, that Cardholder or that Transaction may be subject, including all AML/Sanctions Laws. You must do all things and provide all information which we may request from you to allow us to comply with our obligations under any AML/Sanctions Laws, including (if necessary) providing us with any information required to establish and verify the identity and background of any Cardholder. You represent and warrant to us on and as of each day on which we provide a Service to you that your performance of your obligations will not violate any law applicable to you or facilitate illegal transactions, including those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq.

M. You covenant that you will not use or permit any Cardholder to use, any Card, Cardless Account, Cash Advance or Convenience Check to transact, lend, contribute, or otherwise make available funds to any Subsidiary, joint venture partner or other individual or entity ("Person"), to fund any activities of or business with any Person, in Cuba, Iran, North Korea, Sudan, Syria, or in any country or territory, that, at the time of such funding, is the subject of any Sanctions, or in any other manner that will result in a violation by any Person (including any Person participating in the transaction, whether as advisor, investor or otherwise) of Sanctions.


© 2020 Bank of America Corporation

**5. LICENSE TO USE COMPANY'S MARKS.** Upon Company's request, Bank may place Company's trademark, tradename, service mark and/or designs (**"Company's Marks"**) on the Cards and collateral materials. Company will provide the graphics to Bank in sufficient time to allow for review and approval by Bank and, if necessary, the respective card network. Company grants to Bank a non-exclusive license to use, during the term of the Agreement, Company's Marks on the Cards and on other materials related to the Accounts. If, as Company requests, Bank places Company's Marks on the cards or collateral materials, Company must pay Bank in advance any agreed fees, and Company agrees that the indemnity under Section 30 of this Agreement covers any claim that the use of any Company Marks infringes the intellectual property right of any third party.

**6. CHARGE LIMIT.** Company will be given one total charge limit for all Company Accounts (**"Aggregate Charge Limit"**). Each Card will have its own charge limit (**"Card Limit"**). In its sole discretion, the Bank may increase or decrease the Aggregate Charge Limit or any Card Limit. Company will not incur obligations to the Bank which would cause the Account's unpaid balance to exceed the Aggregate Charge Limit. If Company exceeds the Aggregate Charge Limit or a Cardholder exceeds the Card Limit, the excess will be deemed immediately due and payable by Company at the option of the Bank. If the Aggregate Charge Limit or a Card Limit is exceeded, or if an Account payment is late, the Bank will have the right not to allow any further Transactions until the Account is brought current and the unpaid balance is within the Aggregate Charge Limit.

**7. COMPANY LIABILITY; SECURITY INTEREST.** Company's responsibility for Card and Account usage will continue until the later of: (1) Company's notice to the Bank to close the Card or the Account plus a reasonable time to process such information and (2) payment for Transactions made before the Bank closes the Card or the Account to future use. **Company does hereby grant to Bank a security interest and contractual right of setoff in and to all deposits now or subsequently maintained by the Company with Bank or any of its affiliates and subsidiaries. In connection with that grant, the Company authorizes Bank to enter into an agreement with its affiliates and subsidiaries authorizing, upon the occurrence and continuance of any non-payment under this Agreement, the disposition of funds in any such deposits to satisfy all liabilities incurred hereunder, without the further consent of the Company. The grant of this security interest shall survive termination of this Agreement.**

**8. BILLING STATEMENTS.**

A. The Bank will provide a monthly billing statement(s) (**"Billing Statement"**) to the Card Administrator or to such other Company employee or other person as Company designates in writing. Each Billing Statement will identify each Transaction posted during the billing cycle covered in the Billing Statement and the date of each Transaction. The Billing Statement will also list any fees and charges which apply. Where Company has elected individual billing for travel and entertainment Transactions, Bank will provide the Billing Statement covering the use of the relevant individual Card to the Cardholder. A Cardholder's address for receipt of a Billing Statement will be the address provided by Company or Cardholder to Bank and accepted by Bank. Company agrees that Bank may provide Billing Statements or make Billing Statements available by electronic means, including by way of electronic mail or a Website.

B. Once Company or other designated person receives a Billing Statement, Company must review it and notify Bank by telephone (using the appropriate telephone number set out in the Billing Statement), electronic mail, or other method that may be agreed upon by Company and Bank, of any Transaction appearing on that statement which Company considers may have resulted from any Unauthorized Use. Company must give Bank this notice as soon as practicable but in any event not later than 60 days after Company receives the Billing Statement. If Company opts to have individual statements sent to individual Cardholders, Company must ensure that each relevant Cardholder complies with the provisions of this Section 8(B). Subject to the requirements of any applicable laws, if Company does not (or if a relevant Cardholder does not) give Bank notice in accordance with this Section 8(B), Bank may not be liable to refund any amounts relating to that Transaction.

**9. PAYMENTS.**

A. Company will pay the Bank the total amount shown as due on each Billing Statement on or before the Payment Due Date shown on that Billing Statement. If Company does not make payment in full by the specified due date, in addition to its other rights under this Agreement, the Bank, at its option, may assess a late fee and finance charge in accordance with this Agreement. There is no right to defer any payment due on an Account. In addition, Company will pay the Bank for all fees and charges according to the schedule of charges currently in effect for the Company. All charges are subject to change upon 30 days' prior written notice to the Company, except that any increase in charges to offset any increase in fees charged to the Bank by any supplier for services used in delivering the services covered by this Agreement may become effective in less than 30 days. We may, at our discretion, accept payments made on your behalf by third parties, including payments made by your affiliates. Our acceptance of any such payments will not alter your obligations under the Agreement. We may reject any such payments for any reason, and if we do so you will still have to pay us the amount you owe us by the relevant Payment Due Date. For our Cross-Border Program, we will only accept payments made from bank accounts in the United States.

B. If Company or any Cardholder makes any payment to the Bank in connection with a Card Account, Company must, or ensure that Cardholders must, at the same time provide Bank with either the account number or the Card number. The Bank shall not be liable for any delay in crediting any such payment or recording any Transaction, or for failing to do so, where this information is not provided to the Bank in accordance with this Section 9.

C. Unless otherwise agreed by the parties, payments must be made using an Automated Clearing House (ACH) service. As specified by Company, the Bank may initiate ACH debits to any deposit account at any financial institution. If Company arranges for direct payment


© 2020 Bank of America Corporation

The authoritative document is owned by Bank of America, N.A. and this copy was created on 03/22/2024 08:08:48 PM EDT. 2685688865. This document is a COPY.
DocuSign Envelope ID: 4ECB44A5-0524-4935-AF3B-4742DB87F9BA



by Cardholders, such an arrangement will not change Company's responsibilities under the Agreement, including Company's obligation for payment.

D. If Bank receives any payment from Company or a Cardholder in respect of any statement amount outside Banks' normal processing hours to which that payment relates, that payment shall be deemed to have been received by Bank on the next Business Day. Bank will provide Company with a list of its normal processing hours upon Company's request.

E. Company is not permitted to have a credit balance on any Card Account. If any such credit balance arises (for example, by a refund), then in addition to Bank's rights of set-off, Bank may retain the credit balance in or towards prepayment of any amount Company owes Bank in the future under the Agreement, or if the amount of the credit balance is material Bank may, at its option, pay it to Company using any method mutually agreed upon between Company and Bank. Company also may request that Bank refund such credit balances to Company. Bank will not use the credit balance in any way which is not set out in Section 7 above and this Section 9.

**10. ACCOUNT FEES.**

A. Account Fees. A reporting fee will be charged to one of Company's Accounts each month, the amount of which is as follows: Global Reporting and Account Management Internet based reporting, with or without Expense Report workflow module, $15.00. Works Internet based reporting, $50.00. Card transaction file feed, $15.00. A copy charge of $3.00 will be charged for any record requested on an Account. A delivery fee for Cards will be charged as follows: (i) US Mail (Default): No Fee; (ii) Bulk Mail: No Fee; (iii) Overnight: $35.00; (iv) 2 day: $20.00. A late payment fee of $35.00 for individually-billed Accounts and 4.00% of balance ($35 minimum, no maximum) for centrally-billed Accounts will be charged if Bank does not receive payment of the entire balance by the respective Payment Due Date. Custom Merchant Category Code Groups, $250.00 one-time fee. A fee of $250.00 will be charged for each Company Card logo request; custom Card design fees will vary depending on request. Fee per card for Executive Cards with additional benefits including concierge services charged for more than 10 cards is $75.00 per Card per year. Premium Rewards annual membership fee of $75 per account for any account enrolled. **Executive Explorer Card Program:** (For Executive Explorer Card, the following terms apply. Annual fee of $375 per cardholder will be charged to the Card at time of issuance. Program Terms and Conditions apply. Visit (www.bofa.com/ExecutiveExplorer) for more details.)

B. Cash Advance Fee Finance Charge. 2.5% of the cash advance with a $5.00 minimum.

C. Convenience Check Finance Charge. 2.5% of amount of transaction with a $5.00 minimum.

**11. CARD ADMINISTRATOR.** Company will identify one or more Card Administrator(s). Only a Card Administrator or Company's finance or accounting officer or employee with actual, implied or apparent authority may add, change or eliminate a Card Administrator by giving the Bank written notice. Company must give the Bank prompt written notice of any addition, change or elimination of a Card Administrator.

**12. LOST OR STOLEN CARDS; UNAUTHORIZED USE.**

A. In the event of possible loss or theft of a Card, Convenience Check (where applicable) or Account or possible Unauthorized Use, Company agrees to notify Bank by phone at 1-800-300-3084, or write to Commercial Card Services, P.O. Box 28, Norfolk, VA 23510. Company agrees to give such notice as soon as practical, but in no event later than the Business Day after discovery of the known or suspected loss or theft or Unauthorized Use. Company agrees to assist Bank in determining the facts and circumstances relating to any loss or theft or Unauthorized Use of Cards, Convenience Checks (where applicable) or Account including, where requested by Bank, obtaining from the Cardholder an affidavit, statement or proof of loss. Once Bank has issued Devices pursuant to this Agreement, all Transactions incurred by use of such Devices by a Cardholder will be assumed authorized unless and until Bank receives written notice that the Cardholder is no longer authorized to use the Devices. If notice is given as set forth in this section and Company assists the Bank in investigating facts and circumstances relating to the loss, theft or possible Unauthorized Use, then Company will not be liable for Transactions resulting from Unauthorized Use. If the Bank has issued fewer than ten (10) Accounts to Company, Company's liability for Transactions by a person who does not have actual, implied or apparent authority to use the Card, Account or Convenience Check and whose use does not result in a direct or indirect benefit to Company will not exceed $50 on each Card.

B. The Bank may refrain from authorizing any Transaction: (i) if Bank suspects that the Transaction is or might be fraudulent or unlawful or for the purpose of any fraudulent or unlawful activity; (ii) if Bank suspects that the Transaction constitutes or might constitute Unauthorized Use; or (iii) if to authorize that Transaction would cause Bank to breach any law (including any AML/Sanctions Laws by which Bank must abide).

C. Subject to applicable law, the Bank will not be liable to Company if Bank or any other party fails to authorize or declines any Transaction for any reason. If a Transaction is not authorized or declined, Company may seek, and Bank will provide, reasonable assistance in investigating and resolving the declined or unauthorized Transaction.

**13. EXTENSION OF CORPORATE CARD SERVICE TO AFFILIATES.** Upon Company's request and submission of a Participant Account form, the Bank may approve one or more affiliates of which Company is majority owner for participation in a Service. Each participating affiliate will have the same rights and obligations as Company except that no separate charge limit will be assigned. Company's charge


V 0032020
© 2020 Bank of America Corporation

limit will apply to Transactions on all Card Accounts, including those of its participating affiliates. Company may terminate an affiliate's participation by giving the Bank written notice and a reasonable time to act on such notice. If an approved Participant is, or will no longer be, majority-owned by Company, Company agrees to notify the Bank immediately, and Bank may immediately terminate the Card Accounts of such Participant.

**14. MERCHANT/SUPPLIER CLAIMS AND DISPUTES**. The Bank will have no liability for goods or services purchased by use of, or for a merchant's or supplier's failure to honor purchases made with, the Account or any Card. If Company has any questions, problems or disputes concerning the quality of any goods or services purchased using an Account, Convenience Check or Card, a purchase price discrepancy, warranty or other performance issues or any other purchase matter, Company must contact the merchant or supplier directly. Company may not rely on any claim or dispute concerning the purchase of goods or services using a Card Account, Convenience Check or Card as a reason to avoid its payment obligations under the Agreement. Notwithstanding the foregoing, where the Bank processes any request for a Transaction refund through a card network on Company's behalf, which for the avoidance of doubt shall be processed in accordance with the operating rules and regulations of such card network, Company agrees that in a dispute with a merchant or supplier, the Bank will be subrogated to the rights of Company and each Cardholder against the merchant or supplier, and Company will assign (and require the affected Cardholder to assign) to the Bank its rights to assert a billing error against the merchant or supplier. Company will, and will require the Cardholder to, do whatever is necessary to enable the Bank to exercise those rights. The Bank may reverse from the Account any credits relating to the dispute.

**15. TRANSACTIONS IN OTHER CURRENCIES**. If Company makes a Transaction in currency other than U.S. dollars, Visa or MasterCard will convert the charge or credit into a U.S. dollar amount. The Bank will add a 1% fee to the U.S. dollar amount of any Transaction that is made in a foreign currency (the "**International Transaction Fee**").

**16. REPRESENTATIONS AND WARRANTIES**. Company represents and warrants to the Bank on and as of each day on which the Bank provides the services covered by this Agreement that: (i) Company is a body corporate acting within the scope of its ordinary course of business and it is not a "consumer" for the purposes of any consumer credit legislation, or regulatory guidance or codes of conduct applicable to customers (and, if it believes that it has or may become a "consumer" for any of those purposes, Company will notify the Bank immediately of that fact). Further, Company acknowledges that it will not be treated as a consumer for purposes of the Agreement, and laws and regulations relating to consumer protection shall not apply; (ii) the Agreement constitutes Company's duly authorized, legal, valid, binding and enforceable obligation; (ii) Company's performance of its obligations will not violate any law, regulation, judgment, decree or order applicable to Company or facilitate illegal transactions, for example those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq.; (iii) Company is in compliance with all AML/Sanctions Laws and is not aware of any breach by it or its Cardholders of any such laws; (iv) the debiting of any account as provided in the Agreement is not inconsistent on the use of that account; (v) all approvals and authorizations required to permit the execution, delivery, performance and consummation by Company of the Agreement and the transactions contemplated under the Agreement have been obtained, including but not limited to due authorization from each applicable third party to allow Company to transfer funds and access information from such party's account; (vi) there is no bona fide lawsuit, tax claim or other dispute pending or threatened against Company which, if lost, would materially impair Company's financial condition or ability to pay the Bank under the terms of the Agreement; (vii) if an entity is a Participant, it has authorized the Company to take any and all actions on its behalf related to the Agreement and any Services it receives, including binding it to the terms of this Agreement; (viii) all financial and other information that it has supplied or will supply to the Bank, including without limitation, all information on its application for the Account, is accurate and sufficiently complete to give the Bank accurate knowledge of its financial condition; and (ix) each Cardholder is a current employee or agent of Company.

**17. PERIODIC REVIEW OF COMPANY**. During the term of this Agreement, whenever the Bank requests information from Company for the purpose of reviewing Company's ability to perform its obligations under this Agreement, Company will furnish the information promptly. The Bank and its affiliates and processing agents may exchange information about Company. Company will notify the Bank in writing immediately of any change in the business name, the principal officers such as the Chief Executive Officer and Chief Financial Officer, the mailing address or the phone number of Company. Company will also notify the Bank of any change of mailing address or phone number of any of its Cardholders. If a Cardholder ceases to be an employee or agent of Company, Company must immediately inform the Bank and destroy or return to us as soon as practicable the Card allocated to that Cardholder.

**18. SUSPENSION; TERMINATION; ACCELERATION**.

A. Either party may terminate this Agreement upon 60 calendar days' prior written notice to the other party.

B. In addition to its other rights, and notwithstanding the previous sentence, should any of the following events occur, the Bank may, at its option, immediately and without notice to Company, suspend its operation hereunder or terminate this Agreement, and in either such event, all amounts outstanding will become immediately due and payable: (a) dissolution, bankruptcy, liquidation or insolvency of Company. The use of Cards or the Account will be considered the extension of "financial accommodations" under the Bankruptcy Code; (b) failure of Company to pay or perform as agreed under this Agreement, any other agreement relating to this Agreement, or any other agreement Company has with the Bank or any affiliate of Bank; (c) institution of attachment, garnishment, or levy proceedings against Company, which is not paid or released within 20 days; (d) change in ownership of Company in excess of 50%; (e) the Bank's receipt of false or misleading information or representations from Company; (f) death of any owner, if Company is a sole proprietorship; (g) death of any trustor, if Company is a trust; (h) death of any partner, if Company is a partnership; (i) death of any majority shareholder, if


V 0032020
© 2020 Bank of America Corporation

Company is a corporation or limited liability company; (j) appointment of a receiver or similar official for Company's business; (k) termination of the business; (l) occurrence of any material default under any agreement in connection with any credit Company has obtained from anyone else or which Company has guaranteed; (m) occurrence of any default under any guaranty made in connection with this Agreement or the occurrence of any event which renders the guaranty ineffective; (n) the occurrence of a material adverse change in Company's financial condition, properties or prospects or ability to repay Transactions; or (o) Company's failure to meet the criteria initially used by the Bank to approve Company's application for a Commercial Card Account.

C. Upon termination of this Agreement, Company will immediately destroy, or instruct Cardholders to destroy, all Devices. Termination will not relieve Company of liability for any charges or other obligations under this Agreement. After termination, this Agreement (except the ability to use the Account for additional Transactions) will remain in force until all Transactions and Company's other obligations under this Agreement are paid and satisfied in full except that if termination occurs pursuant to Section 18.B. above, then all amounts outstanding will become immediately due and payable. After termination, Company and Cardholders shall make no new Transactions on the Account. However, if any Transactions are made notwithstanding the above, Company will be liable until they are paid in full.

**19. APPLICATIONS LICENSE**

A. Application of this section. The terms of this Section govern the provision and use of the Applications. Company's use of the Applications and any related services means Company has read, acknowledged and agreed to the terms and the conditions of this Section. The Bank is entitled to grant Company licenses (including to Company's affiliates and Subsidiaries) to access and use the Applications.

B. License. The license granted under this Section is a non-transferable, nonexclusive, worldwide, revocable, limited license to access and use the Applications and any related services in accordance with the terms of this Section, in a manner intended for authorized use, and to the extent authorized by the Bank (the "License"). Software provided by a third party may be subject to separate license terms, including "click-wrap" terms that Company will be required to agree to in order to utilize such services. The License shall terminate upon the occurrence of any one of the following events: (i) the Agreement is terminated for any reason; or (ii) this License is terminated pursuant to Section K below. Additionally, unless such use is promptly stopped after the Bank has notified Company of it, Bank reserves the right to revoke the License granted hereunder if Company uses the Applications and any related services in an illegal or unauthorized manner, including in contravention of these terms. The Bank reserves the right to suspend Company's access to, and use of, the Applications upon prior written notice of a violation of any of these terms. In addition, the Bank may suspend Company's access to, and/or use of, the Applications immediately without notice where such action may be required to prevent interference with or disruption to services to Bank's other customers, to protect the integrity of the Bank's systems, or as may be required by law or regulation.

C. Disclaimers. THE APPLICATIONS, RELATED SERVICES, AND INFORMATION PROVIDED PURSUANT TO THE APPLICATIONS ARE PROVIDED "AS IS" AND "AS AVAILABLE." THE BANK AND ITS THIRD PARTY PROVIDERS HEREBY EXPRESSLY DISCLAIM ALL EXPRESS AND IMPLIED WARRANTIES.

D. Modifications. Bank may modify, withdraw or suspend the Applications or any part of it without notice at any time.

E. Protection of Software. The Software and all copyright, patent, trademark, trade secret and other rights in them are and will remain the exclusive property of the Bank or its licensors. All such intellectual property in the Software and the related services is protected by applicable copyright, patent, trademark or other intellectual property law. The entire content of the Software is subject to the Bank's and its third party providers' intellectual property rights, including copyright with all rights reserved. Company acknowledges that the License does not convey or grant any intellectual property or other proprietary right to Company, except for the limited license granted hereunder. Company will follow Bank's instructions concerning access to the Software through Bank's third party vendor platforms. Company will ensure that all Participants and Cardholders comply with instructions provided by the Bank and are responsible for any and all acts and omissions of Participants and Cardholders. Company further agrees not to engage, and will ensure that its employees and agents do not engage, in unacceptable use of the Applications, including the following activities: (i) creating a false identity or otherwise attempting to mislead any person as to Company's identity or the origin of any communication transmitted through the Applications; (ii) using accounts, account numbers, or attempting to authorize transactions through accounts for which Company does not have full authority to conduct such activities; (iii) disseminating or transmitting any materials or messages that do not pertain to the intended use of the Applications or that contain anything that is obscene, defamatory, harassing, offensive, or malicious; (iv) disseminating or transmitting files, graphics, software, or other material that actually or potentially infringes the intellectual property right of any person or entity; or (v) interfering with, disrupting, or attempting to gain unauthorized access to information or other accounts through the Applications hosted by Bank or its third party vendors and made accessible to Company. The Bank may rely on the instructions of any Authorized Users and Bank will have no liability following any such instruction. Company is responsible for all actions taken by Authorized Users with regard to the Applications.

F. Accessibility – Company's computer systems. Subject to the terms of this Section 19, Bank will make the Applications available over either the internet or through an intranet site to allow Company to electronically and remotely access the Applications. Company will provide at Company's own expense, all necessary telephone lines, internet connections, equipment, software (including a compatible


© 2020 Bank of America Corporation

web browser), and services for Company to effectively access the Applications. Company's access to the Applications will be controlled by a user name and password, as well as the authorization approved by Company's program administrator.

G. Infringement Protection. Notwithstanding Section 30 of this Agreement and except as otherwise provided in this Agreement, the Bank will defend at Bank's own expense or settle any action brought against Company to the extent it is based on Company's use of the Applications and the Software, including the Bank's entitlement to allow Company's use of the Applications, or Company's use of the Applications infringe any copyright, patent, trade secret or trademark of any third party in the countries where Company is using the Applications, and Bank will pay all costs and damages finally awarded in any such action. The Bank's obligations under this protection are subject to (i) prompt notice from Company of any such claim or action; (ii) Company not having made any admission of liability or agreed to any settlement or compromise; (iii) Company providing to Bank, in a prompt and timely manner, the documents, information and assistance Bank reasonably requests; (iv) Bank having sole control of defending such claim or action; (v) Company having used the current version of the Applications, as provided to Company by Bank, in compliance with this Agreement; (vi) Company using the Applications only in the manner for which the Applications were designed; (vii) Company not modifying the Applications; (viii) Company not incorporating the Applications with products not approved by Bank; and (ix) the claim or action is not due to Company's negligence or willful misconduct. Company acknowledges and agrees that the Bank's obligations under this infringement protection are its only obligation to Company with respect to any infringement claim in connection with Company's use of the Applications.

H. Software updates. The Bank may provide upgrades or new releases of Software which Bank makes generally available to its other customers to whom Bank licenses the same Software, which will be deemed part of the Applications once Bank has delivered or made it accessible through its third party vendors to Company.

I. Training. At Company's request, Bank will use commercially reasonable efforts to train persons to use the Software, but Bank will not bear any responsibility for such training. Company will be deemed to have accepted the Software upon its installation, once it is made available to Company, or on Company's use of the Software.

J. Software problems. Company will inform the Bank of all errors, difficulties or other problems with the Software of which Company becomes aware. The Bank will make all reasonable efforts to promptly fix or promptly provide workarounds for any material errors reported to it. The Bank may request Company's reasonable cooperation in resolving any such errors, difficulties or other problems by providing Bank an overview of input, output and all other data Bank may reasonably request in order to reproduce operating conditions similar to those present when such errors, difficulties or other problems were discovered.

K. Termination of license. Company's license to use the Applications will terminate automatically if Company breaches a term of this Section 19. If, for whatever reason, the Bank ceases to be entitled or permitted to license any Applications to Company, the License shall immediately terminate. Where possible the Bank shall provide Company with reasonable prior notice of this. In addition, if Company breaches any of its confidentiality obligations with respect to the Applications, Bank may seek any and all remedies provided by law or equity.

L. Limitations. Company acknowledges that the Applications have not been produced to meet Company's specific requirements and have not been tested in every possible combination and operating environment. Company agrees that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to Bank's provision to Company or Company's use of any Software and/or Materials.

M. Export controls. Company understands and acknowledges that any obligations that Bank may have to provide Program Data are subject in all respects to all applicable laws as may from time to time govern the export or diversion of certain products and technology to and from certain countries. Company represents, warrants and agrees that it will comply in all respects with the export and re-export restrictions applicable to Program Data shipped and/or provided to Company and that it will comply with all applicable laws and regulations governing the export and diversion of Program Data.

**20. PREMIUM REWARDS PROGRAMS.** Company's participation in rewards programs shall be subject to the Premium Rewards Terms and Conditions, a copy of which is enclosed with the Commercial Card Account Application. Company acknowledges receipt of the Premium Rewards Terms and Conditions and will make a copy of the Premium Rewards Terms and Conditions available to each individual Cardholder who is chosen by Company to participate in Rewards. Cardholders chosen to participate in Premium Rewards must accept the Premium Rewards Terms and Conditions upon initial logon to the Premium Rewards site. Bank of America has the right to suspend or terminate the Premium Rewards Program or Company's participation in the Premium Rewards Program, at any time without prior notice. Bank of America reserves the right to add, eliminate or modify a specific reward or the point and reward structure of the Premium Rewards Program at any time. A non-refundable annual participation fee applies whether or not any points are earned. The annual participation fee will be charged to each Account within the month in which the Account is first enrolled and annually thereafter. Refer to the Premium Rewards Terms and Conditions for the amount of the fee. The Premium Rewards Terms and Conditions are incorporated herein by reference.


V 0032020
© 2020 Bank of America Corporation

BANK OF AMERICA

**Commercial Card Account Agreement**

**21. ANCILLARY SERVICES**

A. Adding services. Upon Company's request and the Bank's approval Bank may provide additional services to Company and such participants as the parties may agree from time to time.

B. Receipts imaging service. Company may elect to use the Bank's receipts imaging service whereby Company sends Bank copies of Company's transaction receipts, which Bank will electronically store for Company (the "receipts imaging service"). It is Company's obligation to send Bank legible copies of Company's transaction receipts. Company acknowledges and agrees that Bank will not review the transaction receipts and that Company is responsible for retaining the original receipts. Notwithstanding the limitation of liability section of this agreement, Bank will not be liable for damages if the images are illegible or blank or for failure to provide copies by a given time or for failure to provide copies Bank is not reasonably able to provide. Images will be made available to Company by website at such times as may be set forth in the applicable user documentation or as otherwise established by Bank. There is no charge for this service. Upon termination of the Agreement, receipt images will no longer be available.

C. File feeds to third parties. Company may request Bank to send certain program data to Company's third party servicers. The Bank will do so on the basis that Company has reviewed and accepted the Bank's standard file layout and Company agrees that any file transfer shall only be in such standard file layout. Company agrees to indemnify, defend and hold Bank, Bank's successors and permitted assigns, Bank's affiliates and their respective directors, officers, agents and employees harmless from and against every claim, demand, proceeding or suit, and from every liability, loss, damage, cost, charge, expense (including any actions or expenditures required by law or regulations, reasonable attorney, auditor and other fees, and costs) whether or not material, liquidated, contingent or prospective in nature, arising out of, resulting from or related to Bank's compliance with Company's data transfer request.

D. Fees/Costs. Company acknowledges and agrees that any changes to the services which Company requests and uses pursuant to this Agreement may increase the fees which Company is required to pay to Bank in accordance with the Payment of Card Accounts section of this Agreement.

**22. GOVERNING LAW.** This Agreement and the Account, as well as the Bank's rights and duties regarding this Agreement and the Account, will be governed by the laws respecting national banking associations and, to the extent not so covered by those laws, by the laws of the State of North Carolina, without reference to that state's principles of conflicts of law, regardless of where Company resides or where a Cardholder uses the Account.

**23. ARBITRATION.** Any dispute or controversy concerning Company's use of the card program covered by this Agreement will be decided by binding arbitration conducted in the United States of America in accordance with the United States Arbitration Act (Title 9, U.S. Code) under the Commercial Arbitration Rules of the American Arbitration Association. Under these procedures, the dispute is submitted to a neutral person for determination in place of a trial before a judge or jury. Judgment upon the award made by the arbitrator may be entered in any court having jurisdiction. Either party may exercise self-help remedies or obtain provisional or ancillary remedies from a court. Either party may exercise these remedies at any time, even while the arbitration is pending. By exercising or obtaining any such remedies, neither party waives the right to request that a dispute or controversy be decided by arbitration.

**24. TELEPHONE MONITORING.** Company agrees that the Bank may electronically monitor and/or record any telephone or other electronic communications (whether by telephone, short message service (SMS) message, multimedia messaging service (MMS) message or any other form of telephonic text message, electronic mail or otherwise) with Company in those countries which permit that practice. If the Bank's records about any such communication are different from Company's, the Bank's records are presumed to be correct, but such presumption may be rebutted by Company.

**25. SUCCESSORS AND ASSIGNS.** This Agreement and all terms and conditions hereof, are not assignable or transferable by Company without the Bank's prior written consent. All the terms and provisions of this Agreement will inure to the benefit of and be binding upon each party and its successors and permitted assigns. The Agreement is not for the benefit of any other person, and no other person shall have any right under the Agreement against either party. Nothing contained in the Agreement shall create any agency, fiduciary, joint venture or partnership relationship between Company and the Bank.

**26. NOTICES.** Any written notice or other written communication to be given under the terms of this Agreement will be addressed to the applicable address specified on the signature page, except as the parties specify otherwise in writing. Notices are effective upon receipt, except as otherwise provided in this Agreement. If entity is a Participant, entity agrees and acknowledges that any notice the Bank provides to the Company shall be deemed to be given to such Participant. If Company chooses to use unencrypted electronic mail to initiate payment requests or other instructions or otherwise communicate with Bank, Company's use of such electronic mail with respect to this Agreement will be subject to the terms and conditions of this Agreement and will comply with the applicable User Documentation. In addition, Company agrees to bear the risk that such electronic mail may be corrupted, modified, garbled or hacked or its confidentiality may be breached by a third party and the risk that Bank will rely on such mail, which appears to be from Company but which is unauthorized, and that such reliance will result in a loss. In addition, Company agrees that Bank may rely on the integrity of facsimile transmissions that Company sends Bank, and Company agrees to bear the risk that the information Bank receives differs from that sent to Bank, and that such reliance may result in a loss. In the event that an electronic transmission or facsimile transmission is unclear or if


© 2020 Bank of America Corporation

Bank becomes aware that it is not an authorized communication from Company, Bank will not act on such transmission and will contact Company to clarify any intended content of such transmission.

**27. CONFIDENTIALITY**

A. General. The Bank acknowledges that information it obtains from Company in connection with a Service it provide to Company under the terms of the Agreement may be Confidential Information. Company acknowledges that the Agreement, Bank's pricing information, any information provided by Bank to Company in providing the Services, and the Materials shall be considered to be Bank's Confidential Information. Company also acknowledges Bank's claim to proprietary rights in the Materials and Bank's Confidential Information and that the Materials and Bank's Confidential Information constitutes Bank's "trade secrets" or trade secrets of Bank's licensors or vendors.

B. Restrictions. In respect of a party's Confidential Information, the other party will:

i. Safeguard the Confidential Information at all times;
ii. Establish and maintain procedures to assure the confidentiality of the Confidential Information and any password or code;
iii. Use the Confidential Information only for the purposes for which the other party provides them; and
iv. Notify the other promptly by telephone, confirmed in writing, if any Confidential Information is lost or its confidentiality is compromised.

Neither party will, nor will allow anyone else to, do any of the following without the other party's prior consent:

i. Disclose any Confidential Information of the other party to any person or entity, except to its employees and agents with a need to know the Confidential Information.
ii. Make any copies, in whole or in part, of Confidential Information of the other party in whatever form or medium (electronic, printed or otherwise) in which they may exist from time to time, except as provided in this Agreement.
iii. Translate, reverse engineer, disassemble or decompile any Software or security devices of the other party.

C. Use of the Materials. Company has sole responsibility for the custody, control and use of all Materials. Company must ensure that no individual will be allowed to initiate a request or other instruction contemplated in the Agreement or to have access to any Materials without proper supervision and strict security controls to ensure that the Materials are only used in accordance with this Agreement. If the Service requires use of user identification codes or passwords, Bank will be entitled to rely on the correct user identification codes and passwords, as described in the relevant User Documentation and shall not be responsible for any loss resulting from Bank's correct use of such data.

D. Exceptions. This section does not limit either Company's or Bank's ability to disclose information (i) that the other party has approved by prior writing for disclosure; (ii) that is disclosed to its professional advisors or auditors; (iii) that becomes public other than through a breach of these confidentiality obligations; (iv) that was in its possession or available to it from a third party prior to its receipt of it in connection with a Service; (v) which is obtained by it from a third party who is not known by it to be bound by a confidentiality agreement with respect to that information; (vi) as required or requested by any securities exchange or regulatory body to which Company or Bank are subject or submits, or (vii) as otherwise required to be disclosed by law or by legal or governmental process. In addition, either party may disclose to its offices, affiliates, officers, employees and agents (and those offices, affiliates, officers, employees and agents may disclose) such information as permitted under this Section or to otherwise carry out its duties or exercise its rights under the Agreement. This section also does not limit Bank's ability or that of its affiliates to access and use transaction data related to a Service provided to Company in connection with the management of Bank's or their business including making reports to credit bureaus.

E. No Use of Name. Neither Company nor Bank will use the other's name or refer to the other directly or indirectly in any solicitation, marketing material, advertisement, news release or other release to any publication without receiving the other's specific prior written approval for each such use or release, except that Bank may use Company's name as a reference in service proposals if Bank obtains Company's prior written approval for use.

F. Damages insufficient remedy. Company and Bank acknowledge that damages may not be an adequate remedy to protect the other party against breach of this Section 27 of the Agreement. Company and Bank agree that the other party may seek injunctive or other equitable relief in respect of a breach of Section 27 of the Agreement.

G. Survival. The obligations enumerated in this Section 27 continue after the Service Company is using and/or the Agreement is terminated.

**28. INFORMATION SECURITY/DATA PROTECTION**

A. Overall Data Security Regulations. As a financial institution, the Bank is required to comply with the information security standards of, as applicable, the Gramm Leach Bliley Act and the regulations issued thereunder; the Fair and Accurate Credit Transactions Act and the regulations issued thereunder; the Federal Financial Institutions Examination Council (FFIEC) criteria; the Interagency Guidance on Response Programs for Unauthorized Access to Customer Information and Customer Notice; the US Securities and Exchange Commission; FINRA; the NASD; and other federal statutory, national and international legal and regulatory requirements. The Bank is evaluated


© 2020 Bank of America Corporation

regularly for compliance with these obligations by various US and international regulators, including, the US Office of the Comptroller of the Currency, as applicable.

B. Security and Confidentiality. The Bank maintains an Information Security Policy that:

i. contains appropriate administrative, technical and physical safeguards designed to protect against Information Security Events;
ii. conforms as required to the requirements of applicable Data Protection Laws; and
iii. sets forth policies and procedures that are designed to be consistent with, to the extent applicable to the Services, PCI-DSS standards; the card networks rules and regulations; and Financial Services Industry Best Practices.

C. Data Protection. Company hereby represents and warrants to Bank now and on each day on which Bank provides a Service to Company that Company is in compliance with all Data Protection Laws and where required under such Data Protection Laws Company will maintain at all times during the term of the Agreement a valid registration or authorization with any applicable Data Protection Authority and obtain all necessary and valid consents and provide all necessary data protection notices in order for Bank to process the Personal Data for the purposes described in the Agreement, and to disclose the Personal Data to the types of recipients described in the Agreement, including if applicable where the recipients are located outside of the European Economic Area ("EEA").

Bank may process Personal Data for the following purposes:

i. to provide and manage the Services;
ii. to help monitor, assess and carry out statistical product and market analysis;
iii. to perform system testing and training;
iv. to manage its business;
v. as part of any internal or external audit or compliance review that Bank or any of its affiliates may undertake;
vi. to help prevent crime, fraud and terrorism; and
vii. to comply with card networks rules and all applicable laws and other legal and regulatory requirements.

Bank may disclose Personal Data to:

i. its affiliates, agents, auditors and service providers;
ii. card networks and credit reference and fraud prevention agencies;
iii. to any other person if legally required, including to law enforcement agencies, authorities, regulators and courts; and
iv. any other person to whom Bank may transfer or intend to transfer, assign or sell any of its rights or obligations under the Agreement.

Company acknowledges and agrees that data processing related to a Service and its Card Accounts may take place in countries other than those where Company and its accounts with Bank are located. Company further understands that information concerning its relationship with Bank may be available on Bank's electronic data system both for information management purposes and in order to enable Company to benefit from Bank's electronic banking services. Company understands and agrees that, as a result, its banking relationship information may be available to some of Bank's officers outside the country or countries where Company and its accounts are located. Company authorizes Bank to transmit Company's banking relationship information across national borders, notwithstanding the banking secrecy laws of any of the countries involved, as necessary or appropriate to provide a Service.

D. Security Policy. The Bank's Information Security Policy has been approved by its management and is published and communicated to its Workforce. The Bank has procedures designed to ensure that its Extended Workforce are subject to similar policies and processes. The Bank conducts periodic risk assessments to identify and assess reasonably foreseeable internal and external risks to the security, confidentiality and integrity of electronic, paper and other records containing Personal Data. The Bank requires its Extended Workforce to have a similar risk assessment process. The remainder of this Section 28 sets out the key aspects of the Bank's Information Security Policy.

E. Organizational Security. All information is stored in the United States for programs in the United States and Canada, and stored in the United Kingdom for programs in Europe, the Middle East, Africa, and Asia/Pacific. Such information may be accessed by Bank's Workforce and any Extended Workforce from locations within or outside the United States. The Bank's Information Security Policy applies to all such access. The Bank includes, as part of its agreements with any Extended Workforce that has access to Personal Data, provisions that are consistent with those set out in this Section 28.

F. Human Resources Security. The Bank takes reasonable steps to ensure that its Workforce is aware of its obligations in the provisions of the Services and Applicable Data Protection Laws, including that any unauthorized processing or disclosure of the Personal Data may lead to disciplinary action under their contract of employment or other contractual arrangements. Prior to receiving access to Personal Data, the Workforce and any Extended Workforce receive appropriate security awareness training and recurring security awareness training at appropriate intervals. The access rights of Bank's Workforce with access to Information Processing System(s) or media containing Personal Data are removed upon termination of their employment, contract or agreement, or adjusted upon change of job function.


V 0032020
© 2020 Bank of America Corporation

The authoritative document is owned by Bank of America, N.A. and this copy was created on 03/22/2024 08:08:48 PM EDT. 2694588983. This document is a COPY.


G. Physical and Environmental Security. The Bank protects all areas that contain Information Processing System(s) or media containing Personal Data by the use of security controls deemed appropriate by Bank.

H. Communications and Operations Management. The Bank uses detection, prevention, and recovery controls which are consistent with Financial Services Industry Best Practices to protect against malicious software and attacks, and trains its Workforce on the prevention and detection of malicious software and attacks. Bank disposes of any paper, electronic or other record containing Personal Data using all reasonable steps to destroy (based on Bank's determination of the sensitivity of the information) the Personal Data. To protect the confidentiality and integrity of Personal Data in transit, Bank uses encryption tools that are consistent with Financial Services Industry Best Practices, to encrypt records and files containing Personal Data that Bank: (i) transmits or sends wirelessly across public networks; (ii) stores on its laptops; (iii) where technically practicable, stores on allowed portable devices; and (iv) stores on any device that Bank authorizes to be transported outside of its physical or logical controls. The Bank uses appropriate measures to safeguard the security and confidentiality of all encryption keys associated with encrypted Personal Data.

I. Access Control. To protect Personal Data from the risks inherent in mobile computing and remote access, Bank performs a risk assessment which, at a minimum, is designed to identify and mitigate risks to Personal Data from mobile computing and remote access, maintain a policy and procedures for managing mobile computing and remote access, and use security controls that are consistent with Financial Services Industry Best Practices to manage authentication of mobile and remote users.

J. Information Systems Acquisition, Development and Maintenance. To protect Information Processing System(s) and system files containing Personal Data, Bank restricts access to source code to authorized users whom Bank has determined have a need to know such Personal Data in the performance of their duties.

To protect Information Processing System(s) and system files containing Personal Data, Bank:

i. Uses a change control process which is consistent with Financial Services Industry Best Practices to implement Information Processing System(s) changes; and
ii. Uses security controls which are consistent with Financial Services Industry Best Practices.

K. Information Security Event Management. The Bank maintains an incident response plan that addresses handling of Information Security Events. In accordance with such incident response plan, Bank will:

i. Provide Company prompt, but in no event later than (2) Business Days of becoming aware thereof, notice of any Information Security Event documented and verified by Bank as part of its standard incident response process that involves, or which Bank reasonably believes involves, the unauthorized access, use or disclosure of Company's Personal Data.
ii. Such notice shall, to the extent Bank is legally allowed, summarize in reasonable detail the Information Security Event and the corrective action taken or to be taken by Bank, if known at that time. The Bank will promptly take all corrective action deemed necessary or appropriate by Bank at no additional charge to Company.

L. Business Continuity Management. In order to protect the confidentiality and availability of Personal Data, Bank maintains a business continuity management program that is consistent with Financial Services Industry Best Practices which it updates and tests at planned intervals and as required.

M. Security Assessments. The Bank scans internal and external facing Information Processing System(s) with applicable industry standard security vulnerability scanning software (including network, server, application and database scanning tools) at a minimum once per month and perform mitigations that it deems appropriate to address issues identified.

The Bank performs a comprehensive application penetration test and security evaluation of all websites used to store, access, or process Personal Data prior to use and at least annually thereafter.

N. De-identification of Personal Data Used in Non-Production Environments. The Bank performs De-identification of all Personal Data prior to storing, accessing, or processing the information in environments other than in its production environments or those of its Extended Workforce, provided that Bank does not do so if:

i. the security controls used in the environment are equivalent to the security controls used in the production environment;
ii. De-identification would interfere with the resolution of a current production failure;
iii. De-identification would interfere with an atypical, short-term, non-production activity (e.g., near-production final testing) where De-identification would distort the results of the activity; or
iv. De-identification would interfere with our legal or regulatory obligations.

**29. SEVERABILITY.** If any provision of this Agreement or the application of any such provision to any person or set of circumstances is held to be invalid, unlawful, void or unenforceable to any extent, the remainder of the Agreement, and the application of such provision to persons or circumstances other than those as to which it is determined to be invalid, unlawful, void or unenforceable, shall not be impaired or otherwise affected and shall continue to be valid and enforceable to the fullest extent permitted by law.


© 2020 Bank of America Corporation

**30. INDEMNIFICATION.** Company agrees to indemnify and keep indemnified Bank and hold Bank harmless from and against any and all liabilities, claims, costs, expenses and damages of any nature (including legal expenses) arising out of or relating to disputes or legal actions by parties other than Company and the Bank concerning the services provided under this Agreement, including Company's negligence or willful misconduct. The obligations contained in the preceding sentence will continue after the Agreement is terminated for claims that arise based on events occurring during the use of the Services. This section does not apply to any cost or damage attributable to the Bank's gross negligence or intentional misconduct.

**31. LIMITATION OF LIABILITY.**

A. The Bank is liable to Company only for actual damages incurred as a direct result of the Bank's failure to exercise reasonable care in providing the services under this Agreement.

B. In no event will the Bank be liable for any indirect, consequential or punitive loss, damage, cost or expense of any nature or any economic loss or damage, expense any loss of business, profits or revenue, goodwill and anticipated savings, loss of or corruption to Company's data, loss of operation time or loss of contracts, even if advised of the possibility of such loss, damage, cost or expense.

Failure to authorize. Company acknowledges that the Bank shall have no obligation or liability to Company or any Cardholder where:

i. any third party fails to honor any payment or transaction requested in connection with a Card, Card Account or Convenience Check (if applicable); or
ii. the Bank refuses or fails to authorize the use of any Card, Card Account or Convenience Check (if applicable).

C. Neither party will be responsible for the acts or omissions of the other or the other's officers, employees or agents (including but not limited to the amount, accuracy, timeliness or authorization of any instructions or information received). The Bank will not be responsible for the acts or omissions of any other person or entity, including any clearing house association, card network or processor, any U.S. Federal Reserve Bank or any other country's central bank, any other financial institution or any supplier (except for Bank's suppliers providing the Services under this Agreement), and no such person or entity will be deemed the Bank's agent.

D. If Company permits any Subsidiary or other person to access one of the Bank's Service installations on Company's premises through use of a remote access software package, the Bank will not be responsible or liable for such Subsidiary or person's use or misuse of the Bank's Service or access to accounts owned by Company and for which Company did not authorize that Subsidiary or person to have access via Company's installation. The Bank may and will treat all instructions and information received by it through this arrangement as provided by and for the benefit of Company and subject to all Bank's rights under this Agreement with respect to a Service.

E. Neither Company nor Bank will be liable for and will be excused from any failure or delay in performing its respective obligations under this Agreement if such failure or delay is caused by circumstances beyond the control of the other party, including any natural disaster (such as earthquakes or floods), emergency conditions (such as war, riot, fire, theft or labor dispute), legal constraint or governmental action or inaction, or the act, omission, negligence or fault of the other.

F. Neither party will be liable for any failure to act on its part if such party reasonably believes that its action would have violated any law, rule or regulation.

**32. NO WAIVER.** No delay or failure to exercise any right or remedy under this Agreement shall be deemed a waiver of such right or remedy. No waiver of a single breach or default under the Agreement shall be a waiver of any other breach or default. Any waiver under the Agreement must be in writing.

**33. AMENDMENT OF THIS AGREEMENT.**

A. Company may request Bank at any time to change the processing instructions for a Card or an Account. Bank is not obligated to implement any requested changes until it has had a reasonable opportunity to act upon them. In making changes, Bank is entitled to rely on requests purporting to be from Company. For certain changes, Bank may require that Company's requests be in writing, in a form and manner acceptable to Bank, or be from an authorized person Company designates. In addition, certain requests for changes may be subject to Bank's approval.

B. The Bank may change, add or delete any of the terms, conditions and/or pricing applicable to an Account or Card or card program upon 30 days' prior notice to Company in writing or by electronic means. Company's continued use of or failure to terminate the Agreement, after the effective date of the change, will indicate Company's agreement to the change.

**34. ENTIRE AGREEMENT.**

A. The Agreement constitutes and represents the entire agreement between the parties regarding the Commercial Card service and supersedes and extinguishes all prior agreements, understandings, representations, warranties and arrangements of any nature (including requests for proposals and other sales material), whether oral or written, between the parties relating to such service. In the event of any conflict between this Agreement and any relevant User Documentation, any other document or written or oral statement, this Agreement shall prevail.

B. Except for any person or entity to whom this Agreement provides any express indemnity or covenant, Company and Bank do not


V 0032020 © 2020 Bank of America Corporation

The authoritative document is owned by Bank of America, N.A. and this copy was created on 03/22/2024 02:08:48 PM EDT. 2685858908. This document is a COPY.
DocuSign Envelope ID: 4ECB44A5-0524-4935-AF3B-4742DB87F9BA



intend that the Agreement shall confer any right or benefit on any person or entity who is not a party to the Agreement (including any right or requirement to consent to any variation, amendment or termination of the Agreement), and any and all laws or regulations conferring such rights or benefits are hereby excluded (to the maximum extent permissible). Nothing contained in the Agreement shall create any agency, fiduciary, joint venture or partnership between Company and Bank.

You consent to the use of electronic communications and electronic signatures for all purposes under or in connection with the Agreement. Both parties are conscious of the risks that the use of electronic documents and signatures may entail and, nonetheless, have agreed to use them for their mutual benefit and agreed that the Agreement so executed and delivered must be recognized and have the same effects as if it were a paper-based document with wet-ink signatures.

---

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the Effective Date.

**COMPANY**

Decorative Plumbing Distributors LLC
(Company's Legal Name)

DocuSigned by:
70D708AEAFD845D...
By: (Signature)

William D. Butler
Name: (Print or Type)

President
Title: (Print or Type)

Address for Notices:
41841 Albrae St
Fremont, CA 94538

**Bank of America, N.A.**

DocuSigned by:
[redacted]
08B028D93880417...
By: (Signature)

Therie Ann Bulnes
Name: (Print or Type)

Vice President Treasury Sales Officer
Title: (Print or Type)

Address for Notices:
Bank of America Office Park
Mail Code FL9-200-02-04 Attn. Resolution Services
9000 SOUTHSIDE BLVD BLDG 200
JACKSONVILLE, FL, 32256

---

**PERSONAL GUARANTY, (Signature is only required if a personal guarantee by Principal(s) or Owner(s) is required by bank):** By signing below, I certify that I am an Authorized Officer of the business named in this agreement and the person whose information is provided above with the authority to bind the Applicant to the Terms and Conditions included with this agreement. I acknowledge and agree on behalf of the Applicant and individually (1) that the Applicant and I are jointly and individually liable for paying all charges on all accounts, and (2) to the Terms and Conditions included with this agreement.

DocuSigned by:
70D708AEAFD845D...
*Signature 1: Principal/Owner for Applicant and individually as Guarantor*

Bill Butler
*Printed Name 1: Principal/Owner for Applicant and individually as Guarantor*

DocuSigned by:
Anne Butler
*Signature 2: Principal/Owner for Applicant and individually as Guarantor*

Anne Butler
*Printed Name 2: Principal/Owner for Applicant and individually as Guarantor*

*Signature 3: Principal/Owner for Applicant and individually as Guarantor*

*Printed Name 3: Principal/Owner for Applicant and individually as Guarantor*

*Signature 4: Principal/Owner for Applicant and individually as Guarantor*

*Printed Name 4: Principal/Owner for Applicant and individually as Guarantor*


© 2020 Bank of America Corporation

The authoritative document is owned by Bank of America, N.A. and this copy was created on 03/22/2024 03:08:48 PM EDT. 2695588965. This document is a COPY.


BANK OF AMERICA

# Commercial Card Account Agreement

©2019 Bank of America Corporation. AD-AB-6453ED | 07-2019 | 060158

# EXHIBIT 3

BANK OF AMERICA

# GUARANTY AND COLLATERAL AGREEMENT

| TRANSACTION SUMMARY | |
|---|---|
| **Date of Related Note:** | March 1, 2024 |
| **Credit Limit of Related Note:** | $4,000,000.00 |
| **Loan Account Number:** | [redacted] |
| **Name(s) of Borrower:** | Decorative Plumbing Distributors LLC |
| **Name(s) of Guarantor:** | Anne H. Butler and William D. Butler |

This Guaranty and Collateral Agreement, dated and effective as of March 1, 2024, is entered into among the Borrower, each Guarantor and Bank of America, N.A. (the "Bank") to govern the Continuing and Unconditional Guaranty and the Security Agreement set forth herein, in connection with the Note, dated as of March 1, 2024 (as amended from time to time, and as set forth in more detail in the Transaction Summary above, the "Related Note"), between the Borrower and the Bank, the Master Credit Agreement, dated as of March 1, 2024 (as amended from time to time, the "Master Credit Agreement"), between the Borrower and the Bank, and the Covenant Agreement executed in connection therewith.

**1. DEFINITIONS.**

**1.1 General.** Unless otherwise defined herein, capitalized terms used in this Guaranty and Collateral Agreement shall have the respective meanings ascribed thereto in Section 1 of the Master Credit Agreement and as otherwise may be provided in other provisions of the Credit Documents. Except as otherwise expressly set forth herein, each reference herein to "herein," "hereunder" or "hereof" shall be deemed a reference to this Guaranty and Collateral Agreement.

**1.2 In this Guaranty and Collateral Agreement**:

"Borrower" means, collectively and individually, each person set forth in the Transaction Summary as the "Borrower".

"Credit Facility" means "Credit Facility" as defined in the Related Note.

"Guarantor" means each person or entity (if any) set forth in the Transaction Summary as the "Guarantor", and "Guarantors" means all such persons and entities collectively.

"Guaranty and Collateral Agreement" means this Guaranty and Collateral Agreement among the Borrower, each Guarantor and the Bank, as amended from time to time.

"Obligations" means "Obligations" as defined in the Related Note.

"Transaction Summary" means the summary of terms set forth on page one of this Guaranty and Collateral Agreement.

**2. CONTINUING AND UNCONDITIONAL GUARANTY.**

**BY SIGNING BELOW, EACH GUARANTOR: (i) CONSENTS TO, JOINS IN AND AGREES TO BE BOUND BY THIS GUARANTY AND COLLATERAL AGREEMENT, (ii) CONSENTS TO, JOINS IN AND AGREES TO BE BOUND BY THE RELATED NOTE, THE MASTER CREDIT AGREEMENT AND THE COVENANT AGREEMENT, INCLUDING ANY AND ALL AMENDMENTS THERETO (ALL WITHOUT NOTICE**

**TO OR CONSENT BY SUCH GUARANTOR); (iii) AGREES TO BE BOUND BY THE TERMS OF THE CONTINUING AND UNCONDITIONAL GUARANTY SET FORTH BELOW (THE "GUARANTY"); (iv) HEREBY MAKES EACH OF THE REPRESENTATIONS AND WARRANTIES AND AGREES TO EACH OF THE COVENANTS IN THIS GUARANTY AND COLLATERAL AGREEMENT, THE RELATED NOTE, THE MASTER CREDIT AGREEMENT AND THE COVENANT AGREEMENT THAT ARE APPLICABLE TO SUCH GUARANTOR OR ALL OBLIGORS, (v) WARRANTS AND COVENANTS TO THE BANK THAT, EXCEPT TO THE EXTENT PREVIOUSLY DISCLOSED TO THE BANK IN WRITING, ALL REPRESENTATIONS AND WARRANTIES PREVIOUSLY MADE BY IT TO THE BANK ARE TRUE, COMPLETE AND ACCURATE AS OF THE DATE OF THIS GUARANTY AND COLLATERAL AGREEMENT; AND (vi) ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED AND HAD THE OPPORTUNITY TO REVIEW COPIES OF EACH OF THE RELATED NOTE, THE MASTER CREDIT AGREEMENT AND THE COVENANT AGREEMENT.**

**2.1 Continuing and Unconditional Guaranty**. In consideration of the Bank extending the Credit Facility to the Borrower each person and entity signing below as a Guarantor unconditionally guarantees to the Bank and its successors and assigns, the prompt payment and performance of (a) all Obligations and (b) all obligations under any deposit, treasury management or similar transaction or arrangement of any Borrower with the Bank (collectively, the "Guaranteed Obligations"). EACH GUARANTOR'S LIABILITY HEREUNDER SHALL COMMENCE UPON SUCH GUARANTOR'S EXECUTION OF THIS GUARANTY AND COLLATERAL AGREEMENT AND SHALL BE UNLIMITED IN AMOUNT. This Guaranty shall operate as a continuing, unconditional and absolute guaranty. Each Guarantor waives all requirements of notice, demand, presentment or protest, any right such Guarantor may have to require the Bank first to proceed against the Borrower or any other person or entity, to marshall assets or first to realize on any collateral (including the Collateral) before proceeding against such Guarantor hereunder, or to give notice of the terms, time and place of any public or private sale or other disposition of any Collateral. Further, each Guarantor waives all other defenses that may be available to a surety, including but not limited to those based upon or arising by reason of (i) any disability or other defense of the Borrower or any other person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Guaranteed Obligations; (iii) any lack of authority of any person acting or purporting to act on behalf of the Borrower which is an entity, or any defect in the formation of the Borrower; (iv) the application by the Borrower of the proceeds of any Guaranteed Obligations for purposes other than the purposes represented by the Borrower to, or intended or understood by, the Bank or such Guarantor; (v) any act or omission by the Bank which directly or indirectly results in or aids the discharge of the Borrower or any portion of the Guaranteed Obligations by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of the Bank against the Borrower; (vi) any impairment of the value of any interest in any Collateral, including without limitation, the failure to obtain or maintain perfection or recordation of any interest in any Collateral, the release of any Collateral without substitution, and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any Collateral; (vii) any modification of the Guaranteed Obligations, in any form whatsoever, and including without limitation the renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Guaranteed Obligations, including increase or decrease of the rate of interest and any amendment or modification to any Credit Document; (viii) any requirement that the Bank give any notice of acceptance of this Guaranty; (ix) any defense based on any claim that such Guarantor's obligations exceed or are more burdensome than those of the Borrower; (x) the benefit of any statute of limitations affecting such Guarantor's liability under this Guaranty; or (xi) any election of remedies by the Bank, even though that election of remedies, such as a non-judicial foreclosure with respect to any security for any portion of the Guaranteed Obligations, destroys such Guarantor's rights of subrogation or such Guarantor's rights to proceed against the Borrower for reimbursement. Each Guarantor waives all rights of setoff and exoneration, or subrogation until the Guaranteed Obligations shall have been paid and/or performed in full. Each Guarantor agrees that the Bank may renew, compromise, extend, accelerate, or otherwise change the time for payment, or otherwise change the terms, of the Obligations or any part thereof, including increase or decrease of the rate of interest, modify or extend the terms of the Related Note, the Master Credit Agreement, the Covenant Agreement or of any other Guaranteed Obligations, or compromise, settle or release any other obligor under the Guaranteed Obligations, all without notice to or consent by such Guarantor and without affecting such Guarantor's liability hereunder. Additionally, the Bank may receive and hold security for the payment of this Guaranty or any Guaranteed Obligations under this Guaranty and Collateral Agreement and exchange, enforce, waive, release, fail to perfect, sell, or otherwise dispose of any such security. Any obligations of the Borrower to each Guarantor, now or hereafter existing, including but not limited to any obligations to any Guarantor as subrogee of Bank or resulting from such Guarantor's performance under this Guaranty, are hereby subordinated to the Guaranteed Obligations. Each Guarantor shall not demand, take, or receive from the Borrower, by setoff or in any other manner, payment of any other obligations of the Borrower to such Guarantor until the Guaranteed Obligations have been paid in full

and any commitments of the Bank or facilities provided by the Bank with respect to the Guaranteed Obligations have been terminated. If any payments are received by any Guarantor in violation of such waiver or agreement, such payments shall be received by such Guarantor as trustee for the Bank and shall be paid over to the Bank on account of the Guaranteed Obligations, but without reducing or affecting in any manner the liability of such Guarantor under the other provisions of this Guaranty. Any security interest, lien, or other encumbrance that each Guarantor may now or hereafter have on any property of the Borrower is hereby subordinated to any security interest, lien, or other encumbrance that the Bank may have on any such property. Each Guarantor grants the Bank the right of setoff for all matured and unmatured Guaranteed Obligations against all deposits and property of such Guarantor now or hereafter in the possession or control of the Bank or its affiliates without regard to the adequacy of Collateral. Each Guarantor grants the Bank a security interest in all such property to secure such Guarantor's obligations. Until the Guaranteed Obligations have been paid in full and any commitments of the Bank to provide further extensions of credit have been terminated, each Guarantor waives any right of subrogation, reimbursement, indemnification and contribution. This Guaranty shall be binding upon each Guarantor's successors and assigns. This Guaranty may be modified only by a written agreement signed by the Bank and each Guarantor. THIS GUARANTY IS SUBJECT TO THE VENUE, JURISDICTION AND DISPUTE RESOLUTION PROVISION CLAUSES SET FORTH IN THE MASTER CREDIT AGREEMENT. EACH GUARANTOR ACKNOWLEDGES THAT ANY CONTROVERSIES OR CLAIMS RELATING TO THIS GUARANTY ARE SUBJECT TO ARBITRATION, JUDICIAL REFERENCE, AND/OR JURY TRIAL WAIVER AS PROVIDED FOR IN THE MASTER CREDIT AGREEMENT. EACH GUARANTOR ACKNOWLEDGES THIS IS A COMMERCIAL TRANSACTION AND NOT A CONSUMER TRANSACTION. Each Guarantor agrees that the Bank may rely on a facsimile of this Guaranty. Each Guarantor acknowledges that it has had the opportunity to consult with counsel of its own choosing with respect to this Guaranty. This Guaranty is intended to take effect as an instrument under seal. If any Guarantor is an entity other than an individual, the individuals signing on behalf of such Guarantor represent and warrant that they are duly authorized to execute this Guaranty on behalf of such Guarantor. Each Guarantor agrees to pay all reasonable attorneys' fees and all other costs and expenses that may be incurred by the Bank in the enforcement of this Guaranty or in connection with the preservation or protection of the Bank's rights under this Guaranty. In the event of the death of a Guarantor, the liability of the estate of the deceased Guarantor shall continue in full force and effect as to (i) the Obligations existing at the date of death, and any renewals or extensions, and (ii) loans or advances made to or for the account of the Borrower after the date of death of the deceased Guarantor pursuant to a commitment made by Bank to the Borrower prior to the date of such death. As to any surviving Guarantor, this Guaranty shall continue in full force and effect after the death of a Guarantor, not only as to Obligations existing at that time but also as to the Obligations later incurred by Borrower to Bank. This guaranty is cumulative and does not supersede any other outstanding guaranties, and the liability of each Guarantor under this Guaranty and Collateral Agreement is exclusive of such Guarantor's liability under any other guaranties signed by such Guarantor.

**2.2 Indemnity**. Each Guarantor, jointly and severally, will indemnify and hold the Bank harmless from any loss, liability, damages, judgments, and costs of any kind relating to or arising directly or indirectly out of (a) this Guaranty and Collateral Agreement, the Related Note or any document required hereunder or signed in connection herewith, (b) the Credit Facility extended or committed by the Bank to the Borrower under the Related Note, (c) any litigation or proceeding related to or arising out of this Guaranty and Collateral Agreement, the Related Note, or the Credit Facility, and (d) any loss or liability the Bank incurs in connection with or as a result of entering into the Related Note or this Guaranty and Collateral Agreement, which directly or indirectly arises out of the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a hazardous substance. This indemnity includes but is not limited to attorneys' fees (including the allocated cost of in-house counsel). This indemnity extends to the Bank, its parent, subsidiaries, affiliates and all of their directors, officers, employees, agents, successors, attorneys, and assigns. This indemnity will survive repayment of the Obligations to the Bank. All sums due to the Bank hereunder shall be Obligations of each Guarantor, due and payable immediately without demand.

**2.3 Information Relating to Borrower**. Each Guarantor acknowledges and agrees that it has made such independent examination, review, and investigation of the Credit Documents as such Guarantor deems necessary and appropriate, and shall have sole responsibility to obtain from the Borrower any information required by such Guarantor about any modifications to the Credit Documents. Each Guarantor further acknowledges that the Bank has no duty, and no Guarantor is relying on the Bank, at any time to disclose to such Guarantor any information relating to the business operations or financial condition of the Borrower. For purposes of this Section 2.3 "Credit Documents" shall mean all agreements, documents, and instruments evidencing any of the Obligations, including but not limited to the Master Credit Agreement, the Covenant Agreement, the Related

Note, and all deeds of trust, mortgages, security agreements, and other agreements, documents, and instruments executed by Borrower in connection with the Obligations, all as now in effect and as hereafter amended, restated, renewed, or superseded.

**3. SECURITY AGREEMENT.**

Decorative Plumbing Distributors LLC hereby assigns and grants to the Bank, and to the Bank's subsidiaries and affiliates, a continuing security interest in the following described property now owned or hereafter acquired by such Obligor (collectively, "Collateral"), which does and shall secure all Obligations:

All (a) Accounts; (b) Chattel Paper; (c) Deposit Accounts; (d) Documents; (e) General Intangibles; (f) Goods, including Equipment; (g) Instruments; (h) Inventory; (i) Investment Property; (j) Letters of Credit and Letter-of-Credit Rights; (k) Money and other assets of such Obligor that now or later come into the possession, custody, or control of the Bank; (l) all negotiable and nonnegotiable documents of title covering any of the foregoing; (m) all Accessions, attachments and other additions to, or substitutions and replacements for, the foregoing, and all tools, parts and equipment used in connection with the foregoing; (n) all books and records relating to the foregoing whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer software necessary to process such memory; and (o) all proceeds (as such term is defined in the Uniform Commercial Code), all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the foregoing, and all income, benefits and property receivable on account of the foregoing, and all Supporting Obligations covering any of the foregoing (all such proceeds, collectively, "Proceeds").

Except as otherwise agreed in writing by the Bank and the Obligors, if the Obligations include, now or hereafter, any Special Flood Zone Loan, then the following shall apply: The Special Flood Zone Loan shall not be secured under this Guaranty and Collateral Agreement by any Collateral which would constitute "contents" located within the Flood Zone Improvements. For the purposes of this subparagraph, (a) "Flood Zone Improvements" means any "improved" real property that is located within a Special Flood Hazard Area; (b) a "Special Flood Zone Loan" means a loan or line of credit which is secured by Flood Zone Improvements; and (c) the terms "improved" real property, "Special Flood Hazard Area," and "contents" shall have the meaning ascribed to them by the Flood Disaster Protection Act of 1973, 42 U.S.C. § 4001 *et seq.*, and implementing regulations, 44 C.F.R. Parts 59 *et seq.*, and/or the Federal Emergency Management Agency ("FEMA").

Each Obligor agrees that the Collateral may be sold as provided for in any Credit Document and to the extent permitted by applicable law, expressly waives any rights of notice of sale, advertisement procedures, or related provisions granted under applicable law, including the UCC. This Guaranty and Collateral Agreement does not supersede any outstanding security agreement that covers liabilities of any Obligor not included in the Related Note.

**4. GOVERNING LAW.** Except to the extent that any law of the United States may apply, this Guaranty and Collateral Agreement shall be governed and interpreted according to the laws of New York, without regard to any choice of law, rules or principles to the contrary. Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of the Bank under federal law.

**5. ELECTRONIC RECORDS AND SIGNATURES.**

**5.1 Electronic Records and Signatures.** Any Credit Document and any document, amendment, approval, consent, information, notice, certificate, request, statement, disclosure or authorization related to the transaction(s) described in the Credit Documents (each a "Communication"), including Communications required to be in writing, may, if agreed by the Bank, be in the form of an Electronic Record and may be executed using Electronic Signatures, including, without limitation, facsimile and/or .pdf. The Borrower and each Guarantor agrees that any Electronic Signature (including, without limitation, facsimile or .pdf) on or associated with any Communication shall be valid and binding on the Borrower and each Guarantor to the same extent as a manual, original signature, and that any Communication entered into by Electronic Signature, will constitute the legal, valid and binding obligation of the Borrower and Guarantors enforceable against the Borrower and Guarantors in accordance with the terms thereof to the same extent as if a manually executed original signature was delivered to the Bank. Any Communication may be executed in as many counterparts as necessary or convenient, including both paper and electronic counterparts, but all such counterparts are one and the same Communication. For the avoidance of doubt, the authorization under this paragraph may include, without limitation, use or acceptance by the Bank of a manually signed paper Communication which has been converted into electronic

form (such as scanned into PDF format), or an electronically signed Communication converted into another format, for transmission, delivery and/or retention. The Bank may, at its option, create one or more copies of any Communication in the form of an imaged Electronic Record ("Electronic Copy"), which shall be deemed created in the ordinary course of the Bank's business, and destroy the original paper document. All Communications in the form of an Electronic Record, including an Electronic Copy, shall be considered an original for all purposes, and shall have the same legal effect, validity and enforceability as a paper record. Notwithstanding anything contained herein to the contrary, the Bank is under no obligation to accept an Electronic Signature in any form or in any format unless expressly agreed to by the Bank pursuant to procedures approved by it; provided, further, without limiting the foregoing, (a) to the extent the Bank has agreed to accept such Electronic Signature, the Bank shall be entitled to rely on any such Electronic Signature purportedly given by or on behalf of any Obligor without further verification and (b) upon the request of the Bank any Electronic Signature shall be promptly followed by a manually executed, original counterpart. For purposes hereof, "Electronic Record" and "Electronic Signature" shall have the meanings assigned to them, respectively, by 15 USC §7006, as it may be amended from time to time.

**5.2 Conversion to Paper Original.**

(a) At the Bank's discretion the authoritative electronic copy of each Credit Document ("Authoritative Copy") may be converted to paper and marked as the original by the Bank (the "Paper Original").

(b) Unless and until the Bank creates a Paper Original, the Authoritative Copy of each Credit Document:

(i) shall at all times reside in a document management system designated by the Bank for the storage of authoritative copies of electronic records, and

(ii) is held in the ordinary course of business.

(c) In the event the Authoritative Copy is converted to a Paper Original, the parties hereto acknowledge and agree that:

(i) the electronic signing of each Credit Document also constitutes issuance and delivery of the Paper Original,

(ii) the electronic signature(s) associated with each Credit Document, when affixed to the Paper Original, constitutes legally valid and binding signatures on the Paper Original, and the respective obligations of each Obligor will be evidenced by the Paper Original after such conversion.

**6. GENERAL PARTNER LIABILITY AND WAIVERS OF OTHER RIGHTS AND DEFENSES.**

(a) If the Borrower is a partnership and any Guarantor is a general partner of that partnership, then such Guarantor shall not be liable under this Guaranty and Collateral Agreement for any portion of the Obligations that is secured by real property; provided, however, that such Guarantor shall remain liable under partnership law for all of the Obligations.

(b) Each Guarantor waives any rights and defenses that are or may become available to such Guarantor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(c) Each Guarantor waives all rights and defenses that such Guarantor may have because any of the Obligations are secured by real property. This means, among other things: (i) the Bank may collect from any Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower; (ii) if the Bank forecloses on any real property collateral pledged by the Borrower: (1) the amount of the Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (2) the Bank may collect from any Guarantor even if the Bank, by foreclosing on any real property collateral, has destroyed any right such Guarantor may have to collect from the Borrower; and (iii) if the Bank consents to a sale of any real property for less than the remaining amount of the Obligations due at the time of sale, the amount of each Guarantor's obligation for Obligations guarantied hereunder shall be reduced only by the amount of sales proceeds applied against the Obligations, even if such consent destroyed rights any such Guarantor may have to collect from the Borrower, and notwithstanding Section 580e of the California Code of Civil Procedure or any other statute. This is an unconditional and irrevocable waiver of any rights and defenses

each Guarantor may have because any of the Obligations is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, 580e or 726 of the California Code of Civil Procedure.

(d) Each Guarantor waives any right or defense it may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure.

This Guaranty and Collateral Agreement is executed as of the date first written above.

Bank:

**Bank of America, N.A.**

DocuSigned by:

By: ______________________
684CF2847CEC428
Authorized Representative

Borrower:

**Decorative Plumbing Distributors LLC**

DocuSigned by:

By: ______________________
70D700AEAFD845D
William D. Butler, Manager

Guarantor:

DocuSigned by:

Anne H. Butler
B5B31BCAC7C34ED
Anne H. Butler, Individually

**Location of Guarantor:**
Anne H. Butler
922 Lundy Lane
Los Altos, CA 94024-5940

DocuSigned by:

______________________
70D700AEAFD845D
William D. Butler, Individually

**Location of Guarantor:**
William D. Butler
922 Lundy Lane
Los Altos, CA 94024-5940

***Federal law requires Bank of America, N.A. (the "Bank") to provide the following two notices. The notices are not part of the foregoing agreement or instrument and may not be altered. Please read the notices carefully.***

***These notices apply only to individual Borrowers or Guarantors and individuals who are pledging collateral, granting a lien on real property or are otherwise obligated to the Bank (Obligors):***

**(1) U.S. AFFILIATE SHARING NOTICE**

From time to time the Bank may share information about the Obligor's experience with Bank of America Corporation (or any successor company) and its subsidiaries and affiliated companies (the "Affiliates"), including, but not limited to, the Bank of America Companies listed in notice #2 below. The Bank may also share with the Affiliates credit-related information contained in any applications, from credit reports and information it may obtain about the Obligor from outside sources.

If the Obligor is an individual, the Obligor may instruct the Bank not to share this information with the Affiliates. The Obligor can make this election by (1) visiting the Bank online at bankofamerica.com/privacy or (2) calling the Bank toll-free at 888.341.5000. To help the Bank complete the Obligor's request, the Obligor should include the Obligor's name, address, phone number, account number(s) and social security number.

If the Obligor makes this election, certain products or services may not be made available to the Obligor. This request will apply to information from applications, consumer reports and other outside sources only. Through the normal course of doing business, including servicing the Obligor's accounts and better serving the Obligor's financial needs, the Bank will continue to share transaction and account experience information, as well as other general information among the Affiliates.

**(2) AFFILIATE MARKETING NOTICE – YOUR CHOICE TO LIMIT MARKETING**

- The Bank of America companies listed in this document are providing this notice #2.
- Federal law gives you the right to limit some but not all marketing from all the Bank of America affiliated companies. Federal law also requires us to give you this notice to tell you about your choice to limit marketing from all the Bank of America affiliated companies.
- You may limit all the Bank of America affiliated companies, such as the banking, loan, credit card, insurance and securities companies, from marketing their products or services to you based upon your personal information that they receive from other Bank of America companies. This information includes your income, your account history, and your credit score.
- Your choice to limit marketing offers from all the Bank of America affiliated companies will apply for at least 5 years from when you tell us your choice. Before your choice to limit marketing expires, you will receive a renewal notice that will allow you to continue to limit marketing offers from all the Bank of America affiliated companies for at least another 5 years.
- You may tell us your choice to limit marketing offers, and you may tell us the choices for other customers who are joint account holders with you.
- This limitation will not apply in certain circumstances, such as when you have an account or service relationship with the Bank of America company that is marketing to you.
- For individuals with business purpose accounts, this limitation will only apply to marketing to individuals and not marketing to a business.

**To limit marketing offers, contact us at 888.341.5000.**

**Bank of America Companies:**

This notice applies to all Bank of America U.S. legal entities that utilize the names:

Bank of America

Banc of America
Private Bank
Merrill

These entities include banks and trust companies; credit card companies; brokerage and investment companies; and insurance and securities companies. In addition, this notice applies to the following Bank of America U.S. companies:

Managed Account Advisors LLC
BAL Investment & Advisory, Inc.

# EXHIBIT 4

RECORDING REQUESTED BY

NAME: Jennifer Witherell Crastz

WHEN RECORDED MAIL TO:

NAME: Hemar, Rousso & Heald, LLP

ADDRESS: 15910 Ventura Blvd., Fl. 12

CITY / STATE / ZIP: Encino, CA 91436

CUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

25865568
Louis Chiaramonte
Santa Clara County - Clerk-Recorder
09/05/2025 03:52 PM

Titles: 1 Pages: 14

Fees: $146.00
Taxes: $0
Total: $146.00

(SPACE ABOVE FOR RECORDER'S USE)

Notice of Attachment
(DOCUMENT TITLE)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
After recording return to: SBN: 185487 / 277581

Jennifer Witherell Crastz / Jessica M. Simon
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

TELEPHONE NO.: (818) 501-3800
FAX NO. *(Optional):* (818) 501-2985
E-MAIL ADDRESS *(Optional):* jcrastz@hrhlaw.com; jsimon@hrhlaw.com
ATTORNEY FOR *(Name):* BANK OF AMERICA, N.A.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, California 95113
BRANCH NAME: Downtown Superior Court – Unlimited Civil

FOR RECORDER'S USE ONLY

CASE NUMBER
25CV460941

PLAINTIFF: BANK OF AMERICA, N.A., a national banking association

DEFENDANT: WILLIAM D. BUTLER, an individual; ANNE H. BUTLER, an individual

LEVYING OFFICER *(Name and Address):*
#25004243
Santa Clara County Sheriff
55 West Younger Avenue
San Jose, CA 95110

## NOTICE OF ATTACHMENT

**[This form is used in connection with levy under a writ of attachment.]**

FOR COURT USE ONLY

TO THE PERSON NOTIFIED *(name):* WILLIAM D. BUTLER, an individual

1. Plaintiff in this action seeks to attach property in which defendant has an interest. The property to be attached is
   a. ☐ *(describe property):*

   b. ☒ described in the *Writ of Attachment* and *Order for Issuance of Writ of Attachment*, attached hereto and incorporated by reference.

2. You are notified as
   a. ☒ a defendant.
   b. ☐ a person other than defendant *(state capacity in which person is being notified):*

***(Read Information for Defendant or Information for Person Other than Defendant on reverse.)***

3. A notice was filed with the
   a. ☐ Secretary of State.
   b. ☐ Department of Motor Vehicles.
   c. ☐ Department of Housing and Community Development.

4. Notice of Attachment was
   a. ☐ mailed on *(date):*
   b. ☐ delivered on *(date):*
   c. ☐ posted on *(date):*
   d. ☐ filed on *(date):*
   e. ☒ recorded on *(date):* 9/5/25

Signed by: Brandon Heggem (PS1880 - Santa Clara)

▶ [signature]

☐ Levying officer ☒ Registered process server

## — INFORMATION FOR DEFENDANT —

1. The levying officer may be required to take custody of property described in item 1 in your possession or under your control. You have a right to be represented by an attorney in this lawsuit.
2. You may claim any available exemption for your property. An exemption for real property may be claimed any time before the entry of judgment. If the right to attach order or writ of attachment was issued without a noticed hearing and you wish to claim an exemption for personal property, you must do so within 30 days after the levying officer serves you with the Notice of Attachment describing the property. If you do not claim an exemption, you may lose it and the property is subject to attachment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.
3. Plaintiff has filed an undertaking. You have the right to object to the undertaking and may apply for an order to substitute an undertaking for your property which has been or is subject to being attached.
4. You have a duty to release tangible personal property to the levying officer. You have the rights and duties specified in Code of Civil Procedure section 488.395 if your farm products or inventory of a going business have been or are subject to attachment.
5. If the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.
6. You may apply for a release of the attachment to the extent that the value of your interest in the property exceeds the amount necessary to satisfy the attachment.
7. You may apply to the court for an order modifying or vacating any temporary protective order in the interests of justice or for an order terminating the same upon filing an undertaking.
8. If the writ of attachment has been issued against you because you are a nonresident, you may have the right to attach order set aside by filing a general appearance.
9. If the writ of attachment was issued on an ex parte application, you may apply for an order that the right to attach order be set aside, the writ quashed, and any property levied upon pursuant to the writ be released.
10. If you recover judgment against plaintiff, you may apply for a release of all property attached by plaintiff under the Writ of Attachment. If judgment is recovered against you and you appeal, you have the right to obtain the release of your property by filing a sufficient undertaking.
11. You may object to the amount sought to be secured by the attachment.
12. You may recover damages for wrongful attachment.

## — INFORMATION FOR PERSON OTHER THAN DEFENDANT —

1. If the property attached or sought to be attached is in your possession or under your control and you do not claim the right to possession or a security interest, you must deliver the property to the levying officer. If you do not deny an obligation levied upon or do not claim a priority over the plaintiff's lien, you must pay to the levying officer the amount that is due and payable and that becomes due and payable during the period of the attachment lien. You must execute and deliver any documents needed to transfer the property.
2. You must complete the accompanying Memorandum of Garnishee.
3. If you claim ownership or the right to possession of real or personal property levied upon or if you claim a security interest in or lien on personal property levied upon, you may make a third-party claim and obtain the release of the property pursuant to Code of Civil Procedure sections 720.010–720.800.
4. If you have an interest in the property attached or sought to be attached and the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.
5. **Make checks payable to the levying officer.**



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 47 of 114

AT-136

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| JENNIFER WITHERELL CRASTZ - SBN 185487<br>JESSICA M. SIMON - SBN 277581<br>HEMAR, ROUSSO & HEALD, LLP<br>15910 Ventura Blvd., 12th Floor<br>Encino, CA 91436<br>TELEPHONE NO.: (818) 501-3800 FAX NO. *(Optional)*: (818) 501-2985<br>E-MAIL ADDRESS *(Optional)*: jcrastz@hrhlaw.com; jsimon@hrhlaw.com<br>ATTORNEY FOR *(Name)*: Plaintiff | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA<br>STREET ADDRESS: 191 NORTH FIRST STREET<br>MAILING ADDRESS: 191 NORTH FIRST STREET<br>CITY AND ZIP CODE: SAN JOSE, CA 95113<br>BRANCH NAME: DOWNTOWN SUPERIOR COURT - UNLIMITED CIVIL | |
| PLAINTIFF: BANK OF AMERICA, N.A., a national banking association<br>DEFENDANT: WILLIAM D. BUTLER, an individual; ANNE H. BUTLER, an individual | |
| **WRIT OF ATTACHMENT**<br>[X] **AFTER HEARING** [ ] **EX PARTE** | CASE NUMBER:<br>25CV460941 |

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: **SANTA CLARA**
2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.
3. This writ is to attach property of defendant *(name and last known address)*:
   William D. Butler, an individual
   730 Mora Drive, Los Altos, CA 94024
   and the attachment is to secure: $ 4,048,726.59
4. Name and address of plaintiff: BANK OF AMERICA, N.A., a national banking association
   c/o Hemar, Rousso & Heald, LLP
   15910 Ventura Blvd., 12th Floor, Encino, CA 91436
5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment *(describe property and state its location; itemize by letter)*: see Attachment 9(c)

   [X] This information is on an attached sheet.
6. [ ] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following person other than the defendant:
   a. Name:
   b. Mailing address, if known, as shown by the records of the office of the county tax assessor *(specify)*:
7. [ ] The real property on which the
   [ ] crops described in item 5 ____ are growing
   [ ] timber described in item 5 ____ to be cut is standing stands upon the records of the county in the name of
   a. Name:
   b. Address:

[SEAL]

Date: JUL 2 2 2025 Clerk, by M. ARECHIGA, Deputy

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
AT-135 [Rev. January 1, 2003]

**WRIT OF ATTACHMENT**
**(Attachment)**

Legal Solutions Plus

Code of Civ. Proc., § 488.010

# **Attachment 9(c)**

1. Any shares, dividends, distributions, salary, loan repayments or any other payment or claim owing or to be made to **WILLIAM D. BUTLER, an individual ("Defendant")** from the following entities:

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

2. All real property in which Defendant has an interest (C.C.P. § 488.315), to the extent of Defendant's interest whether legal or equitable, including but is not limited to, the following:

   a. 730 Mora Drive, Los Altos, CA 94024, APN 331-13-056 (Santa Clara County) Legal Description: see attached **Exhibit A**

3. All tangible personal property that Defendant possesses or controls. (C.C.P. § 488.335).

4. All tangible personal property of Defendant that a third party possesses or controls. (C.C.P. § 488.345).

5. All equipment of a going business in which Defendant has an interest. (C.C.P. § 488.375).

6. All vehicles of a going business in which Defendant has an interest. (C.C.P. § 488.385).

7. All inventory of a going business in which Defendant has an interest, including but not limited to, Defendant's interests in the following businesses, and any distribution, dividend, payment, repayment or other transfer of money or assets from those entities. (C.C.P. § 488.395):

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

8. All personal property used as a dwelling in which Defendant has an interest. (C.C.P. § 488.415).

9. All vehicles, vessels, mobile homes or commercial coaches in which Defendant has an interest. (C.C.P. § 488.425).

10. All chattel paper in which Defendant has an interest. (C.C.P. § 488.435).

11. All instruments in which Defendant has an interest. (C.C.P. § 488.440).

12. All negotiable documents in which Defendant has an interest. (C.C.P. § 488.445).

13. All securities in which Defendant has an interest. (C.C.P. § 488.450).



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 49 of 114

14. All deposit accounts in which Defendant has an interest. (C.C.P. § 488.455).

15. All property in any safe deposit box in which Defendant has an interest. (C.C.P. § 488.460).

16. All accounts receivable or general intangibles in which Defendant has an interest. (C.C.P. § 488.470).

17. All estates of a decedent in which Defendant has an interest. (C.C.P. §§ 488.475(d), 488.485).

18. All final money judgments in which Defendant has an interest. (C.C.P. § 488.480).

19. Money on the premises where a trade, business, or profession is conducted by the Defendant. (C.C.P. § 487.010(c)(7).)

**EXHIBIT A**
Legal Description

APN 331-13-056

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF LOTS 49 AND 50, MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897 BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, AND BEING A PORTION OF RECORD OF SURVEY MAP FILED MAY 6, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING IN THE SOUTHEAST LINE OF THAT 2.235 ACRE PARCEL OF LAND DESIGNATED PARCEL ONE ON MAP OF RECORD OF SURVEY FILED JUNE 6, 1962 IN BOOK 147 OF MAPS, PAGE 51, AT THE EASTERNMOST CORNER OF THAT 0.471 ACRE TRACT OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 1, 1963, IN BOOK 6130 OF OFFICIAL RECORDS, PAGE 298, THENCE FROM SAID POINT OF BEGINNING NORTHERLY ALONG THE GENERAL EASTERLY LINE OF SAID 0.471 ACRE TRACT NORTH 45° 22' 40" WEST 77.90 FEET; THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE RIGHT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 77 FEET, THROUGH A CENTRAL ANGLE OF 44° 41' 25" FOR AN ARC DISTANCE OF 60.04 FEET; THENCE NORTH 0° 41' 15" WEST 48.06 FEET; THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE LEFT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 62 FEET, THROUGH A CENTRAL ANGLE OF 74° 15' 51" FOR AN ARC DISTANCE OF 80.36 FEET; THENCE NORTH 74° 57' 06" WEST 8.03 FEET; THENCE NORTH 15° 02' 54" EAST 42.50 FEET AND NORTH 5° 37' 13" EAST 98.34 FEET TO THE SOUTHWEST CORNER OF THAT TRACT OF LAND DESCRIBED AS PARCEL ONE IN THE DEED TO JAMES A. LOSITO, ET UX, RECORDED DECEMBER 3, 1963, IN BOOK 6294 OF OFFICIAL RECORDS, PAGE 395; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID LAST MENTIONED PARCEL SOUTH 31° 57' EAST 40.60 FEET AND SOUTHEAST 49.65 FEET TO THE EASTERNMOST CORNER THEREOF, IN THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT ABOVE REFERRED TO; THENCE NORTHEAST ALONG THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT NORTH 56° 49' EAST 24.60 FEET; THENCE NORTH 43° 19' EAST 41.40 FEET AND NORTH 33° 13' 30" EAST 88.41 FEET TO THE NORTHERNMOST CORNER THEREOF; THENCE SOUTH 46° 16' EAST ALONG THE NORTHEAST LINE OF SAID 2.235 ACRE TRACT 227.29 FEET TO THE EASTERNMOST CORNER THEREOF; THENCE SOUTHWEST ALONG THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT SOUTH 43° 44' WEST 171.98 FEET; NORTH 46° 16' WEST 3 FEET AND SOUTH 43° 44' WEST 33 FEET TO AN ANGLE CORNER THEREIN; THENCE SOUTH 43° 44' WEST ALONG THE SOUTHWEST PROLONGATION OF SAID LAST MENTIONED LINE FOR A DISTANCE OF 20 FEET; THENCE SOUTH 46° 16' EAST 24.36 FEET TO A POINT IN THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT; THENCE SOUTH 43° 44' WEST ALONG SAID LAST MENTIONED LINE 98.50 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

A NON-EXCLUSIVE EASEMENT FOR THE INSTALLATION AND MAINTENANCE OF A SEWER PIPE LINE OVER A PORTION OF LOT 50 AS SHOWN ON THE MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897, BOOK I, OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, BEING A STRIP OF LAND 10 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHWESTERLY LINE OF ESBERG ROAD, 20 FEET WIDE, WITH THE LINE DIVIDING PARCELS 1 AND 2 AS SHOWN ON THE MAP OF THE RECORD OF SURVEY OF LAND OF FORREST B. DAVIDSON, FILED MAY 6, 1959, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS; THENCE ALONG SAID DIVIDING LINE SOUTH 43° 44' WEST 310.00 FEET, NORTH 46° 16' WEST 74.48 FEET AND SOUTH 43° 44' WEST 66.89 FEET TO THE ACTUAL POINT OF BEGINNING; THENCE FROM SAID ACTUAL POINT OF BEGINNING SOUTH 46° 16' EAST 12 FEET TO AN EXISTING SEWER PIPE LINE.

For informational purposes only:
Address: 730 Mora Dr, Los Altos, California 94024

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): SBN: 185487 / 277581
Jennifer Witherell Crastz/Jessica M. Simon
HEMAR ROUSSO & HEALD, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436
TELEPHONE NO.: (818) 501-3800 FAX NO. (Optional): (818) 501-2985
E-MAIL ADDRESS (Optional): jcrastz@hrhlaw.com
ATTORNEY FOR (Name): Plaintiff, Bank of America, N.A.

FOR COURT USE ONLY

FILED
JUL 10 2025
Clerk of the Court
Superior Court of CA County of Santa Clara
BY [signature] DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Court (DTS)- Unlimited Civil

PLAINTIFF: BANK OF AMERICA, N.A., etc.

DEFENDANT: WILLIAM D. BUTLER; ANNE H. BUTLER

CASE NUMBER: 25CV460941

[X] RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING
[ ] ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER HEARING

1. a. The application of plaintiff *(name)*: BANK OF AMERICA, N.A., a national banking association
for [X] a right to attach order and order for issuance of writ of attachment
[ ] an order for issuance of additional writ of attachment
against the property of defendant *(name)*:
came on for hearing as follows:
(1) Judge *(name)*: Hon. Daniel T. Nishigaya [X] Dept.: 13 [ ] Div.: [ ] Rm.:
(2) Hearing date: ~~July 21, 2025~~ June 18, 2025 Time: 9:00 a.m.
b. The following persons were present at the hearing:
(1) [ ] Plaintiff *(name)*:
(2) [ ] Defendant *(name)*: William D. Butler
(3) ~~[X] Plaintiff's attorney *(name)*: Jennifer Witherell Crastz~~
(4) [ ] Defendant's attorney *(name)*:

**FINDINGS**

2. THE COURT FINDS
a. Defendant *(specify name)*: WILLIAM D. BUTLER, an individual is a [X] natural person [ ] partnership [ ] unincorporated association [ ] corporation [ ] other *(specify)*:
b. The claim upon which the application is based is one upon which an attachment may be issued.
c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
e. The amount to be secured by the attachment is greater than zero.
f. [X] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
g. [ ] The following property of defendant, described in plaintiff's application
(1) [ ] is exempt from attachment *(specify)*:

(2) [ ] is not exempt from attachment *(specify)*:

h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt:
(1) [ ] is exempt from attachment *(specify)*:

(2) [ ] is not exempt from attachment *(specify)*:

i. [X] An undertaking in the amount of: $ 10,000.00 is required before a writ shall issue, and plaintiff [ ] has [X] has not filed an undertaking in that amount.
j. A Right to Attach Order was issued on *(date)*: pursuant to
[ ] Code of Civil Procedure section 484.090 (on hearing) [ ] Code of Civil Procedure section 485.220 (ex parte)
k. [ ] other *(specify)*:





RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)

| SHORT TITLE: BANK OF AMERICA N.A. vs. WILLIAM D. BUTLER, et al. | CASE NUMBER: 25CV460941 |
|---|---|

## ORDER

3. THE COURT ORDERS

a. Plaintiff has a right to attach property of defendant *(name):*

In the amount of: $4,048,726.59

b. [ ] The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

c. The clerk shall issue [X] a writ of attachment [ ] an additional writ of attachment In the amount stated in item 3a

[ ] forthwith [X] upon the filing of an undertaking in the amount of: $ 10,000.00

(1) [ ] for any property of a defendant who is not a natural person for which a method of levy is provided.

(2) [X] for the property of a defendant who is a natural person that is subject to attachment under Code of Civil Procedure section 487.010 described as follows *(specify):*

Please see attachment 9(c)

(3) [ ] for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale of such property, described as follows *(specify):*

(4) [ ] for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license number is *(specify):*

d. [ ] Defendant shall transfer to the levying officer possession of

(1) [ ] any documentary evidence in defendant's possession of title to any property described in item 3c;

(2) [ ] any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;

(3) [ ] the following property in defendant's possession *(specify):*

**NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.**

e. [ ] Other *(specify):*

f. Total number of boxes checked in item 3: 3

Date: June 18, 2025

[signature]

Hon. Daniel T. Nishigaya
JUDICIAL OFFICER

## Attachment 9(c)

1. Any shares, dividends, distributions, salary, loan repayments or any other payment or claim owing or to be made to **WILLIAM D. BUTLER, an individual ("Defendant")** from the following entities:

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

2. All real property in which Defendant has an interest (C.C.P. § 488.315), to the extent of Defendant's interest whether legal or equitable, including but is not limited to, the following:

   a. 730 Mora Drive, Los Altos, CA 94024, APN 331-13-056 (Santa Clara County) Legal Description: see attached **Exhibit A**

3. All tangible personal property that Defendant possesses or controls. (C.C.P. § 488.335).

4. All tangible personal property of Defendant that a third party possesses or controls. (C.C.P. § 488.345).

5. All equipment of a going business in which Defendant has an interest. (C.C.P. § 488.375).

6. All vehicles of a going business in which Defendant has an interest. (C.C.P. § 488.385).

7. All inventory of a going business in which Defendant has an interest, including but not limited to, Defendant's interests in the following businesses, and any distribution, dividend, payment, repayment or other transfer of money or assets from those entities. (C.C.P. § 488.395):

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

8. All personal property used as a dwelling in which Defendant has an interest. (C.C.P. § 488.415).

9. All vehicles, vessels, mobile homes or commercial coaches in which Defendant has an interest. (C.C.P. § 488.425).

10. All chattel paper in which Defendant has an interest. (C.C.P. § 488.435).

11. All instruments in which Defendant has an interest. (C.C.P. § 488.440).

12. All negotiable documents in which Defendant has an interest. (C.C.P. § 488.445).

13. All securities in which Defendant has an interest. (C.C.P. § 488.450).



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 54 of 114

14. All deposit accounts in which Defendant has an interest. (C.C.P. § 488.455).

15. All property in any safe deposit box in which Defendant has an interest. (C.C.P. § 488.460).

16. All accounts receivable or general intangibles in which Defendant has an interest. (C.C.P. § 488.470).

17. All estates of a decedent in which Defendant has an interest. (C.C.P. §§ 488.475(d), 488.485).

18. All final money judgments in which Defendant has an interest. (C.C.P. § 488.480).

19. Money on the premises where a trade, business, or profession is conducted by the Defendant. (C.C.P. § 487.010(c)(7).)

## EXHIBIT A
**Legal Description**

APN 331-13-056

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF LOTS 49 AND 50, MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897 BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, AND BEING A PORTION OF RECORD OF SURVEY MAP FILED MAY 8, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING IN THE SOUTHEAST LINE OF THAT 2.235 ACRE PARCEL OF LAND DESIGNATED PARCEL ONE ON MAP OF RECORD OF SURVEY FILED JUNE 6, 1962 IN BOOK 147 OF MAPS, PAGE 41, AT THE EASTERNMOST CORNER OF THAT 0.471 ACRE TRACT OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 1, 1963, IN BOOK 6130 OF OFFICIAL RECORDS, PAGE 298; THENCE FROM SAID POINT OF BEGINNING NORTHERLY ALONG THE GENERAL EASTERLY LINE OF SAID 0.471 ACRE TRACT NORTH 45° 22' 40" WEST 77.90 FEET, THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE RIGHT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 77 FEET, THROUGH A CENTRAL ANGLE OF 44° 41' 25" FOR AN ARC DISTANCE OF 60.94 FEET, THENCE NORTH 0° 41' 15" WEST 48.08 FEET; THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE LEFT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 62 FEET, THROUGH A CENTRAL ANGLE OF 74° 15' 51" FOR AN ARC DISTANCE OF 80.36 FEET; THENCE NORTH 74° 57' 06" WEST 8.03 FEET; THENCE NORTH 15° 02' 54" EAST 42.50 FEET AND NORTH 5° 37' 13" EAST 98.34 FEET TO THE SOUTHWEST CORNER OF THAT TRACT OF LAND DESCRIBED AS PARCEL ONE IN THE DEED TO JAMES A. LOSITO, ET UX, RECORDED DECEMBER 3, 1963, IN BOOK 6294 OF OFFICIAL RECORDS, PAGE 395; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID LAST MENTIONED PARCEL SOUTH 31° 57' EAST 40.60 FEET AND SOUTHEAST 49.66 FEET TO THE EASTERNMOST CORNER THEREOF, IN THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT ABOVE REFERRED TO; THENCE NORTHEAST ALONG THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT NORTH 66° 49' EAST 24.60 FEET; THENCE NORTH 43° 19' EAST 41.40 FEET AND NORTH 33° 13' 30" EAST 88.41 FEET TO THE NORTHERNMOST CORNER THEREOF; THENCE SOUTH 46° 16' EAST ALONG THE NORTHEAST LINE OF SAID 2.235 ACRE TRACT 227.29 FEET TO THE EASTERNMOST CORNER THEREOF; THENCE SOUTHWEST ALONG THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT SOUTH 43° 44' WEST 171.98 FEET, NORTH 46° 16' WEST 3 FEET AND SOUTH 43° 44' WEST 33 FEET TO AN ANGLE CORNER THEREIN; THENCE SOUTH 43° 44' WEST ALONG THE SOUTHWEST PROLONGATION OF SAID LAST MENTIONED LINE FOR A DISTANCE OF 20 FEET; THENCE SOUTH 46° 16' EAST 24.36 FEET TO A POINT IN THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT; THENCE SOUTH 43° 44' WEST ALONG SAID LAST MENTIONED LINE 98.50 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

A NON-EXCLUSIVE EASEMENT FOR THE INSTALLATION AND MAINTENANCE OF A SEWER PIPE LINE OVER A PORTION OF LOT 50 AS SHOWN ON THE MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897, BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, BEING A STRIP OF LAND 10 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHWESTERLY LINE OF ESBERG ROAD, 20 FEET WIDE, WITH THE LINE DIVIDING PARCELS 1 AND 2 AS SHOWN ON THE MAP OF THE RECORD OF SURVEY OF LAND OF FORREST B. DAVIDSON, FILED MAY 8, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS; THENCE ALONG SAID DIVIDING LINE SOUTH 43° 44' WEST 310.00 FEET, NORTH 46° 16' WEST 74.48 FEET AND SOUTH 43° 44' WEST 68.89 FEET TO THE ACTUAL POINT OF BEGINNING; THENCE FROM SAID ACTUAL POINT OF BEGINNING SOUTH 46° 16' EAST 12 FEET TO AN EXISTING SEWER PIPE LINE.

For informational purposes only:
Address: 730 Mora Dr, Los Altos, California 94024

EFS-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: 185487 / 277581<br>NAME: Jennifer Witherell Crastz/Jessica M. Simon<br>FIRM NAME: HEMAR, ROUSSO & HEALD, LLP<br>STREET ADDRESS: 15910 Ventura Blvd., 12th Floor<br>CITY: Encino STATE: CA ZIP CODE: 91436<br>TELEPHONE NO.: (818) 501-3800 FAX NO.: (818) 501-2985<br>E-MAIL ADDRESS: jcrastz@hrhlaw.com; jsimon@hrhlaw.com<br>ATTORNEY FOR (name): Plaintiff, Bank of America, N.A. | FOR COURT USE ONLY<br><br>E-RECEIVED<br>**on 5/23/2025 10:27 AM**<br>**Reviewed By: R. Aragon**<br>**Case #25CV460941**<br>**Envelope: 19466943** |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS: 191 North First Street<br>CITY AND ZIP CODE: San Jose, CA 95113<br>BRANCH NAME: Downtown Superior Court (DTS)- Unlimited Civil | |
| PLAINTIFF/PETITIONER: BANK OF AMERICA, N.A., a national banking association<br>DEFENDANT/RESPONDENT: WILLIAM D. BUTLER; ANNE H. BUTLER<br>OTHER: N/A | CASE NUMBER: 25CV460941<br>JUDICIAL OFFICER: Hon. Daniel T. Nishigaya |
| **PROPOSED ORDER (COVER SHEET)** | DEPT: 13 |

**NOTE:** This cover sheet is to be used to electronically file and submit to the court a proposed order. The proposed order sent electronically to the court must be in PDF format and must be attached to this cover sheet. In addition, a version of the proposed order in an editable word-processing format must be sent to the court at the same time as this cover sheet and the attached proposed order in PDF format are filed.

1. Name of the party submitting the proposed order:
   BANK OF AMERICA, N.A., a national banking association (plaintiff)

2. Title of the proposed order:
   RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING
   (as to defendant: William D. Butler, an individual)

3. The proceeding to which the proposed order relates is:
   a. Description of proceeding: Application for Right to Attach Order and Issuance of Writ of Attachment (William D. Butler)
   b. Date and time: July 21, 2025 at 9:00 a.m.
   c. Place: Dept. 13, Santa Clara County Superior Court, 191 North First Street, San Jose, CA 95113

4. The proposed order was served on the other parties in the case.

JENNIFER WITHERELL CRASTZ
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY)

| CASE NAME: Bank of America, N.A. vs. William and Anne Butler | CASE NUMBER: 25CV460941 |
|---|---|

**PROOF OF ELECTRONIC SERVICE**
***PROPOSED ORDER***

1. I am at least 18 years old and **not a party to this action.**

   a. My residence or business address is *(specify):*
   15910 Ventura Blvd., 12th Floor, Encino, CA 91436

   b. My electronic service address is *(specify):* mgranzow@hrhlaw.com

2. I electronically served the *Proposed Order (Cover Sheet)* with a proposed order in PDF format attached, and a proposed order in an editable word-processing format as follows:

   a. On *(name of person served) (If the person served is an attorney, the party or parties represented should also be stated.):*
   NOT APPLICABLE

   THE DOCUMENTS ARE CURRENTLY OUT FOR SERVICE VIA A PROCESS SERVER

   b. To *(electronic service address of person served):*

   c. On *(date):*

☐ Electronic service of the *Proposed Order (Cover Sheet)* with the attached proposed order in PDF format and service of the proposed order in an editable word-processing format on additional persons are described in an attachment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 21, 2025

MARY ANN GRANZOW
(TYPE OR PRINT NAME OF DECLARANT)

▶ [signature]
(SIGNATURE OF DECLARANT)



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 58 of 114

RECORDING REQUESTED BY

NAME: Jennifer Witherell Crastz

WHEN RECORDED MAIL TO:

NAME: Hemar, Rousso & Heald, LLP

ADDRESS: 15910 Ventura Blvd., Fl. 12

CITY / STATE / ZIP: Encino, CA 91436

CUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

25865569

Louis Chiaramonte
Santa Clara County - Clerk-Recorder

09/05/2025 03:52 PM

Titles: 1 Pages: 14

Fees: $146.00
Taxes: $0
Total: $146.00

(SPACE ABOVE FOR RECORDER'S USE)

Notice of Attachment

(DOCUMENT TITLE)

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

AT-165

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
After recording return to: SBN: 185487 / 277581

Jennifer Witherell Crastz / Jessica M. Simon
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436

TELEPHONE NO.: (818) 501-3800
FAX NO. *(Optional)*: (818) 501-2985
E-MAIL ADDRESS *(Optional)*: jcrastz@hrhlaw.com; jsimon@hrhlaw.com
ATTORNEY FOR *(Name)*: BANK OF AMERICA, N.A.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, California 95113
BRANCH NAME: Downtown Superior Court – Unlimited Civil

*FOR RECORDER'S USE ONLY*

CASE NUMBER
25CV460941

PLAINTIFF: BANK OF AMERICA, N.A., a national banking association

DEFENDANT: WILLIAM D. BUTLER, an individual; ANNE H. BUTLER, an individual

LEVYING OFFICER *(Name and Address)*:
#15004243
Santa Clara County Sheriff
55 W. Yonger Avenue
San Jose, CA 95110

**NOTICE OF ATTACHMENT**
**[This form is used in connection with levy under a writ of attachment.]**

*FOR COURT USE ONLY*

TO THE PERSON NOTIFIED *(name)*: ANNE H. BUTLER, an individual

1. Plaintiff in this action seeks to attach property in which defendant has an interest. The property to be attached is
   a. [ ] *(describe property)*:

   b. [X] described in the *Writ of Attachment* and *Order for Issuance of Writ of Attachment*, attached hereto and incorporated by reference.

2. You are notified as
   a. [X] a defendant.
   b. [ ] a person other than defendant *(state capacity in which person is being notified)*:

***(Read Information for Defendant or Information for Person Other than Defendant on reverse.)***

3. A notice was filed with the
   a. [ ] Secretary of State.
   b. [ ] Department of Motor Vehicles.
   c. [ ] Department of Housing and Community Development.

4. Notice of Attachment was
   a. [ ] mailed on *(date)*:
   b. [ ] delivered on *(date)*:
   c. [ ] posted on *(date)*:
   d. [ ] filed on *(date)*:
   e. [X] recorded on *(date)*: 9/5/25

Signed by: Brandon Heggen (PS1688-Santa Clara)
▶ [signature]

[ ] Levying officer [X] Registered process server



Form Approved for Optional Use
Judicial Council of California
AT-165 [Rev. January 1, 2003]

**NOTICE OF ATTACHMENT**
**(Attachment)**

Code of Civil Procedure, §§ 482.030, 488.060
Westlaw Doc & Form Builder

## — INFORMATION FOR DEFENDANT —

1. The levying officer may be required to take custody of property described in item 1 in your possession or under your control. You have a right to be represented by an attorney in this lawsuit.
2. You may claim any available exemption for your property. An exemption for real property may be claimed any time before the entry of judgment. If the right to attach order or writ of attachment was issued without a noticed hearing and you wish to claim an exemption for personal property, you must do so within 30 days after the levying officer serves you with the Notice of Attachment describing the property. If you do not claim an exemption, you may lose it and the property is subject to attachment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.
3. Plaintiff has filed an undertaking. You have the right to object to the undertaking and may apply for an order to substitute an undertaking for your property which has been or is subject to being attached.
4. You have a duty to release tangible personal property to the levying officer. You have the rights and duties specified in Code of Civil Procedure section 488.395 if your farm products or inventory of a going business have been or are subject to attachment.
5. If the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.
6. You may apply for a release of the attachment to the extent that the value of your interest in the property exceeds the amount necessary to satisfy the attachment.
7. You may apply to the court for an order modifying or vacating any temporary protective order in the interests of justice or for an order terminating the same upon filing an undertaking.
8. If the writ of attachment has been issued against you because you are a nonresident, you may have the right to attach order set aside by filing a general appearance.
9. If the writ of attachment was issued on an ex parte application, you may apply for an order that the right to attach order be set aside, the writ quashed, and any property levied upon pursuant to the writ be released.
10. If you recover judgment against plaintiff, you may apply for a release of all property attached by plaintiff under the Writ of Attachment. If judgment is recovered against you and you appeal, you have the right to obtain the release of your property by filing a sufficient undertaking.
11. You may object to the amount sought to be secured by the attachment.
12. You may recover damages for wrongful attachment.

## — INFORMATION FOR PERSON OTHER THAN DEFENDANT —

1. If the property attached or sought to be attached is in your possession or under your control and you do not claim the right to possession or a security interest, you must deliver the property to the levying officer. If you do not deny an obligation levied upon or do not claim a priority over the plaintiff's lien, you must pay to the levying officer the amount that is due and payable and that becomes due and payable during the period of the attachment lien. You must execute and deliver any documents needed to transfer the property.
2. You must complete the accompanying Memorandum of Garnishee.
3. If you claim ownership or the right to possession of real or personal property levied upon or if you claim a security interest in or lien on personal property levied upon, you may make a third-party claim and obtain the release of the property pursuant to Code of Civil Procedure sections 720.010–720.800.
4. If you have an interest in the property attached or sought to be attached and the property is perishable or will greatly deteriorate in value, or for other good reason, you may apply ex parte, or if the court or court rule requires, by noticed motion, for an order appointing a receiver or directing the levying officer to take any action necessary to preserve the value of the property, including selling the property. The court may order any receiver to be paid from the proceeds of the sale of your property.
5. **Make checks payable to the levying officer.**

AT-135

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| JENNIFER WITHERELL CRASTZ - SBN 185487<br>JESSICA M. SIMON - SBN 277581<br>HEMAR, ROUSSO & HEALD, LLP<br>15910 Ventura Blvd., 12th Floor<br>Encino, CA 91436<br>TELEPHONE NO.: (818) 501-3800 FAX NO. *(Optional):* (818) 501-2985<br>E-MAIL ADDRESS *(Optional):* jcrastz@hrhlaw.com; jsimon@hrhlaw.com<br>ATTORNEY FOR *(Name):* Plaintiff | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA<br>STREET ADDRESS: 191 NORTH FIRST STREET<br>MAILING ADDRESS: 191 NORTH FIRST STREET<br>CITY AND ZIP CODE: SAN JOSE, CA 95113<br>BRANCH NAME: DOWNTOWN SUPERIOR COURT - UNLIMITED CIVIL | |
| PLAINTIFF: BANK OF AMERICA, N.A., a national banking association<br>DEFENDANT: WILLIAM D. BUTLER, an individual; ANNE H. BUTLER, an individual | |
| **WRIT OF ATTACHMENT**<br>[X] **AFTER HEARING** [ ] **EX PARTE** | CASE NUMBER:<br>25CV460941 |

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: **SANTA CLARA**
2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.
3. This writ is to attach property of defendant *(name and last known address):*
   William D. Butler, an individual
   730 Mora Drive, Los Altos, CA 94024
   and the attachment is to secure: $ 4,048,726.59
4. Name and address of plaintiff: BANK OF AMERICA, N.A., a national banking association
   c/o Hemar, Rousso & Heald, LLP
   15910 Ventura Blvd., 12th Floor, Encino, CA 91436
5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment *(describe property and state its location; itemize by letter):* see Attachment 9(c)

   [X] This information is on an attached sheet.
6. [ ] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following person other than the defendant:
   a. Name:
   b. Mailing address, if known, as shown by the records of the office of the county tax assessor *(specify):*
7. [ ] The real property on which the
   [ ] crops described in item 5 ____ are growing
   [ ] timber described in item 5 ____ to be cut is standing stands upon the records of the county in the name of
   a. Name:
   b. Address:

[SEAL]

Date: JUL 2 2 2025 Clerk, by M. ARECHIGA, Deputy

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
AT-135 [Rev. January 1, 2003]

**WRIT OF ATTACHMENT**
**(Attachment)**

Legal Solutions Plus

Code of Civ. Proc., § 488.010

## **Attachment 9(c)**

1. Any shares, dividends, distributions, salary, loan repayments or any other payment or claim owing or to be made to **WILLIAM D. BUTLER, an individual ("Defendant")** from the following entities:

    a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

2. All real property in which Defendant has an interest (C.C.P. § 488.315), to the extent of Defendant's interest whether legal or equitable, including but is not limited to, the following:

    a. 730 Mora Drive, Los Altos, CA 94024, APN 331-13-056 (Santa Clara County) Legal Description: see attached **Exhibit A**

3. All tangible personal property that Defendant possesses or controls. (C.C.P. § 488.335).

4. All tangible personal property of Defendant that a third party possesses or controls. (C.C.P. § 488.345).

5. All equipment of a going business in which Defendant has an interest. (C.C.P. § 488.375).

6. All vehicles of a going business in which Defendant has an interest. (C.C.P. § 488.385).

7. All inventory of a going business in which Defendant has an interest, including but not limited to, Defendant's interests in the following businesses, and any distribution, dividend, payment, repayment or other transfer of money or assets from those entities. (C.C.P. § 488.395):

    a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

8. All personal property used as a dwelling in which Defendant has an interest. (C.C.P. § 488.415).

9. All vehicles, vessels, mobile homes or commercial coaches in which Defendant has an interest. (C.C.P. § 488.425).

10. All chattel paper in which Defendant has an interest. (C.C.P. § 488.435).

11. All instruments in which Defendant has an interest. (C.C.P. § 488.440).

12. All negotiable documents in which Defendant has an interest. (C.C.P. § 488.445).

13. All securities in which Defendant has an interest. (C.C.P. § 488.450).

14. All deposit accounts in which Defendant has an interest. (C.C.P. § 488.455).

15. All property in any safe deposit box in which Defendant has an interest. (C.C.P. § 488.460).

16. All accounts receivable or general intangibles in which Defendant has an interest. (C.C.P. § 488.470).

17. All estates of a decedent in which Defendant has an interest. (C.C.P. §§ 488.475(d), 488.485).

18. All final money judgments in which Defendant has an interest. (C.C.P. § 488.480).

19. Money on the premises where a trade, business, or profession is conducted by the Defendant. (C.C.P. § 487.010(c)(7).)



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 64 of 114

## EXHIBIT A

Legal Description

APN 331-13-056

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF LOTS 49 AND 50, MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897 BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, AND BEING A PORTION OF RECORD OF SURVEY MAP FILED MAY 6, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING IN THE SOUTHEAST LINE OF THAT 2.235 ACRE PARCEL OF LAND DESIGNATED PARCEL ONE ON MAP OF RECORD OF SURVEY FILED JUNE 6, 1962 IN BOOK 147 OF MAPS, PAGE 51, AT THE EASTERNMOST CORNER OF THAT 0.471 ACRE TRACT OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 1, 1963, IN BOOK 6130 OF OFFICIAL RECORDS, PAGE 298, THENCE FROM SAID POINT OF BEGINNING NORTHERLY ALONG THE GENERAL EASTERLY LINE OF SAID 0.471 ACRE TRACT NORTH 45° 22' 40" WEST 77.90 FEET; THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE RIGHT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 77 FEET, THROUGH A CENTRAL ANGLE OF 44° 41' 25" FOR AN ARC DISTANCE OF 56.94 FEET; THENCE NORTH 0° 41' 15" WEST 48.06 FEET; THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE LEFT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 62 FEET, THROUGH A CENTRAL ANGLE OF 74° 15' 51" FOR AN ARC DISTANCE OF 80.36 FEET; THENCE NORTH 74° 57' 06" WEST 8.03 FEET; THENCE NORTH 15° 02' 54" EAST 42.50 FEET AND NORTH 6° 37' 13" EAST 98.34 FEET TO THE SOUTHWEST CORNER OF THAT TRACT OF LAND DESCRIBED AS PARCEL ONE IN THE DEED TO JAMES A. LOSITO, ET UX, RECORDED DECEMBER 3, 1963, IN BOOK 6294 OF OFFICIAL RECORDS, PAGE 395; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID LAST MENTIONED PARCEL SOUTH 31° 57' EAST 40.60 FEET AND SOUTHEAST 49.65 FEET TO THE EASTERNMOST CORNER THEREOF, IN THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT ABOVE REFERRED TO; THENCE NORTHEAST ALONG THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT NORTH 56° 49' EAST 24.60 FEET; THENCE NORTH 43° 19' EAST 41.40 FEET AND NORTH 33° 13' 30" EAST 88.41 FEET TO THE NORTHERNMOST CORNER THEREOF; THENCE SOUTH 46° 16' EAST ALONG THE NORTHEAST LINE OF SAID 2.235 ACRE TRACT 227.29 FEET TO THE EASTERNMOST CORNER THEREOF; THENCE SOUTHWEST ALONG THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT SOUTH 43° 44' WEST 171.98 FEET; NORTH 46° 16' WEST 3 FEET AND SOUTH 43° 44' WEST 33 FEET TO AN ANGLE CORNER THEREIN; THENCE SOUTH 43° 44' WEST ALONG THE SOUTHWEST PROLONGATION OF SAID LAST MENTIONED LINE FOR A DISTANCE OF 20 FEET; THENCE SOUTH 46° 16' EAST 24.36 FEET TO A POINT IN THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT; THENCE SOUTH 43° 44' WEST ALONG SAID LAST MENTIONED LINE 98.50 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

A NON-EXCLUSIVE EASEMENT FOR THE INSTALLATION AND MAINTENANCE OF A SEWER PIPE LINE OVER A PORTION OF LOT 50 AS SHOWN ON THE MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897, BOOK I, OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, BEING A STRIP OF LAND 10 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHWESTERLY LINE OF ESBERG ROAD, 20 FEET WIDE, WITH THE LINE DIVIDING PARCELS 1 AND 2 AS SHOWN ON THE MAP OF THE RECORD OF SURVEY OF LAND OF FORREST B. DAVIDSON, FILED MAY 8, 1959, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS; THENCE ALONG SAID DIVIDING LINE SOUTH 43° 44' WEST 310.00 FEET, NORTH 46° 16' WEST 74.48 FEET AND SOUTH 43° 44' WEST 68.89 FEET TO THE ACTUAL POINT OF BEGINNING; THENCE FROM SAID ACTUAL POINT OF BEGINNING SOUTH 46° 16' EAST 12 FEET TO AN EXISTING SEWER PIPE LINE.

For informational purposes only:
Address: 730 Mora Dr, Los Altos, California 94024

AT-120

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): SBN: 185487 / 277581
Jennifer Witherell Crastz/Jessica M. Simon
HEMAR ROUSSO & HEALD, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436
TELEPHONE NO.: (818) 501-3800 FAX NO. (Optional): (818) 501-2985
E-MAIL ADDRESS (Optional): jcrastz@hrhlaw.com
ATTORNEY FOR (Name): Plaintiff, Bank of America, N.A.

FOR COURT USE ONLY

FILED
JUL 10 2025
Clerk of the Court
Superior Court of CA County of Santa Clara
BY [signature] DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Court (DTS)- Unlimited Civil

PLAINTIFF: BANK OF AMERICA, N.A., etc.

DEFENDANT: WILLIAM D. BUTLER; ANNE H. BUTLER

[X] RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING
[ ] ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT AFTER HEARING

CASE NUMBER: 25CV460941

1. a. The application of plaintiff (name): BANK OF AMERICA, N.A., a national banking association
for [X] a right to attach order and order for issuance of writ of attachment
[ ] an order for issuance of additional writ of attachment
against the property of defendant (name):
came on for hearing as follows:
(1) Judge (name): Hon. Daniel T. Nishigaya
(2) Hearing date: ~~July 21, 2025~~ June 18, 2025 Time: 9:00 a.m. [X] Dept.: 13 [ ] Div.: [ ] Rm.:
b. The following persons were present at the hearing:
(1) [ ] Plaintiff (name):
(2) [ ] Defendant (name): William D. Butler
(3) ~~[X] Plaintiff's attorney (name): Jennifer Witherell Crastz~~
(4) [ ] Defendant's attorney (name):

## FINDINGS

2. THE COURT FINDS
a. Defendant (specify name): WILLIAM D. BUTLER, an individual is a [X] natural person [ ] partnership
[ ] unincorporated association [ ] corporation [ ] other (specify):
b. The claim upon which the application is based is one upon which an attachment may be issued.
c. Plaintiff has established the probable validity of the claim upon which the attachment is based.
d. The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
e. The amount to be secured by the attachment is greater than zero.
f. [X] Defendant failed to prove that all the property described in plaintiff's application is exempt from attachment.
g. [ ] The following property of defendant, described in plaintiff's application
(1) [ ] is exempt from attachment (specify):

(2) [ ] is not exempt from attachment (specify):

h. [ ] The following property, not described in plaintiff's application, claimed by defendant to be exempt
(1) [ ] is exempt from attachment (specify):

(2) [ ] is not exempt from attachment (specify):

i. [X] An undertaking in the amount of: $ 10,000.00 is required before a writ shall issue, and plaintiff
[ ] has [X] has not filed an undertaking in that amount.
j. A Right to Attach Order was issued on (date): pursuant to:
[ ] Code of Civil Procedure section 484.090 (on hearing) [ ] Code of Civil Procedure section 485.220 (ex parte)
k. [ ] other (specify):



Form Approved for Optional Use
Judicial Council of California
AT-120 [Rev. July 1, 2010]

**RIGHT TO ATTACH ORDER AFTER HEARING AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT (Attachment)**

Code of Civil Proc., §§ 482.030, 484.090;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov
Westlaw Doc & Form Builder-

SHORT TITLE: BANK OF AMERICA N.A. vs. WILLIAM D. BUTLER, et al.

CASE NUMBER: 25CV460941

## ORDER

3. THE COURT ORDERS

a. Plaintiff has a right to attach property of defendant *(name):*

In the amount of: $4,048,726.59

b. [ ] The property described in items 2g(1) and 2h(1) of the findings is exempt and shall not be attached.

c. The clerk shall issue [X] a writ of attachment [ ] an additional writ of attachment in the amount stated in item 3a

[ ] forthwith [X] upon the filing of an undertaking in the amount of: $ 10,000.00

(1) [ ] for any property of a defendant who is not a natural person for which a method of levy is provided.

(2) [X] for the property of a defendant who is a natural person that is subject to attachment under Code of Civil Procedure section 487.010 described as follows *(specify):*

Please see attachment 9(c)

(3) [ ] for the property covered by a bulk sales notice with respect to a bulk transfer by defendant or the proceeds of sale of such property, described as follows *(specify):*

(4) [ ] for plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold. The license number is *(specify):*

d. [ ] Defendant shall transfer to the levying officer possession of

(1) [ ] any documentary evidence in defendant's possession of title to any property described in item 3c;

(2) [ ] any documentary evidence in defendant's possession of debt owed to defendant described in item 3c;

(3) [ ] the following property in defendant's possession *(specify):*

**NOTICE TO DEFENDANT: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.**

e. [ ] Other *(specify):*

f. Total number of boxes checked in item 3: 3

Date: June 18, 2025

Hon. Daniel T. Nishigaya
JUDICIAL OFFICER

# Attachment 9(c)

1. Any shares, dividends, distributions, salary, loan repayments or any other payment or claim owing or to be made to **WILLIAM D. BUTLER, an individual ("Defendant")** from the following entities:

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

2. All real property in which Defendant has an interest (C.C.P. § 488.315), to the extent of Defendant's interest whether legal or equitable, including but is not limited to, the following:

   a. 730 Mora Drive, Los Altos, CA 94024, APN 331-13-056 (Santa Clara County) Legal Description: see attached **Exhibit A**

3. All tangible personal property that Defendant possesses or controls. (C.C.P. § 488.335).

4. All tangible personal property of Defendant that a third party possesses or controls. (C.C.P. § 488.345).

5. All equipment of a going business in which Defendant has an interest. (C.C.P. § 488.375).

6. All vehicles of a going business in which Defendant has an interest. (C.C.P. § 488.385).

7. All inventory of a going business in which Defendant has an interest, including but not limited to, Defendant's interests in the following businesses, and any distribution, dividend, payment, repayment or other transfer of money or assets from those entities. (C.C.P. § 488.395):

   a. DECORATIVE PLUMBING DISTRIBUTORS, a Delaware limited liability company

8. All personal property used as a dwelling in which Defendant has an interest. (C.C.P. § 488.415).

9. All vehicles, vessels, mobile homes or commercial coaches in which Defendant has an interest. (C.C.P. § 488.425).

10. All chattel paper in which Defendant has an interest. (C.C.P. § 488.435).

11. All instruments in which Defendant has an interest. (C.C.P. § 488.440).

12. All negotiable documents in which Defendant has an interest. (C.C.P. § 488.445).

13. All securities in which Defendant has an interest. (C.C.P. § 488.450).



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 68 of 114

14. All deposit accounts in which Defendant has an interest. (C.C.P. § 488.455).

15. All property in any safe deposit box in which Defendant has an interest. (C.C.P. § 488.460).

16. All accounts receivable or general intangibles in which Defendant has an interest. (C.C.P. § 488.470).

17. All estates of a decedent in which Defendant has an interest. (C.C.P. §§ 488.475(d), 488.485).

18. All final money judgments in which Defendant has an interest. (C.C.P. § 488.480).

19. Money on the premises where a trade, business, or profession is conducted by the Defendant. (C.C.P. § 487.010(c)(7).)

## EXHIBIT A

Legal Description

APN 331-13-056

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF LOTS 49 AND 50, MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897 BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, AND BEING A PORTION OF RECORD OF SURVEY MAP FILED MAY 6, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING IN THE SOUTHEAST LINE OF THAT 2.235 ACRE PARCEL OF LAND DESIGNATED PARCEL ONE ON MAP OF RECORD OF SURVEY FILED JUNE 6, 1962 IN BOOK 147 OF MAPS, PAGE 41, AT THE EASTERNMOST CORNER OF THAT 0.471 ACRE TRACT OF LAND DESCRIBED IN THE DEED TO THE STATE OF CALIFORNIA, RECORDED AUGUST 1, 1963, IN BOOK 6130 OF OFFICIAL RECORDS, PAGE 298; THENCE FROM SAID POINT OF BEGINNING NORTHERLY ALONG THE GENERAL EASTERLY LINE OF SAID 0.471 ACRE TRACT NORTH 45° 22' 40" WEST 77.90 FEET, THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE RIGHT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 77 FEET, THROUGH A CENTRAL ANGLE OF 44° 41' 25" FOR AN ARC DISTANCE OF 56.94 FEET, THENCE NORTH 0° 41' 15" WEST 48.06 FEET, THENCE NORTHERLY ALONG AN ARC OF A CURVE TO THE LEFT, TANGENT TO THE PRECEDING COURSE WITH A RADIUS OF 62 FEET, THROUGH A CENTRAL ANGLE OF 74° 15' 51" FOR AN ARC DISTANCE OF 80.36 FEET, THENCE NORTH 74° 57' 06" WEST 8.03 FEET, THENCE NORTH 15° 02' 54" EAST 42.50 FEET AND NORTH 5° 37' 13" EAST 96.34 FEET TO THE SOUTHWEST CORNER OF THAT TRACT OF LAND DESCRIBED AS PARCEL ONE IN THE DEED TO JAMES A. LOSITO, ET UX, RECORDED DECEMBER 3, 1963, IN BOOK 6294 OF OFFICIAL RECORDS, PAGE 395; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF SAID LAST MENTIONED PARCEL SOUTH 31° 57' EAST 40.60 FEET AND SOUTHEAST 49.65 FEET TO THE EASTERNMOST CORNER THEREOF, IN THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT ABOVE REFERRED TO; THENCE NORTHEAST ALONG THE NORTHWEST LINE OF SAID 2.235 ACRE TRACT NORTH 60° 49' EAST 24.60 FEET; THENCE NORTH 43° 19' EAST 41.40 FEET AND NORTH 33° 13' 30" EAST 88.41 FEET TO THE NORTHERNMOST CORNER THEREOF; THENCE SOUTH 46° 16' EAST ALONG THE NORTHEAST LINE OF SAID 2.235 ACRE TRACT 227.29 FEET TO THE EASTERNMOST CORNER THEREOF; THENCE SOUTHWEST ALONG THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT SOUTH 43° 44' WEST 171.98 FEET, NORTH 46° 16' WEST 3 FEET AND SOUTH 43° 44' WEST 33 FEET TO AN ANGLE CORNER THEREIN; THENCE SOUTH 43° 44' WEST ALONG THE SOUTHWEST PROLONGATION OF SAID LAST MENTIONED LINE FOR A DISTANCE OF 20 FEET; THENCE SOUTH 46° 16' EAST 24.38 FEET TO A POINT IN THE SOUTHEAST LINE OF SAID 2.235 ACRE TRACT; THENCE SOUTH 43° 44' WEST ALONG SAID LAST MENTIONED LINE 98.50 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

A NON-EXCLUSIVE EASEMENT FOR THE INSTALLATION AND MAINTENANCE OF A SEWER PIPE LINE OVER A PORTION OF LOT 50 AS SHOWN ON THE MAP OF THE SUBDIVISION OF THE HALE RANCH FILED JANUARY 14, 1897, BOOK I OF MAPS, PAGE 48, SANTA CLARA COUNTY RECORDS, BEING A STRIP OF LAND 10 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHWESTERLY LINE OF ESBERG ROAD, 20 FEET WIDE, WITH THE LINE DIVIDING PARCELS 1 AND 2 AS SHOWN ON THE MAP OF THE RECORD OF SURVEY OF LAND OF FORREST B. DAVIDSON, FILED MAY 6, 1958, BOOK 93 OF MAPS, PAGE 20, SANTA CLARA COUNTY RECORDS, THENCE ALONG SAID DIVIDING LINE SOUTH 43° 44' WEST 310.00 FEET, NORTH 46° 16' WEST 74.48 FEET AND SOUTH 41° 44' WEST 66.89 FEET TO THE ACTUAL POINT OF BEGINNING; THENCE FROM SAID ACTUAL POINT OF BEGINNING SOUTH 46° 16' EAST 12 FEET TO AN EXISTING SEWER PIPE LINE.

For informational purposes only:
Address: 730 Mora Dr, Los Altos, California 94024



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 70 of 114

EFS-020

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: 185487 / 277581<br>NAME: Jennifer Witherell Crastz/Jessica M. Simon<br>FIRM NAME: HEMAR, ROUSSO & HEALD, LLP<br>STREET ADDRESS: 15910 Ventura Blvd., 12th Floor<br>CITY: Encino STATE: CA ZIP CODE: 91436<br>TELEPHONE NO.: (818) 501-3800 FAX NO.: (818) 501-2985<br>E-MAIL ADDRESS: jcrastz@hrhlaw.com; jsimon@hrhlaw.com<br>ATTORNEY FOR (name): Plaintiff, Bank of America, N.A. | FOR COURT USE ONLY<br>E-RECEIVED<br>on 5/23/2025 10:27 AM<br>Reviewed By: R. Aragon<br>Case #25CV460941<br>Envelope: 19466943 |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS: 191 North First Street<br>CITY AND ZIP CODE: San Jose, CA 95113<br>BRANCH NAME: Downtown Superior Court (DTS)- Unlimited Civil | |
| PLAINTIFF/PETITIONER: BANK OF AMERICA, N.A., a national banking association<br>DEFENDANT/RESPONDENT: WILLIAM D. BUTLER; ANNE H. BUTLER<br>OTHER: N/A | CASE NUMBER:<br>25CV460941 |
| | JUDICIAL OFFICER:<br>Hon. Daniel T. Nishigaya |
| **PROPOSED ORDER (COVER SHEET)** | DEPT:<br>13 |

**NOTE:** This cover sheet is to be used to electronically file and submit to the court a proposed order. The proposed order sent electronically to the court must be in PDF format and must be attached to this cover sheet. In addition, a version of the proposed order in an editable word-processing format must be sent to the court at the same time as this cover sheet and the attached proposed order in PDF format are filed.

1. Name of the party submitting the proposed order:
   BANK OF AMERICA, N.A., a national banking association (plaintiff)

2. Title of the proposed order:
   RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING
   (as to defendant: William D. Butler, an individual)

3. The proceeding to which the proposed order relates is:
   a. Description of proceeding: Application for Right to Attach Order and Issuance of Writ of Attachment (William D. Butler)
   b. Date and time: July 21, 2025 at 9:00 a.m.
   c. Place: Dept. 13, Santa Clara County Superior Court, 191 North First Street, San Jose, CA 95113

4. The proposed order was served on the other parties in the case.

JENNIFER WITHERELL CRASTZ
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY)

| CASE NAME: Bank of America, N.A. vs. William and Anne Butler | CASE NUMBER: 25CV460941 |
|---|---|

## PROOF OF ELECTRONIC SERVICE
***PROPOSED ORDER***

1. I am at least 18 years old and **not a party to this action.**

   a. My residence or business address is *(specify):*
   15910 Ventura Blvd., 12th Floor, Encino, CA 91436

   b. My electronic service address is *(specify):* mgranzow@hrhlaw.com

2. I electronically served the *Proposed Order (Cover Sheet)* with a proposed order in PDF format attached, and a proposed order in an editable word-processing format as follows:

   a. On *(name of person served) (If the person served is an attorney, the party or parties represented should also be stated.):*
   NOT APPLICABLE

   THE DOCUMENTS ARE CURRENTLY OUT FOR SERVICE VIA A PROCESS SERVER

   b. To *(electronic service address of person served):*

   c. On *(date):*

☐ Electronic service of the *Proposed Order (Cover Sheet)* with the attached proposed order in PDF format and service of the proposed order in an editable word-processing format on additional persons are described in an attachment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 21, 2025

MARY ANN GRANZOW
(TYPE OR PRINT NAME OF DECLARANT)

[signature]
(SIGNATURE OF DECLARANT)

## Mortgage Proof of Claim Attachment

(12/23)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

| **Part 1: Mortgage and Case Information** | |
|---|---|
| Case number: | 25-51814 |
| Debtor 1: | William Dokos Butler |
| Debtor 2: | Anne Hamsen Butler |
| Last 4 digits to identify | 2682 |
| Creditor: | Bank of America, N.A. |
| Servicer: | ________ |
| Fixed accrual/daily simple interest/othe | 6.22432 (variable on Note) |

| **Part 2: Total Debt Calculation** | |
|---|---|
| Principal balance: | 3,114,824.93 |
| Interest due: | 1,563.28 |
| Fees, costs due: | ____ |
| Escrow deficiency for funds advanced: | ____ |
| Less total funds on hand: | ____ |
| Total debt: | **$3,116,388.21** |

| **Part 3: Arrearage as of Date of Petition** | |
|---|---|
| Principal due: | 3,114,824.93 (Matured Note) |
| Interest due: | 1,563.28 |
| Prepetition fees due: | ____ |
| Escrow deficiency for funds advanced: | ____ |
| Projected escrow shortage: | ____ |
| Less funds on hand: | ____ |
| Total prepetition arrearage: | **$3,116,388.21** |

| **Part 4: Monthly Mortgage Payment** | |
|---|---|
| Principal & interest: | N/A |
| Monthly escrow: | ____ |
| Private mortgage insurance: | ____ |
| Total monthly payment: | N/A |

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contratual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 1-Mar-2024 | | | 7.590100% | Rate | | 0.00 | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | N/A | 0.00 | |
| 1-Mar-2024 | | | 7.590100% | Initial Drawdown | | 950,000.00 | 0 | 0.00 | 0.00 | 0.00 | 950000.00 | 950,000.00 | | N/A | 0.00 | |
| 1-Mar-2024 | | | 7.590100% | Advance | | 2,363,027.29 | 0 | 0.00 | 0.00 | 0.00 | 2363027.29 | 3,313,027.29 | | N/A | 0.00 | |
| 1-Mar-2024 | | | 7.590100% | Origination Fees | | (8,000.00) | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 3,313,027.29 | | N/A | (8,000.00) | |
| 1-Mar-2024 | | | 7.590100% | Filing/ Recording | | (107.00) | 3 | 2,095.51 | 0.00 | 2095.51 | 0.00 | 3,313,027.29 | | N/A | (107.00) | |
| 4-Mar-2024 | | | 7.586900% | Rate | | 0.00 | 1 | 698.21 | 0.00 | 2793.72 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 5-Mar-2024 | | | 7.587100% | Rate | | 0.00 | 1 | 698.23 | 0.00 | 3491.95 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 6-Mar-2024 | | | 7.585700% | Rate | | 0.00 | 1 | 698.10 | 0.00 | 4190.06 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 7-Mar-2024 | | | 7.585400% | Rate | | 0.00 | 1 | 698.07 | 0.00 | 4888.13 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 8-Mar-2024 | | | 7.584300% | Rate | | 0.00 | 3 | 2,093.92 | 0.00 | 6982.04 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 11-Mar-2024 | | | 7.582200% | Rate | | 0.00 | 1 | 697.78 | 0.00 | 7679.82 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 12-Mar-2024 | | | 7.583200% | Rate | | 0.00 | 1 | 697.87 | 0.00 | 8377.69 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 13-Mar-2024 | | | 7.585200% | Rate | | 0.00 | 1 | 698.05 | 0.00 | 9075.74 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 14-Mar-2024 | | | 7.589900% | Rate | | 0.00 | 1 | 698.49 | 0.00 | 9774.23 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 15-Mar-2024 | | | 7.589800% | Rate | | 0.00 | 3 | 2,095.44 | 0.00 | 11869.67 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 18-Mar-2024 | | | 7.591100% | Rate | | 0.00 | 1 | 698.60 | 0.00 | 12568.27 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 19-Mar-2024 | | | 7.590800% | Rate | | 0.00 | 1 | 698.57 | 0.00 | 13266.84 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 20-Mar-2024 | | | 7.593200% | Rate | | 0.00 | 1 | 698.79 | 0.00 | 13965.64 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 21-Mar-2024 | | | 7.593100% | Rate | | 0.00 | 1 | 698.78 | 0.00 | 14664.42 | 0.00 | 3,313,027.29 | | N/A | 0.00 | |
| 22-Mar-2024 | | | 7.593100% | Advance | | 350,000.00 | 0 | 0.00 | 0.00 | 14664.42 | 350000.00 | 3,663,027.29 | | N/A | 0.00 | |
| 22-Mar-2024 | | | 7.593300% | Rate | | 0.00 | 3 | 2,317.87 | 0.00 | 16982.29 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 25-Mar-2024 | | | 7.593900% | Rate | | 0.00 | 1 | 772.68 | 0.00 | 17754.98 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 26-Mar-2024 | | | 7.593200% | Rate | | 0.00 | 1 | 772.61 | 0.00 | 18527.59 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 27-Mar-2024 | | | 7.596700% | Rate | | 0.00 | 1 | 772.96 | 0.00 | 19300.55 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 28-Mar-2024 | | | 7.594600% | Rate | | 0.00 | 4 | 3,091.04 | 0.00 | 22391.60 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 1-Apr-2024 | | | 7.591800% | Rate | | 0.00 | 1 | 772.47 | 0.00 | 23164.07 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 2-Apr-2024 | | | 7.593200% | Rate | | 0.00 | 1 | 772.62 | 0.00 | 23936.69 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 3-Apr-2024 | | | 7.588600% | Rate | | 0.00 | 1 | 772.15 | 0.00 | 24708.83 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 4-Apr-2024 | | | 7.588500% | Rate | | 0.00 | 1 | 772.14 | 0.00 | 25480.97 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 5-Apr-2024 | | | 7.587900% | Rate | | 0.00 | 3 | 2,316.22 | 0.00 | 27797.19 | 0.00 | 3,663,027.29 | | N/A | 0.00 | |
| 8-Apr-2024 | | | 7.587900% | Advance | | 200,000.00 | 0 | 0.00 | 0.00 | 27797.19 | 200000.00 | 3,863,027.29 | | N/A | 0.00 | |
| 8-Apr-2024 | | | 7.586000% | Rate | | 0.00 | 1 | 814.03 | 0.00 | 28611.21 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |

**Mortgage Proof of Claim Attachment**

Case number: 25-51814

Debtor 1: William Dokos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 9-Apr-2024 | | | 7.582900% | Rate | | 0.00 | 1 | 813.70 | 0.00 | 29424.91 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 10-Apr-2024 | | | 7.581900% | Rate | | 0.00 | 1 | 813.59 | 0.00 | 30238.50 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 11-Apr-2024 | | | 7.585100% | Rate | | 0.00 | 1 | 813.93 | 0.00 | 31052.43 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 12-Apr-2024 | | | 7.583400% | Rate | | 0.00 | 3 | 2,441.25 | 0.00 | 33493.68 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 15-Apr-2024 | | | 7.585500% | Rate | | 0.00 | 1 | 813.97 | 0.00 | 34307.65 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 16-Apr-2024 | | | 7.583800% | Rate | | 0.00 | 1 | 813.79 | 0.00 | 35121.43 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 17-Apr-2024 | | | 7.580700% | Rate | | 0.00 | 1 | 813.46 | 0.00 | 35934.89 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 18-Apr-2024 | | | 7.583400% | Rate | | 0.00 | 1 | 813.74 | 0.00 | 36748.64 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 19-Apr-2024 | | | 7.583300% | Rate | | 0.00 | 3 | 2,441.21 | 0.00 | 39189.84 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 22-Apr-2024 | | | 7.579900% | Rate | | 0.00 | 1 | 813.37 | 0.00 | 40003.22 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 23-Apr-2024 | | | 7.581400% | Rate | | 0.00 | 1 | 813.53 | 0.00 | 40816.75 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 24-Apr-2024 | | | 7.580200% | Rate | | 0.00 | 1 | 813.40 | 0.00 | 41630.15 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 25-Apr-2024 | | | 7.581300% | Rate | | 0.00 | 1 | 813.52 | 0.00 | 42443.67 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 26-Apr-2024 | | | 7.582600% | Rate | | 0.00 | 2 | 1,627.33 | 0.00 | 44071.00 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 28-Apr-2024 | | | 7.582600% | Interest Payment | | (31,866.18) | 1 | 813.67 | (31866.18) | 13018.49 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 29-Apr-2024 | | | 7.582700% | Rate | | 0.00 | 1 | 813.68 | 0.00 | 13832.17 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 30-Apr-2024 | | | 7.580200% | Rate | | 0.00 | 1 | 813.40 | 0.00 | 14645.57 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 1-May-2024 | | | 7.577600% | Rate | | 0.00 | 1 | 813.13 | 0.00 | 15458.70 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 2-May-2024 | | | 7.580400% | Rate | | 0.00 | 1 | 813.42 | 0.00 | 16272.12 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 3-May-2024 | | | 7.584700% | Rate | | 0.00 | 3 | 2,441.66 | 0.00 | 18713.78 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 6-May-2024 | | | 7.587300% | Rate | | 0.00 | 1 | 814.17 | 0.00 | 19527.95 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 7-May-2024 | | | 7.586900% | Rate | | 0.00 | 1 | 814.12 | 0.00 | 20342.07 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 8-May-2024 | | | 7.585800% | Rate | | 0.00 | 1 | 814.00 | 0.00 | 21156.07 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 9-May-2024 | | | 7.584300% | Rate | | 0.00 | 1 | 813.85 | 0.00 | 21969.92 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 10-May-2024 | | | 7.585300% | Rate | | 0.00 | 3 | 2,441.86 | 0.00 | 24411.78 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 13-May-2024 | | | 7.585300% | Rate | | 0.00 | 1 | 813.95 | 0.00 | 25225.74 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 14-May-2024 | | | 7.584300% | Rate | | 0.00 | 1 | 813.85 | 0.00 | 26039.59 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 15-May-2024 | | | 7.581300% | Rate | | 0.00 | 1 | 813.52 | 0.00 | 26853.10 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 16-May-2024 | | | 7.584100% | Rate | | 0.00 | 1 | 813.82 | 0.00 | 27666.93 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 17-May-2024 | | | 7.585000% | Rate | | 0.00 | 3 | 2,441.76 | 0.00 | 30108.69 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 20-May-2024 | | | 7.584600% | Rate | | 0.00 | 1 | 813.87 | 0.00 | 30922.56 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 21-May-2024 | | | 7.584200% | Rate | | 0.00 | 1 | 813.84 | 0.00 | 31736.40 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 22-May-2024 | | | 7.585100% | Rate | | 0.00 | 1 | 813.93 | 0.00 | 32550.33 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 23-May-2024 | | | 7.586700% | Rate | | 0.00 | 1 | 814.10 | 0.00 | 33364.43 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 24-May-2024 | | | 7.586600% | Rate | | 0.00 | 4 | 3,256.38 | 0.00 | 36620.81 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 28-May-2024 | | | 7.586600% | Interest Payment | | (24,411.78) | 0 | 0.00 | (24411.78) | 12209.03 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 28-May-2024 | | | 7.589400% | Rate | | 0.00 | 1 | 814.39 | 0.00 | 13023.41 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 29-May-2024 | | | 7.592300% | Rate | | 0.00 | 1 | 814.70 | 0.00 | 13838.11 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 30-May-2024 | | | 7.592900% | Rate | | 0.00 | 1 | 814.76 | 0.00 | 14652.87 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 31-May-2024 | | | 7.593700% | Rate | | 0.00 | 3 | 2,444.55 | 0.00 | 17097.42 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 3-Jun-2024 | | | 7.593700% | Rate | | 0.00 | 1 | 814.85 | 0.00 | 17912.27 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 4-Jun-2024 | | | 7.594300% | Rate | | 0.00 | 1 | 814.92 | 0.00 | 18727.18 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 5-Jun-2024 | | | 7.592400% | Rate | | 0.00 | 1 | 814.71 | 0.00 | 19541.90 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 6-Jun-2024 | | | 7.592000% | Rate | | 0.00 | 1 | 814.67 | 0.00 | 20356.57 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 7-Jun-2024 | | | 7.592400% | Rate | | 0.00 | 3 | 2,444.13 | 0.00 | 22800.70 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 10-Jun-2024 | | | 7.590800% | Rate | | 0.00 | 1 | 814.54 | 0.00 | 23615.24 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 11-Jun-2024 | | | 7.592100% | Rate | | 0.00 | 1 | 814.68 | 0.00 | 24429.92 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 12-Jun-2024 | | | 7.593500% | Rate | | 0.00 | 1 | 814.84 | 0.00 | 25244.76 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 13-Jun-2024 | | | 7.595200% | Rate | | 0.00 | 1 | 815.02 | 0.00 | 26059.78 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 14-Jun-2024 | | | 7.594900% | Rate | | 0.00 | 3 | 2,444.96 | 0.00 | 28504.73 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 17-Jun-2024 | | | 7.593300% | Rate | | 0.00 | 1 | 814.81 | 0.00 | 29319.54 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 18-Jun-2024 | | | 7.596400% | Rate | | 0.00 | 2 | 1,630.28 | 0.00 | 30949.83 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 20-Jun-2024 | | | 7.603200% | Rate | | 0.00 | 1 | 815.87 | 0.00 | 31765.69 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 21-Jun-2024 | | | 7.608700% | Rate | | 0.00 | 3 | 2,448.75 | 0.00 | 34214.44 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 24-Jun-2024 | | | 7.608100% | Rate | | 0.00 | 1 | 816.40 | 0.00 | 35030.84 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 25-Jun-2024 | | | 7.609700% | Rate | | 0.00 | 1 | 816.57 | 0.00 | 35847.41 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 26-Jun-2024 | | | 7.608000% | Rate | | 0.00 | 1 | 816.38 | 0.00 | 36663.80 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 27-Jun-2024 | | | 7.610400% | Rate | | 0.00 | 1 | 816.65 | 0.00 | 37480.44 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 28-Jun-2024 | | | 7.610400% | Interest Payment | | (25,244.76) | 0 | 0.00 | (25244.76) | 12235.68 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dokos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contratual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 28-Jun-2024 | | | 7.608400% | Rate | | 0.00 | 3 | 2,449.29 | 0.00 | 14684.97 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 1-Jul-2024 | | | 7.607500% | Rate | | 0.00 | 1 | 816.33 | 0.00 | 15501.31 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 2-Jul-2024 | | | 7.601700% | Rate | | 0.00 | 1 | 815.71 | 0.00 | 16317.01 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 3-Jul-2024 | | | 7.598700% | Rate | | 0.00 | 2 | 1,630.77 | 0.00 | 17947.79 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 5-Jul-2024 | | | 7.596400% | Rate | | 0.00 | 3 | 2,445.43 | 0.00 | 20393.21 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 8-Jul-2024 | | | 7.596600% | Rate | | 0.00 | 1 | 815.16 | 0.00 | 21208.37 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 9-Jul-2024 | | | 7.591900% | Rate | | 0.00 | 1 | 814.66 | 0.00 | 22023.03 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 10-Jul-2024 | | | 7.590800% | Rate | | 0.00 | 1 | 814.54 | 0.00 | 22837.57 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 11-Jul-2024 | | | 7.590800% | Rate | | 0.00 | 1 | 814.55 | 0.00 | 23652.12 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 12-Jul-2024 | | | 7.593200% | Rate | | 0.00 | 3 | 2,444.40 | 0.00 | 26096.52 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 15-Jul-2024 | | | 7.593300% | Rate | | 0.00 | 1 | 814.81 | 0.00 | 26911.32 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 16-Jul-2024 | | | 7.592300% | Rate | | 0.00 | 1 | 814.70 | 0.00 | 27726.02 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 17-Jul-2024 | | | 7.599100% | Rate | | 0.00 | 1 | 815.43 | 0.00 | 28541.45 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 18-Jul-2024 | | | 7.598500% | Rate | | 0.00 | 1 | 815.36 | 0.00 | 29356.81 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 19-Jul-2024 | | | 7.605700% | Rate | | 0.00 | 3 | 2,448.41 | 0.00 | 31805.22 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 22-Jul-2024 | | | 7.609600% | Rate | | 0.00 | 1 | 816.56 | 0.00 | 32621.78 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 23-Jul-2024 | | | 7.611200% | Rate | | 0.00 | 1 | 816.73 | 0.00 | 33438.52 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 24-Jul-2024 | | | 7.614000% | Rate | | 0.00 | 1 | 817.03 | 0.00 | 34255.54 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 25-Jul-2024 | | | 7.614100% | Rate | | 0.00 | 1 | 817.04 | 0.00 | 35072.58 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 26-Jul-2024 | | | 7.613700% | Rate | | 0.00 | 2 | 1,634.00 | 0.00 | 36706.59 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 28-Jul-2024 | | | 7.613700% | Interest Payment | | (24,466.92) | 1 | 817.00 | (24466.92) | 13056.67 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 29-Jul-2024 | | | 7.611600% | Rate | | 0.00 | 1 | 816.77 | 0.00 | 13873.44 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 30-Jul-2024 | | | 7.611200% | Rate | | 0.00 | 1 | 816.73 | 0.00 | 14690.17 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 31-Jul-2024 | | | 7.608200% | Rate | | 0.00 | 1 | 816.41 | 0.00 | 15506.58 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 1-Aug-2024 | | | 7.606800% | Rate | | 0.00 | 1 | 816.26 | 0.00 | 16322.83 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 2-Aug-2024 | | | 7.607000% | Rate | | 0.00 | 3 | 2,448.85 | 0.00 | 18771.68 | 0.00 | 3,863,027.29 | | N/A | 0.00 | |
| 5-Aug-2024 | | | 7.607000% | Advance | | 50,000.00 | 0 | 0.00 | 0.00 | 18771.68 | 50000.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Aug-2024 | | | 7.614700% | Rate | | 0.00 | 1 | 827.68 | 0.00 | 19599.37 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Aug-2024 | | | 7.616500% | Rate | | 0.00 | 1 | 827.88 | 0.00 | 20427.24 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Aug-2024 | | | 7.591900% | Rate | | 0.00 | 1 | 825.20 | 0.00 | 21252.45 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Aug-2024 | | | 7.554000% | Rate | | 0.00 | 1 | 821.08 | 0.00 | 22073.53 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Aug-2024 | | | 7.589500% | Rate | | 0.00 | 3 | 2,474.82 | 0.00 | 24548.35 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Aug-2024 | | | 7.591100% | Rate | | 0.00 | 1 | 825.12 | 0.00 | 25373.47 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Aug-2024 | | | 7.598000% | Rate | | 0.00 | 1 | 825.87 | 0.00 | 26199.34 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Aug-2024 | | | 7.602200% | Rate | | 0.00 | 1 | 826.33 | 0.00 | 27025.67 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Aug-2024 | | | 7.601400% | Rate | | 0.00 | 1 | 826.23 | 0.00 | 27851.90 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Aug-2024 | | | 7.603100% | Rate | | 0.00 | 3 | 2,479.27 | 0.00 | 30331.17 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Aug-2024 | | | 7.606100% | Rate | | 0.00 | 1 | 826.74 | 0.00 | 31157.91 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Aug-2024 | | | 7.600200% | Rate | | 0.00 | 1 | 826.10 | 0.00 | 31984.01 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Aug-2024 | | | 7.574600% | Rate | | 0.00 | 1 | 823.33 | 0.00 | 32807.34 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Aug-2024 | | | 7.575900% | Rate | | 0.00 | 1 | 823.47 | 0.00 | 33630.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Aug-2024 | | | 7.573100% | Rate | | 0.00 | 3 | 2,469.47 | 0.00 | 36100.27 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Aug-2024 | | | 7.542400% | Rate | | 0.00 | 1 | 819.83 | 0.00 | 36920.10 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Aug-2024 | | | 7.540500% | Rate | | 0.00 | 1 | 819.62 | 0.00 | 37739.71 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Aug-2024 | | | 7.540500% | Interest Payment | | (25,373.48) | 0 | 0.00 | (25373.48) | 12366.23 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Aug-2024 | | | 7.516100% | Rate | | 0.00 | 1 | 816.97 | 0.00 | 13183.20 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Aug-2024 | | | 7.516600% | Rate | | 0.00 | 1 | 817.02 | 0.00 | 14000.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Aug-2024 | | | 7.511200% | Rate | | 0.00 | 4 | 3,265.73 | 0.00 | 17265.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Sep-2024 | | | 7.465000% | Rate | | 0.00 | 1 | 811.41 | 0.00 | 18077.36 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Sep-2024 | | | 7.459800% | Rate | | 0.00 | 1 | 810.85 | 0.00 | 18888.21 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Sep-2024 | | | 7.438400% | Rate | | 0.00 | 1 | 808.52 | 0.00 | 19696.73 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Sep-2024 | | | 7.427000% | Rate | | 0.00 | 3 | 2,421.83 | 0.00 | 22118.56 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Sep-2024 | | | 7.382500% | Rate | | 0.00 | 1 | 802.44 | 0.00 | 22921.00 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Sep-2024 | | | 7.374300% | Rate | | 0.00 | 1 | 801.55 | 0.00 | 23722.55 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Sep-2024 | | | 7.368400% | Rate | | 0.00 | 1 | 800.91 | 0.00 | 24523.47 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Sep-2024 | | | 7.375200% | Rate | | 0.00 | 1 | 801.65 | 0.00 | 25325.12 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Sep-2024 | | | 7.360400% | Rate | | 0.00 | 3 | 2,400.12 | 0.00 | 27725.24 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Sep-2024 | | | 7.361000% | Rate | | 0.00 | 1 | 800.10 | 0.00 | 28525.34 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Sep-2024 | | | 7.347200% | Rate | | 0.00 | 1 | 798.61 | 0.00 | 29323.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 18-Sep-2024 | | | 7.278800% | Rate | | 0.00 | 1 | 791.17 | 0.00 | 30115.12 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Sep-2024 | | | 7.229300% | Rate | | 0.00 | 1 | 785.79 | 0.00 | 30900.91 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Sep-2024 | | | 7.225300% | Rate | | 0.00 | 3 | 2,356.08 | 0.00 | 33256.99 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Sep-2024 | | | 7.184400% | Rate | | 0.00 | 1 | 780.91 | 0.00 | 34037.90 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Sep-2024 | | | 7.121700% | Rate | | 0.00 | 1 | 774.09 | 0.00 | 34811.99 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Sep-2024 | | | 7.119300% | Rate | | 0.00 | 1 | 773.83 | 0.00 | 35585.82 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Sep-2024 | | | 7.119000% | Rate | | 0.00 | 1 | 773.80 | 0.00 | 36359.62 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Sep-2024 | | | 7.119800% | Rate | | 0.00 | 1 | 773.88 | 0.00 | 37133.50 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Sep-2024 | | | 7.119800% | Interest Payment | | (25,325.13) | 2 | 1,547.77 | (25325.13) | 13356.14 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Sep-2024 | | | 7.109900% | Rate | | 0.00 | 1 | 772.81 | 0.00 | 14128.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Oct-2024 | | | 7.108600% | Rate | | 0.00 | 1 | 772.67 | 0.00 | 14901.62 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Oct-2024 | | | 7.110200% | Rate | | 0.00 | 1 | 772.84 | 0.00 | 15674.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Oct-2024 | | | 7.114000% | Rate | | 0.00 | 1 | 773.26 | 0.00 | 16447.72 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Oct-2024 | | | 7.121000% | Rate | | 0.00 | 3 | 2,322.07 | 0.00 | 18769.79 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Oct-2024 | | | 7.115200% | Rate | | 0.00 | 1 | 773.39 | 0.00 | 19543.18 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Oct-2024 | | | 7.110100% | Rate | | 0.00 | 1 | 772.83 | 0.00 | 20316.01 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Oct-2024 | | | 7.082900% | Rate | | 0.00 | 1 | 769.88 | 0.00 | 21085.89 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Oct-2024 | | | 7.088000% | Rate | | 0.00 | 1 | 770.43 | 0.00 | 21856.32 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Oct-2024 | | | 7.087500% | Rate | | 0.00 | 4 | 3,081.50 | 0.00 | 24937.82 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Oct-2024 | | | 7.068400% | Rate | | 0.00 | 1 | 768.31 | 0.00 | 25706.12 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Oct-2024 | | | 7.050400% | Rate | | 0.00 | 1 | 766.34 | 0.00 | 26472.47 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Oct-2024 | | | 7.048300% | Rate | | 0.00 | 1 | 766.12 | 0.00 | 27238.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Oct-2024 | | | 7.045400% | Rate | | 0.00 | 3 | 2,297.39 | 0.00 | 29535.98 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Oct-2024 | | | 7.023600% | Rate | | 0.00 | 1 | 763.43 | 0.00 | 30299.42 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Oct-2024 | | | 7.023500% | Rate | | 0.00 | 1 | 763.43 | 0.00 | 31062.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Oct-2024 | | | 7.009100% | Rate | | 0.00 | 1 | 761.85 | 0.00 | 31824.70 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Oct-2024 | | | 7.007800% | Rate | | 0.00 | 1 | 761.72 | 0.00 | 32586.41 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Oct-2024 | | | 7.002100% | Rate | | 0.00 | 3 | 2,283.27 | 0.00 | 34869.69 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Oct-2024 | | | 7.002100% | Interest Payment | | (23,397.08) | 0 | 0.00 | (23397.08) | 11472.61 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Oct-2024 | | | 6.982100% | Rate | | 0.00 | 1 | 758.93 | 0.00 | 12231.53 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Oct-2024 | | | 6.971800% | Rate | | 0.00 | 1 | 757.80 | 0.00 | 12989.33 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Oct-2024 | | | 6.961000% | Rate | | 0.00 | 1 | 756.62 | 0.00 | 13745.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 31-Oct-2024 | | | 6.949600% | Rate | | 0.00 | 1 | 755.39 | 0.00 | 14501.35 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Nov-2024 | | | 6.936200% | Rate | | 0.00 | 3 | 2,261.79 | 0.00 | 16763.14 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Nov-2024 | | | 6.920500% | Rate | | 0.00 | 1 | 752.23 | 0.00 | 17515.37 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Nov-2024 | | | 6.916500% | Rate | | 0.00 | 1 | 751.79 | 0.00 | 18267.16 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Nov-2024 | | | 6.904900% | Rate | | 0.00 | 1 | 750.53 | 0.00 | 19017.69 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Nov-2024 | | | 6.894600% | Rate | | 0.00 | 1 | 749.41 | 0.00 | 19767.10 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Nov-2024 | | | 6.897000% | Rate | | 0.00 | 4 | 2,998.70 | 0.00 | 22765.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Nov-2024 | | | 6.886600% | Rate | | 0.00 | 1 | 748.54 | 0.00 | 23514.34 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Nov-2024 | | | 6.881000% | Rate | | 0.00 | 1 | 747.93 | 0.00 | 24262.27 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Nov-2024 | | | 6.872200% | Rate | | 0.00 | 1 | 746.97 | 0.00 | 25009.24 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Nov-2024 | | | 6.873800% | Rate | | 0.00 | 3 | 2,241.44 | 0.00 | 27250.68 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Nov-2024 | | | 6.875000% | Rate | | 0.00 | 1 | 747.28 | 0.00 | 27997.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Nov-2024 | | | 6.874900% | Rate | | 0.00 | 1 | 747.27 | 0.00 | 28745.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Nov-2024 | | | 6.870700% | Rate | | 0.00 | 1 | 746.81 | 0.00 | 29492.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Nov-2024 | | | 6.863700% | Rate | | 0.00 | 1 | 746.05 | 0.00 | 30238.08 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Nov-2024 | | | 6.859600% | Rate | | 0.00 | 3 | 2,236.82 | 0.00 | 32474.90 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Nov-2024 | | | 6.852200% | Rate | | 0.00 | 1 | 744.80 | 0.00 | 33219.70 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Nov-2024 | | | 6.853000% | Rate | | 0.00 | 1 | 744.89 | 0.00 | 33964.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Nov-2024 | | | 6.850100% | Rate | | 0.00 | 1 | 744.57 | 0.00 | 34709.15 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Nov-2024 | | | 6.850100% | Interest Payment | | (23,514.35) | 1 | 744.57 | (23514.35) | 11939.37 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Nov-2024 | | | 6.837100% | Rate | | 0.00 | 3 | 2,229.47 | 0.00 | 14168.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Dec-2024 | | | 6.817100% | Rate | | 0.00 | 1 | 740.99 | 0.00 | 14909.83 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Dec-2024 | | | 6.795400% | Rate | | 0.00 | 1 | 738.63 | 0.00 | 15648.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Dec-2024 | | | 6.788500% | Rate | | 0.00 | 1 | 737.87 | 0.00 | 16386.33 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Dec-2024 | | | 6.789900% | Rate | | 0.00 | 1 | 738.03 | 0.00 | 17124.35 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Dec-2024 | | | 6.771900% | Rate | | 0.00 | 3 | 2,208.21 | 0.00 | 19332.57 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Dec-2024 | | | 6.747000% | Rate | | 0.00 | 1 | 733.37 | 0.00 | 20065.93 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 76 of 114

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dokos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual Due Date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 10-Dec-2024 | | | 6.741800% | Rate | | 0.00 | 1 | 732.80 | 0.00 | 20798.73 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Dec-2024 | | | 6.716400% | Rate | | 0.00 | 1 | 730.04 | 0.00 | 21528.78 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Dec-2024 | | | 6.711000% | Rate | | 0.00 | 1 | 729.45 | 0.00 | 22258.23 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Dec-2024 | | | 6.708000% | Rate | | 0.00 | 3 | 2,187.38 | 0.00 | 24445.61 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Dec-2024 | | | 6.661600% | Rate | | 0.00 | 1 | 724.08 | 0.00 | 25169.69 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Dec-2024 | | | 6.646300% | Rate | | 0.00 | 1 | 722.42 | 0.00 | 25892.11 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Dec-2024 | | | 6.639700% | Rate | | 0.00 | 1 | 721.70 | 0.00 | 26613.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Dec-2024 | | | 6.630800% | Rate | | 0.00 | 1 | 720.74 | 0.00 | 27334.55 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Dec-2024 | | | 6.634700% | Rate | | 0.00 | 3 | 2,163.49 | 0.00 | 29498.04 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Dec-2024 | | | 6.620500% | Rate | | 0.00 | 1 | 719.62 | 0.00 | 30217.66 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Dec-2024 | | | 6.601000% | Rate | | 0.00 | 2 | 1,435.00 | 0.00 | 31652.68 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Dec-2024 | | | 6.603200% | Rate | | 0.00 | 1 | 717.74 | 0.00 | 32370.40 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Dec-2024 | | | 6.602300% | Rate | | 0.00 | 1 | 717.63 | 0.00 | 33088.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Dec-2024 | | | 6.602300% | Interest Payment | | (22,258.24) | 2 | 1,435.27 | (22258.24) | 12265.06 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Dec-2024 | | | 6.609100% | Rate | | 0.00 | 1 | 718.38 | 0.00 | 12983.44 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 31-Dec-2024 | | | 6.621500% | Rate | | 0.00 | 2 | 1,439.45 | 0.00 | 14422.89 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Jan-2025 | | | 6.601500% | Rate | | 0.00 | 1 | 717.55 | 0.00 | 15140.44 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Jan-2025 | | | 6.597000% | Rate | | 0.00 | 3 | 2,151.18 | 0.00 | 17291.62 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Jan-2025 | | | 6.590000% | Rate | | 0.00 | 1 | 716.31 | 0.00 | 18007.93 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Jan-2025 | | | 6.579900% | Rate | | 0.00 | 1 | 715.20 | 0.00 | 18723.13 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Jan-2025 | | | 6.570900% | Rate | | 0.00 | 1 | 714.22 | 0.00 | 19437.35 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Jan-2025 | | | 6.561900% | Rate | | 0.00 | 1 | 713.25 | 0.00 | 20150.60 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Jan-2025 | | | 6.562100% | Rate | | 0.00 | 3 | 2,139.81 | 0.00 | 22290.41 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Jan-2025 | | | 6.566600% | Rate | | 0.00 | 1 | 713.75 | 0.00 | 23004.17 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Jan-2025 | | | 6.567000% | Rate | | 0.00 | 1 | 713.80 | 0.00 | 23717.97 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Jan-2025 | | | 6.570700% | Rate | | 0.00 | 1 | 714.21 | 0.00 | 24432.18 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Jan-2025 | | | 6.569700% | Rate | | 0.00 | 1 | 714.09 | 0.00 | 25146.27 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Jan-2025 | | | 6.565500% | Rate | | 0.00 | 4 | 2,854.57 | 0.00 | 28000.83 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Jan-2025 | | | 6.563200% | Rate | | 0.00 | 1 | 713.39 | 0.00 | 28714.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Jan-2025 | | | 6.564900% | Rate | | 0.00 | 1 | 713.57 | 0.00 | 29427.79 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Jan-2025 | | | 6.566600% | Rate | | 0.00 | 1 | 713.76 | 0.00 | 30141.55 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Jan-2025 | | | 6.569300% | Rate | | 0.00 | 3 | 2,142.16 | 0.00 | 32283.71 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Jan-2025 | | | 6.575100% | Rate | | 0.00 | 1 | 714.68 | 0.00 | 32998.39 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Jan-2025 | | | 6.575100% | Interest Payment | | (22,290.42) | 0 | 0.00 | (22290.42) | 10707.97 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Jan-2025 | | | 6.579900% | Rate | | 0.00 | 1 | 715.20 | 0.00 | 11423.17 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Jan-2025 | | | 6.577500% | Rate | | 0.00 | 1 | 714.94 | 0.00 | 12138.11 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Jan-2025 | | | 6.574800% | Rate | | 0.00 | 1 | 714.65 | 0.00 | 12852.76 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 31-Jan-2025 | | | 6.576100% | Rate | | 0.00 | 3 | 2,144.36 | 0.00 | 14997.13 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Feb-2025 | | | 6.573100% | Rate | | 0.00 | 1 | 714.46 | 0.00 | 15711.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Feb-2025 | | | 6.577600% | Rate | | 0.00 | 1 | 714.95 | 0.00 | 16426.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Feb-2025 | | | 6.577200% | Rate | | 0.00 | 1 | 714.91 | 0.00 | 17141.44 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Feb-2025 | | | 6.571800% | Rate | | 0.00 | 1 | 714.32 | 0.00 | 17855.77 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Feb-2025 | | | 6.572300% | Rate | | 0.00 | 3 | 2,143.15 | 0.00 | 19998.91 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Feb-2025 | | | 6.574600% | Rate | | 0.00 | 1 | 714.63 | 0.00 | 20713.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Feb-2025 | | | 6.579700% | Rate | | 0.00 | 1 | 715.18 | 0.00 | 21428.72 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Feb-2025 | | | 6.582900% | Rate | | 0.00 | 1 | 715.54 | 0.00 | 22144.26 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Feb-2025 | | | 6.581900% | Rate | | 0.00 | 1 | 715.42 | 0.00 | 22859.67 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Feb-2025 | | | 6.578900% | Rate | | 0.00 | 4 | 2,860.37 | 0.00 | 25720.04 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Feb-2025 | | | 6.576300% | Rate | | 0.00 | 1 | 714.82 | 0.00 | 26434.86 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Feb-2025 | | | 6.578100% | Rate | | 0.00 | 1 | 715.01 | 0.00 | 27149.87 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Feb-2025 | | | 6.576300% | Rate | | 0.00 | 1 | 714.81 | 0.00 | 27864.68 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Feb-2025 | | | 6.584700% | Rate | | 0.00 | 3 | 2,147.17 | 0.00 | 30011.85 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Feb-2025 | | | 6.586800% | Rate | | 0.00 | 1 | 715.95 | 0.00 | 30727.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Feb-2025 | | | 6.583800% | Rate | | 0.00 | 1 | 715.63 | 0.00 | 31443.43 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Feb-2025 | | | 6.588100% | Rate | | 0.00 | 1 | 716.09 | 0.00 | 32159.52 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Feb-2025 | | | 6.588000% | Rate | | 0.00 | 1 | 716.08 | 0.00 | 32875.60 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Feb-2025 | | | 6.588000% | Interest Payment | | (23,000.00) | 0 | 0.00 | (23000.00) | 9875.60 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Feb-2025 | | | 6.588300% | Rate | | 0.00 | 3 | 2,148.36 | 0.00 | 12023.96 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Mar-2025 | | | 6.587200% | Rate | | 0.00 | 1 | 715.99 | 0.00 | 12739.95 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dakos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contratual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 4-Mar-2025 | | | 6.589200% | Rate | | 0.00 | 1 | 716.21 | 0.00 | 13456.17 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Mar-2025 | | | 6.585900% | Rate | | 0.00 | 1 | 715.85 | 0.00 | 14172.02 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Mar-2025 | | | 6.578500% | Rate | | 0.00 | 1 | 715.06 | 0.00 | 14887.08 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Mar-2025 | | | 6.578400% | Rate | | 0.00 | 3 | 2,145.14 | 0.00 | 17032.21 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Mar-2025 | | | 6.586100% | Rate | | 0.00 | 1 | 715.87 | 0.00 | 17748.09 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Mar-2025 | | | 6.586700% | Rate | | 0.00 | 1 | 715.94 | 0.00 | 18464.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Mar-2025 | | | 6.589800% | Rate | | 0.00 | 1 | 716.29 | 0.00 | 19180.31 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Mar-2025 | | | 6.589300% | Rate | | 0.00 | 1 | 716.22 | 0.00 | 19896.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Mar-2025 | | | 6.585000% | Rate | | 0.00 | 3 | 2,147.27 | 0.00 | 22043.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Mar-2025 | | | 6.583700% | Rate | | 0.00 | 1 | 715.61 | 0.00 | 22759.42 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Mar-2025 | | | 6.580900% | Rate | | 0.00 | 1 | 715.31 | 0.00 | 23474.73 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Mar-2025 | | | 6.581300% | Rate | | 0.00 | 1 | 715.35 | 0.00 | 24190.08 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Mar-2025 | | | 6.583800% | Rate | | 0.00 | 1 | 715.63 | 0.00 | 24905.71 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Mar-2025 | | | 6.586600% | Rate | | 0.00 | 3 | 2,147.79 | 0.00 | 27053.50 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Mar-2025 | | | 6.583700% | Rate | | 0.00 | 1 | 715.61 | 0.00 | 27769.11 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Mar-2025 | | | 6.584600% | Rate | | 0.00 | 0 | 0.00 | 0.00 | 27769.11 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Mar-2025 | | | 6.584600% | Interest Payment | | (9,875.61) | 0 | 0.00 | (9875.61) | 17893.50 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Mar-2025 | | | 6.584600% | Interest Payment | | (13,124.39) | 1 | 715.71 | (13124.39) | 5484.82 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Mar-2025 | | | 6.586100% | Rate | | 0.00 | 1 | 715.88 | 0.00 | 6200.70 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Mar-2025 | | | 6.586100% | Rate | | 0.00 | 1 | 715.88 | 0.00 | 6916.58 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Mar-2025 | | | 6.591700% | Rate | | 0.00 | 3 | 2,149.45 | 0.00 | 9066.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 31-Mar-2025 | | | 6.589400% | Rate | | 0.00 | 1 | 716.24 | 0.00 | 9782.27 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Apr-2025 | | | 6.588100% | Rate | | 0.00 | 1 | 716.10 | 0.00 | 10498.37 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Apr-2025 | | | 6.583800% | Rate | | 0.00 | 1 | 715.63 | 0.00 | 11214.00 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Apr-2025 | | | 6.583400% | Rate | | 0.00 | 1 | 715.59 | 0.00 | 11929.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Apr-2025 | | | 6.583800% | Rate | | 0.00 | 3 | 2,146.88 | 0.00 | 14076.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Apr-2025 | | | 6.585600% | Rate | | 0.00 | 1 | 715.83 | 0.00 | 14792.29 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Apr-2025 | | | 6.584300% | Rate | | 0.00 | 1 | 715.68 | 0.00 | 15507.97 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Apr-2025 | | | 6.565300% | Rate | | 0.00 | 1 | 713.61 | 0.00 | 16221.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Apr-2025 | | | 6.556300% | Rate | | 0.00 | 1 | 712.64 | 0.00 | 16934.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Apr-2025 | | | 6.585400% | Rate | | 0.00 | 3 | 2,147.40 | 0.00 | 19081.63 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Apr-2025 | | | 6.593300% | Rate | | 0.00 | 1 | 716.66 | 0.00 | 19798.28 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Apr-2025 | | | 6.586300% | Rate | | 0.00 | 1 | 715.90 | 0.00 | 20514.19 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Apr-2025 | | | 6.585400% | Rate | | 0.00 | 1 | 715.80 | 0.00 | 21229.99 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Apr-2025 | | | 6.592600% | Rate | | 0.00 | 4 | 2,866.34 | 0.00 | 24096.33 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Apr-2025 | | | 6.584400% | Rate | | 0.00 | 1 | 715.69 | 0.00 | 24812.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Apr-2025 | | | 6.583100% | Rate | | 0.00 | 1 | 715.55 | 0.00 | 25527.57 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Apr-2025 | | | 6.586600% | Rate | | 0.00 | 1 | 715.93 | 0.00 | 26243.51 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Apr-2025 | | | 6.587900% | Rate | | 0.00 | 1 | 716.07 | 0.00 | 26959.58 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Apr-2025 | | | 6.591100% | Rate | | 0.00 | 3 | 2,149.26 | 0.00 | 29108.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Apr-2025 | | | 6.591100% | Interest Payment | | (9,066.04) | 0 | 0.00 | (9066.04) | 20042.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Apr-2025 | | | 6.591100% | Interest Payment | | (13,933.96) | 0 | 0.00 | (13933.96) | 6108.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Apr-2025 | | | 6.584500% | Rate | | 0.00 | 1 | 715.71 | 0.00 | 6824.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Apr-2025 | | | 6.586300% | Rate | | 0.00 | 1 | 715.89 | 0.00 | 7540.44 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Apr-2025 | | | 6.586100% | Rate | | 0.00 | 1 | 715.88 | 0.00 | 8256.32 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-May-2025 | | | 6.588700% | Rate | | 0.00 | 1 | 716.16 | 0.00 | 8972.48 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-May-2025 | | | 6.587600% | Rate | | 0.00 | 3 | 2,148.11 | 0.00 | 11120.58 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-May-2025 | | | 6.593000% | Rate | | 0.00 | 1 | 716.63 | 0.00 | 11837.21 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-May-2025 | | | 6.596000% | Rate | | 0.00 | 1 | 716.96 | 0.00 | 12554.16 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-May-2025 | | | 6.606900% | Rate | | 0.00 | 1 | 718.14 | 0.00 | 13272.31 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-May-2025 | | | 6.601400% | Rate | | 0.00 | 1 | 717.54 | 0.00 | 13989.85 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-May-2025 | | | 6.601900% | Rate | | 0.00 | 3 | 2,152.78 | 0.00 | 16142.63 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-May-2025 | | | 6.597200% | Rate | | 0.00 | 1 | 717.08 | 0.00 | 16859.71 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-May-2025 | | | 6.589600% | Rate | | 0.00 | 1 | 716.25 | 0.00 | 17575.97 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-May-2025 | | | 6.589700% | Rate | | 0.00 | 1 | 716.27 | 0.00 | 18292.23 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-May-2025 | | | 6.593200% | Rate | | 0.00 | 1 | 716.65 | 0.00 | 19008.88 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-May-2025 | | | 6.593100% | Rate | | 0.00 | 3 | 2,149.93 | 0.00 | 21158.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-May-2025 | | | 6.591200% | Rate | | 0.00 | 1 | 716.43 | 0.00 | 21875.24 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-May-2025 | | | 6.588900% | Rate | | 0.00 | 1 | 716.18 | 0.00 | 22591.42 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dokos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 21-May-2025 | | | 6.587200% | Rate | | 0.00 | 1 | 716.00 | 0.00 | 23307.42 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-May-2025 | | | 6.591900% | Rate | | 0.00 | 1 | 716.51 | 0.00 | 24023.93 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-May-2025 | | | 6.589200% | Rate | | 0.00 | 4 | 2,864.87 | 0.00 | 26888.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-May-2025 | | | 6.589200% | Rate | | 0.00 | 0 | 0.00 | 0.00 | 26888.80 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-May-2025 | | | 6.589200% | Interest Payment | | (15,459.55) | 0 | 0.00 | (15459.55) | 11429.25 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-May-2025 | | | 6.589200% | Interest Payment | | (7,540.45) | 1 | 716.21 | (7540.45) | 4605.01 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-May-2025 | | | 6.593000% | Rate | | 0.00 | 1 | 716.63 | 0.00 | 5321.64 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-May-2025 | | | 6.593000% | Rate | | 0.00 | 1 | 716.62 | 0.00 | 6038.26 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-May-2025 | | | 6.591300% | Rate | | 0.00 | 3 | 2,149.32 | 0.00 | 8187.59 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Jun-2025 | | | 6.588600% | Rate | | 0.00 | 1 | 716.15 | 0.00 | 8903.74 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Jun-2025 | | | 6.586700% | Rate | | 0.00 | 1 | 715.94 | 0.00 | 9619.68 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Jun-2025 | | | 6.584200% | Rate | | 0.00 | 1 | 715.67 | 0.00 | 10335.36 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Jun-2025 | | | 6.580300% | Rate | | 0.00 | 1 | 715.24 | 0.00 | 11050.60 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Jun-2025 | | | 6.577300% | Rate | | 0.00 | 3 | 2,144.78 | 0.00 | 13195.38 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Jun-2025 | | | 6.575800% | Rate | | 0.00 | 1 | 714.76 | 0.00 | 13910.14 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Jun-2025 | | | 6.575700% | Rate | | 0.00 | 1 | 714.75 | 0.00 | 14624.89 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Jun-2025 | | | 6.578800% | Rate | | 0.00 | 1 | 715.08 | 0.00 | 15339.97 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Jun-2025 | | | 6.578900% | Rate | | 0.00 | 1 | 715.09 | 0.00 | 16055.06 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Jun-2025 | | | 6.577700% | Rate | | 0.00 | 3 | 2,144.90 | 0.00 | 18199.96 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Jun-2025 | | | 6.576200% | Rate | | 0.00 | 1 | 714.81 | 0.00 | 18914.77 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Jun-2025 | | | 6.578200% | Rate | | 0.00 | 1 | 715.02 | 0.00 | 19629.78 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Jun-2025 | | | 6.579100% | Rate | | 0.00 | 0 | 0.00 | 0.00 | 19629.78 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Jun-2025 | | | 6.579100% | Book Chargeoff | | 0.00 | 2 | 1,430.23 | 0.00 | 21060.01 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Jun-2025 | | | 6.582100% | Rate | | 0.00 | 3 | 2,146.32 | 0.00 | 23206.33 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Jun-2025 | | | 6.585900% | Rate | | 0.00 | 1 | 715.86 | 0.00 | 23922.18 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Jun-2025 | | | 6.584100% | Rate | | 0.00 | 1 | 715.66 | 0.00 | 24637.85 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Jun-2025 | | | 6.583700% | Rate | | 0.00 | 1 | 715.61 | 0.00 | 25353.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Jun-2025 | | | 6.583700% | Interest Payment | | (16,245.29) | 0 | 0.00 | (16245.29) | 9108.17 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Jun-2025 | | | 6.583700% | Interest Payment | | (6,754.71) | 0 | 0.00 | (6754.71) | 2353.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Jun-2025 | | | 6.585600% | Rate | | 0.00 | 1 | 715.83 | 0.00 | 3069.28 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Jun-2025 | | | 6.586000% | Rate | | 0.00 | 3 | 2,147.60 | 0.00 | 5216.88 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Jun-2025 | | | 6.591300% | Rate | | 0.00 | 1 | 716.44 | 0.00 | 5933.32 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Jul-2025 | | | 6.593400% | Rate | | 0.00 | 1 | 716.67 | 0.00 | 6649.99 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Jul-2025 | | | 6.586800% | Rate | | 0.00 | 1 | 715.95 | 0.00 | 7365.94 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Jul-2025 | | | 6.592100% | Rate | | 0.00 | 4 | 2,866.13 | 0.00 | 10232.07 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Jul-2025 | | | 6.591700% | Rate | | 0.00 | 1 | 716.48 | 0.00 | 10948.55 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Jul-2025 | | | 6.589200% | Rate | | 0.00 | 1 | 716.21 | 0.00 | 11664.76 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Jul-2025 | | | 6.600100% | Rate | | 0.00 | 1 | 717.40 | 0.00 | 12382.16 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Jul-2025 | | | 6.602600% | Rate | | 0.00 | 1 | 717.67 | 0.00 | 13099.83 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Jul-2025 | | | 6.610900% | Rate | | 0.00 | 3 | 2,155.70 | 0.00 | 15255.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Jul-2025 | | | 6.607800% | Rate | | 0.00 | 1 | 718.24 | 0.00 | 15973.78 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Jul-2025 | | | 6.606400% | Rate | | 0.00 | 1 | 718.09 | 0.00 | 16691.86 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Jul-2025 | | | 6.604500% | Rate | | 0.00 | 1 | 717.88 | 0.00 | 17409.74 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Jul-2025 | | | 6.607600% | Rate | | 0.00 | 1 | 718.22 | 0.00 | 18127.96 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Jul-2025 | | | 6.614300% | Rate | | 0.00 | 3 | 2,156.82 | 0.00 | 20284.77 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Jul-2025 | | | 6.615100% | Rate | | 0.00 | 1 | 719.03 | 0.00 | 21003.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Jul-2025 | | | 6.619200% | Rate | | 0.00 | 1 | 719.47 | 0.00 | 21723.28 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Jul-2025 | | | 6.613300% | Rate | | 0.00 | 1 | 718.84 | 0.00 | 22442.12 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Jul-2025 | | | 6.615400% | Rate | | 0.00 | 1 | 719.06 | 0.00 | 23161.18 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Jul-2025 | | | 6.616700% | Rate | | 0.00 | 0 | 0.00 | 0.00 | 23161.18 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Jul-2025 | | | 6.616700% | Interest Payment | | (17,783.11) | 0 | 0.00 | (17783.11) | 5378.07 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Jul-2025 | | | 6.616700% | Interest Payment | | (5,216.89) | 3 | 2,157.61 | (5216.89) | 2318.79 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Jul-2025 | | | 6.617300% | Rate | | 0.00 | 1 | 719.26 | 0.00 | 3038.06 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Jul-2025 | | | 6.619300% | Rate | | 0.00 | 1 | 719.49 | 0.00 | 3757.55 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Jul-2025 | | | 6.622600% | Rate | | 0.00 | 1 | 719.85 | 0.00 | 4477.39 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 31-Jul-2025 | | | 6.620700% | Rate | | 0.00 | 1 | 719.64 | 0.00 | 5197.03 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Aug-2025 | | | 6.618100% | Rate | | 0.00 | 3 | 2,158.07 | 0.00 | 7355.10 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Aug-2025 | | | 6.615700% | Rate | | 0.00 | 1 | 719.09 | 0.00 | 8074.19 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Aug-2025 | | | 6.615800% | Rate | | 0.00 | 1 | 719.11 | 0.00 | 8793.30 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 79 of 114

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dokos Butler

**Part 5: Loan Payment History on Note from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contratual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6-Aug-2025 | | | 6.607600% | Rate | | 0.00 | 1 | 718.22 | 0.00 | 9511.52 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Aug-2025 | | | 6.613900% | Rate | | 0.00 | 1 | 718.90 | 0.00 | 10230.41 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Aug-2025 | | | 6.616100% | Rate | | 0.00 | 3 | 2,157.43 | 0.00 | 12387.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Aug-2025 | | | 6.621500% | Rate | | 0.00 | 1 | 719.73 | 0.00 | 13107.57 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Aug-2025 | | | 6.625600% | Rate | | 0.00 | 1 | 720.18 | 0.00 | 13827.75 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 13-Aug-2025 | | | 6.626400% | Rate | | 0.00 | 1 | 720.26 | 0.00 | 14548.01 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Aug-2025 | | | 6.630200% | Rate | | 0.00 | 1 | 720.68 | 0.00 | 15268.68 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Aug-2025 | | | 6.627600% | Rate | | 0.00 | 3 | 2,161.16 | 0.00 | 17429.84 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Aug-2025 | | | 6.624400% | Rate | | 0.00 | 1 | 720.04 | 0.00 | 18149.88 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Aug-2025 | | | 6.617700% | Rate | | 0.00 | 1 | 719.32 | 0.00 | 18869.20 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Aug-2025 | | | 6.604900% | Rate | | 0.00 | 1 | 717.92 | 0.00 | 19587.12 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Aug-2025 | | | 6.605200% | Rate | | 0.00 | 1 | 717.96 | 0.00 | 20305.07 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Aug-2025 | | | 6.603600% | Rate | | 0.00 | 3 | 2,153.33 | 0.00 | 22458.40 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Aug-2025 | | | 6.587000% | Rate | | 0.00 | 1 | 715.98 | 0.00 | 23174.38 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Aug-2025 | | | 6.595600% | Rate | | 0.00 | 1 | 716.91 | 0.00 | 23891.30 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 27-Aug-2025 | | | 6.579500% | Rate | | 0.00 | 1 | 715.16 | 0.00 | 24606.45 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 28-Aug-2025 | | | 6.587400% | Rate | | 0.00 | 1 | 716.02 | 0.00 | 25322.48 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Aug-2025 | | | 6.580500% | Rate | | 0.00 | 4 | 2,861.06 | 0.00 | 28183.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Sep-2025 | | | 6.544700% | Rate | | 0.00 | 1 | 711.38 | 0.00 | 28894.92 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Sep-2025 | | | 6.537000% | Rate | | 0.00 | 1 | 710.54 | 0.00 | 29605.46 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 4-Sep-2025 | | | 6.519300% | Rate | | 0.00 | 1 | 708.62 | 0.00 | 30314.08 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 5-Sep-2025 | | | 6.514500% | Rate | | 0.00 | 3 | 2,124.28 | 0.00 | 32438.37 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Sep-2025 | | | 6.487500% | Rate | | 0.00 | 1 | 705.16 | 0.00 | 33143.53 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Sep-2025 | | | 6.481800% | Rate | | 0.00 | 1 | 704.64 | 0.00 | 33848.07 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Sep-2025 | | | 6.456600% | Rate | | 0.00 | 1 | 701.81 | 0.00 | 34549.87 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 11-Sep-2025 | | | 6.439800% | Rate | | 0.00 | 1 | 699.98 | 0.00 | 35249.85 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 12-Sep-2025 | | | 6.438400% | Rate | | 0.00 | 3 | 2,099.46 | 0.00 | 37349.32 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Sep-2025 | | | 6.414600% | Rate | | 0.00 | 1 | 697.24 | 0.00 | 38046.56 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Sep-2025 | | | 6.411400% | Rate | | 0.00 | 1 | 696.89 | 0.00 | 38743.45 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Sep-2025 | | | 6.407400% | Rate | | 0.00 | 1 | 696.45 | 0.00 | 39439.90 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 18-Sep-2025 | | | 6.400300% | Rate | | 0.00 | 1 | 695.68 | 0.00 | 40135.58 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 19-Sep-2025 | | | 6.398100% | Rate | | 0.00 | 3 | 2,086.32 | 0.00 | 42221.90 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 22-Sep-2025 | | | 6.399900% | Rate | | 0.00 | 1 | 695.64 | 0.00 | 42917.54 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 23-Sep-2025 | | | 6.419000% | Rate | | 0.00 | 1 | 697.72 | 0.00 | 43615.26 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 24-Sep-2025 | | | 6.421300% | Rate | | 0.00 | 1 | 697.96 | 0.00 | 44313.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 25-Sep-2025 | | | 6.422400% | Rate | | 0.00 | 1 | 698.08 | 0.00 | 45011.30 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 26-Sep-2025 | | | 6.423000% | Rate | | 0.00 | 3 | 2,094.43 | 0.00 | 47105.74 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 29-Sep-2025 | | | 6.430000% | Rate | | 0.00 | 1 | 698.91 | 0.00 | 47804.65 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 30-Sep-2025 | | | 6.427900% | Rate | | 0.00 | 1 | 698.68 | 0.00 | 48503.33 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 1-Oct-2025 | | | 6.398800% | Rate | | 0.00 | 1 | 695.52 | 0.00 | 49198.85 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 2-Oct-2025 | | | 6.393700% | Rate | | 0.00 | 1 | 694.96 | 0.00 | 49893.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 3-Oct-2025 | | | 6.391000% | Rate | | 0.00 | 3 | 2,084.00 | 0.00 | 51977.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 6-Oct-2025 | | | 6.370400% | Rate | | 0.00 | 1 | 692.43 | 0.00 | 52670.24 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 7-Oct-2025 | | | 6.366100% | Rate | | 0.00 | 1 | 691.96 | 0.00 | 53362.20 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 8-Oct-2025 | | | 6.352700% | Rate | | 0.00 | 1 | 690.51 | 0.00 | 54052.71 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 9-Oct-2025 | | | 6.348200% | Rate | | 0.00 | 1 | 690.02 | 0.00 | 54742.73 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 10-Oct-2025 | | | 6.343400% | Rate | | 0.00 | 4 | 2,757.97 | 0.00 | 57500.70 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 14-Oct-2025 | | | 6.312200% | Rate | | 0.00 | 1 | 686.10 | 0.00 | 58186.81 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 15-Oct-2025 | | | 6.296600% | Rate | | 0.00 | 1 | 684.42 | 0.00 | 58871.22 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 16-Oct-2025 | | | 6.296300% | Rate | | 0.00 | 1 | 684.38 | 0.00 | 59555.60 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 17-Oct-2025 | | | 6.301400% | Rate | | 0.00 | 3 | 2,054.80 | 0.00 | 61610.40 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 20-Oct-2025 | | | 6.295500% | Rate | | 0.00 | 1 | 684.29 | 0.00 | 62294.70 | 0.00 | 3,913,027.29 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.295500% | Principal Payment | | (51,039.53) | 0 | 0.00 | 0.00 | 62294.70 | (51039.53) | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.295500% | Interest Payment | | (4,477.40) | 0 | 0.00 | (4477.40) | 57817.30 | 0.00 | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.295500% | Interest Payment | | (21,051.64) | 0 | 0.00 | (21051.64) | 36765.66 | 0.00 | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.295500% | Interest Payment | | (22,275.62) | 0 | 0.00 | (22275.62) | 14490.04 | 0.00 | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.295500% | Interest Payment | | (14,490.05) | 0 | 0.00 | (14490.05) | -0.01 | 0.00 | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.288200% | Rate | | 0.00 | 0 | 0.00 | 0.00 | -0.01 | 0.00 | 3,861,987.76 | | N/A | 0.00 | |
| 21-Oct-2025 | | | 6.288200% | Reverse Principal | | 3,762.86 | 1 | 675.24 | 0.00 | 675.23 | 3762.86 | 3,865,750.62 | | N/A | 0.00 | |



Case: 25-51814 Doc# 75 Filed: 09/25/26 Entered: 09/25/26 15:16:11 Page 80 of 114

**Mortgage Proof of Claim Attachment**

Case number: 25-51814
Debtor 1: William Dokos Butler

| Part 5: Loan Payment History on Note from First Date of Default | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| A. Date | B. Contratual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual Due Date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 22-Oct-2025 | | | 6.266300% | Rate | | 0.00 | 1 | 672.89 | 0.00 | 1348.11 | 0.00 | 3,865,750.62 | | N/A | 0.00 | |
| 23-Oct-2025 | | | 6.266100% | Rate | | 0.00 | 1 | 672.87 | 0.00 | 2020.98 | 0.00 | 3,865,750.62 | | N/A | 0.00 | |
| 24-Oct-2025 | | | 6.279700% | Rate | | 0.00 | 3 | 2,022.99 | 0.00 | 4043.97 | 0.00 | 3,865,750.62 | | N/A | 0.00 | |
| 27-Oct-2025 | | | 6.279700% | Principal Payment | | (7,719.71) | 0 | 0.00 | 0.00 | 4043.97 | (7719.71) | 3,858,030.91 | | N/A | 0.00 | |
| 27-Oct-2025 | | | 6.279700% | Interest Payment | | (4,040.04) | 0 | 0.00 | (4040.04) | 3.93 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 27-Oct-2025 | | | 6.255500% | Rate | | 0.00 | 1 | 670.39 | 0.00 | 674.31 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 28-Oct-2025 | | | 6.250800% | Rate | | 0.00 | 1 | 669.88 | 0.00 | 1344.20 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 29-Oct-2025 | | | 6.241800% | Rate | | 0.00 | 1 | 668.92 | 0.00 | 2013.11 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 30-Oct-2025 | | | 6.232900% | Rate | | 0.00 | 1 | 667.96 | 0.00 | 2681.07 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 31-Oct-2025 | | | 6.229100% | Rate | | 0.00 | 3 | 2,002.67 | 0.00 | 4683.74 | 0.00 | 3,858,030.91 | | N/A | 0.00 | |
| 3-Nov-2025 | | | 6.229100% | Principal Payment | | (5,777.29) | 0 | 0.00 | 0.00 | 4683.74 | (5777.29) | 3,852,253.62 | | N/A | 0.00 | |
| 3-Nov-2025 | | | 6.229100% | Interest Payment | | (2,000.72) | 0 | 0.00 | (2000.72) | 2683.02 | 0.00 | 3,852,253.62 | | N/A | 0.00 | |
| 3-Nov-2025 | | | 6.229100% | Interest Payment | | (2,674.54) | 0 | 0.00 | (2674.54) | 8.48 | 0.00 | 3,852,253.62 | | N/A | 0.00 | |
| 3-Nov-2025 | | | 6.229100% | Principal Payment | | (800,000.00) | 0 | 0.00 | 0.00 | 8.48 | (800000.00) | 3,052,253.62 | | N/A | 0.00 | |
| 3-Nov-2025 | | | 6.248500% | Rate | | 0.00 | 1 | 529.78 | 0.00 | 538.26 | 0.00 | 3,052,253.62 | | N/A | 0.00 | |
| 4-Nov-2025 | | | 6.248500% | Principal Payment | | (12,527.95) | 0 | 0.00 | 0.00 | 538.26 | (12527.95) | 3,039,725.67 | | N/A | 0.00 | |
| 4-Nov-2025 | | | 6.248500% | Interest Payment | | (529.12) | 0 | 0.00 | (529.12) | 9.14 | 0.00 | 3,039,725.67 | | N/A | 0.00 | |
| 4-Nov-2025 | | | 6.264100% | Rate | | 0.00 | 1 | 528.92 | 0.00 | 538.06 | 0.00 | 3,039,725.67 | | N/A | 0.00 | |
| 5-Nov-2025 | | | 6.271800% | Rate | | 0.00 | 1 | 529.57 | 0.00 | 1067.63 | 0.00 | 3,039,725.67 | | N/A | 0.00 | |
| 6-Nov-2025 | | | 6.270400% | Rate | | 0.00 | 1 | 529.46 | 0.00 | 1597.09 | 0.00 | 3,039,725.67 | | N/A | 0.00 | |
| 7-Nov-2025 | | | 6.256600% | Rate | | 0.00 | 3 | 1,584.86 | 0.00 | 3181.94 | 0.00 | 3,039,725.67 | | N/A | 0.00 | |
| 10-Nov-2025 | | | 6.256600% | Principal Payment | | (19,746.36) | 0 | 0.00 | 0.00 | 3181.94 | (19746.36) | 3,019,979.31 | | N/A | 0.00 | |
| 10-Nov-2025 | | | 6.256600% | Interest Payment | | (3,168.88) | 0 | 0.00 | (3168.88) | 13.06 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 10-Nov-2025 | | | 6.236400% | Rate | | 0.00 | 2 | 1,046.33 | 0.00 | 1059.40 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 12-Nov-2025 | | | 6.221700% | Rate | | 0.00 | 1 | 521.93 | 0.00 | 1581.33 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 13-Nov-2025 | | | 6.212400% | Rate | | 0.00 | 1 | 521.15 | 0.00 | 2102.47 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 14-Nov-2025 | | | 6.223500% | Rate | | 0.00 | 3 | 1,566.24 | 0.00 | 3668.71 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 17-Nov-2025 | | | 6.223400% | Rate | | 0.00 | 1 | 522.07 | 0.00 | 4190.79 | 0.00 | 3,019,979.31 | | N/A | 0.00 | |
| 18-Nov-2025 | | | 6.223400% | Principal Payment | | (6,351.57) | 0 | 0.00 | 0.00 | 4190.79 | (6351.57) | 3,013,627.74 | | N/A | 0.00 | |
| 18-Nov-2025 | | | 6.223400% | Interest Payment | | (4,184.25) | 0 | 0.00 | (4184.25) | 6.54 | 0.00 | 3,013,627.74 | | N/A | 0.00 | |
| 18-Nov-2025 | | | 6.223400% | Interest Payment | | (6.55) | 0 | 0.00 | (6.55) | -0.01 | 0.00 | 3,013,627.74 | | N/A | 0.00 | |
| 18-Nov-2025 | | | 6.227000% | Rate | | 0.00 | 1 | 521.28 | 0.00 | 521.26 | 0.00 | 3,013,627.74 | | N/A | 0.00 | |
| 19-Nov-2025 | | | 6.223300% | Rate | | 0.00 | 1 | 520.98 | 0.00 | 1042.23 | 0.00 | 3,013,627.74 | | N/A | 0.00 | |
| 20-Nov-2025 | | | 6.224300% | Rate | | 0.00 | 1 | 521.05 | 0.00 | 1563.28 | 0.00 | 3,013,627.74 | | N/A | 0.00 | |

**CARD AGREEMENT**

| Date | Prin, int & esc past due balance | Principal balance |
|---|---|---|
| 20-Nov-2025 | 101,197.19 | 101,197.19 |

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is Hemar, Rousso & Heald, LLP ("the business"), 15910 Ventura Blvd., 12th Floor, Encino, CA 91436-2829.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

On March 6, 2026, I served the following document described as: **PROOF OF CLAIM** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

X **To Be Served By The Court Via Notice Of Electronic Filing (NEF):** The foregoing document will be served by the court via NEF and hyperlink to the document. On March 6, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated on the attached SERVICE LIST.

X **(By First Class Mail)** At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

X **(Federal)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on March 6, 2026, at Encino, California.

MARY ANN GRANZOW

## SERVICE LIST

**Electronic Mail Notice List**

Nitya Bhardwaj nbhardwaj@vedderprice.com, ecfladocket@vedderprice.com
Max DuVal mduval@vedderprice.com
Merdaud Jafarnia bkca@alaw.net, mjafarnia@ecf.courtdrive.com
Bernard Kornberg bernie.kornberg@millernash.com
Brent D. Meyer brent@meyerllp.com, bmeyer@fhlawllp.com
Randall P. Mroczynski rmroczynski@cookseylaw.com
Office of the U.S. Trustee / SJ USTPRegion17.SJ.ECF@usdoj.gov
Phillip John Shine phillip.shine@usdoj.gov
Jessica M. Simon jsimon@hrhlaw.com
Edward A. Treder ndcaecf@BDFGroup.com

**U.S. First Class Mail**

**Debtors**
William Dokos Butler
and Anne Harmsen Butler
730 Mora Drive
Los Altos, CA 94024

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA 91436
(818) 501-3800

# EXHIBIT 9

DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Proposed Attorneys for
PAPPAS PIPING SERVICE, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor. | Case No. 8:26-bk-10033-MH<br><br>Chapter 11<br><br>DEBTOR'S CHAPTER 11 SUBCHAPTER V INITIAL STATUS REPORT<br><br><u>Hearing:</u><br>Date: February 3, 2026<br>Time: 2:30 p.m.<br>Ctrm: 6C<br>Place: 411 West Fourth Street<br>Santa Ana, CA 92701 |

TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

Debtor and Debtor-in-Possession, Papas Piping Service, Inc., ("Pappas" or "Debtor") submits this Chapter 11 initial case status report ("Status Report") in advance of the status conference, pursuant to the Court's Order (1) Setting Scheduling Hearing and Case Management Conference and

(2) Requiring Status Report ("Order") entered on January 8, 2026, as Dk. No. 12.

## 1. Background

### A. Debtor's Operations

Debtor is a full-service design build piping company that specializes in commercial process and other specialized piping that is used in critical infrastructure for commercial clients. Pappas was founded in 1988 by Mike Pappas ("Mr. Pappas") and Guillermo Silva Jr. ("Mr. Silva") who owned the company 50/50. Since its founding, the Debtor served a premier set of customers, including top-tier general contractors, leading property management firms, and direct clients within the commercial real estate market. The Debtor's expertise is essential to maintaining and developing critical infrastructure in one of the nation's most dynamic commercial zones, confirming our solid operational relevance and stability.

In 2022, Mr. Butler purchased the Debtor from Mr. Pappas and Mr. Silva, when Mr. Pappas and Mr. Silva decided to retire. The structure of the sale in 2022, was that a holding company, Ormond Corporation, a Delaware Corporation ("Ormond Corp") purchased the shares of the Debtor. Mr. Butler then became President, Chief Financial Officer and Secretary of the Debtor. On April 28, 2022, Live Oak Banking Company ("Live Oak") financed Ormond Corp's original purchase of the Debtor. *Id.* As part of the loan, Live Oak has a second lien on William and Anne Butler's home.

### B. Debtor's Financial Difficulties and Bankruptcy Filing

Soon after Mr. Butler's acquisition of the Debtor in the early half of 2022, three separate factors came into play that dramatically changed the viability of the business and affected its operations. First, shortly after the acquisition, Debtor lost nearly 40% of its revenue due to a loss of a large $3 million contract. Second, the Debtor's traditional customers (general contractors and their clients) were reticent in moving forward with some projects due to the high-interest-rate environment and general macroeconomic uncertainty associated with the election cycle. This created a temporary lag in new project awarding and initiation. Third, the overall piping and general contractor industry is relatively close-knit and based on relationships. The transition from the

decade's long ownership of Mr. Pappas and Mr. Silva to Mr. Butler, in a post-covid world, was difficult, and included multiple growing pains.

As the three factors were intensifying, the Debtor borrowed funds to make payroll and purchase materials, some from Mr. Butler and his family, and some in the form of high-interest rate business loans from "MCA" style lenders. While necessary at the time, the expense of this debt structure added unsustainable pressure to the monthly cash flow.

**C. Live Oak and Pre-Petition Negotiations**

In turn, the cash crunch on the Debtor resulted in the Debtor having difficulties maintaining its obligation to Live Oak. Mr. Butler and his wife tried to sell their home in May 2025, and Live Oak approved a sales price of $5.8 million. However, the Butlers had to reduce the sales price to $5.5 million. Live Oak would not approve the sale unless someone else could pay Live Oak the $300,000 shortfall. Unfortunately, the Butlers did not have $300,000 to pay Live Oak for the shortfall, the sale of the home fell through. The sale of the house would have paid down the Live Oak loan by $1.2 million.

As a result, on June 5, 2025, Debtor missed a payment to Live Oak. Shortly thereafter, "A Notice of Right to Cure Default" dated July 24, 2025, was issued by Live Oak to Ormond Corp and the Debtor. After months of emails and some discussion, Ormond Corp and the Debtor finally ended up with a forbearance agreement dated September 9, 2025 ("Forbearance Agreement"). During discussions with Live Oak, Mr. Butler informed Live Oak that he and his wife would have to file for personal bankruptcy because of a business debt owed to Bank of America.

As part of the Forbearance Agreement, Debtor paid Live Oak the first payment of $20,000 by September 10, 2025, but Debtor missed the next payment of $5,000 due October 5, 2025. At this point, the Butlers again tried to sell their home to assist in paying down the Live Oak secured debt. The proposed sale was set to close on October 1, 2025, and was set to pay Live Oak $1,589,098.99. Again, sadly, the sale did not close because of a last minute judgment lien recorded against the residence by Bank of America.

As a result of the cancellation of the sale of the Butlers' residence, on October 23, 2025, Live Oak sent a notice of default and acceleration of its note. As soon as this notice was received, Debtor paid the $5,000. In order to continue ongoing negotiations, Live Oak demanded that the Debtor had to pay the $73,914.23 in back interest as well, which the Debtor paid. Live Oak generally refused to speak or respond to emails after this payment.

On November 24, 2025, Live Oak then demanded $350,000 as a good faith payment only in order for Live Oak to "continue considering forbearance terms at its discretion." The Debtor requested that if it paid $350,000, would Live Oak agree to reinstate the loan? The answer from Live Oak was no, it only allowed the Debtor to continue to negotiate with Live Oak.

### D. The Butler's personal bankruptcy

In order to sell their personal residence, the Butlers were forced to file their own personal Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of California, on November 20, 2025, commencing Case No. 25-51814. The Butlers stated intention in their personal bankruptcy case is to sell their personal residence, which will significantly reduce the principal balance owed to Live Oak.

### E. Mr. Pappas returns and Mr. Teeple is appointed as Chief Restructuring Officer

In light of the operational issues after purchasing the Debtor, Mr. Butler reached out to Mr. Pappas to assist in turning around the Debtor's operations and cash flow issues. At that time, Mr. Pappas was living in South Carolina, but he cared deeply about the viability of the business he founded, his former employees, and his former clients. Mr. Pappas agreed to assist the Debtor in turning its operations around and utilized his relationships to obtain advances from certain general contractors and/or clients to assist in the working capital needs and operational cash flow. As a result, the Debtor has fully paid off one of the high interest MCA loans and is current on its ongoing vendor debt and the sole remaining MCA loan. As of the date of filing, the only known unsecured creditors (beyond trade vendors) are the seller's notes to Mr. Pappas and Mr. Silva.[1]

---

[1] Note, Mr. Pappas is not a statutory insider as defined by 11 U.S.C. § 101(31). Mr. Pappas is no

Additionally, in light of the various circumstances, Mr. Butler's personal Chapter 11 bankruptcy, and the complexities and/or relationship dynamics of the case, the Debtor decided to retain Mr. Joshua Teeple of Grobstein Teeple LLP as its Chief Restructuring Officer. Mr. Teeple has many years of experience as a fiduciary and is working with both Mr. Butler and Mr. Pappas to continue to turn the Debtor's operations around.

Notwithstanding its past financial difficulties, the Debtor, Mr. Butler, Mr. Pappas, and Mr. Teeple have begun to turn around operations. Since Mr. Pappas' return, the Debtor has lined up $11 million in specialty project work that is now in the design phase. This specialty work is slated to begin at the beginning of 2026 and take the Debtor through 2026 and into 2027. This work does not include the everyday plumbing bids that the Debtor will handle throughout the year that are anticipated to contribute another 6 million in revenue. Accordingly, the Debtor believes that it has a viable business that can be operated profitably going forward.

### F. Bankruptcy Filing

In order to protect its business, continue paying its employees, and continue servicing its customers, Debtor commenced this Chapter 11 bankruptcy case on January 6, 2026 ("Petition Date").

### G. Debtor's Secured and Purportedly Secured Creditors

Debtor's UCC search revealed five active UCC-1 financing statements and two primary secured creditors. As described above, the primary and first position secured lender is Live Oak. Live Oak appears to assert liens on all of Debtor's assets.[2] The other three UCC's are believed to be MCA's, most of which have been paid off pre-petition, and the Debtor has obtained a settlement with the sole remaining MCA (Pirs Capital LLC). Indeed, one of the MCA's have informed the Debtor that they will be issuing a termination of their lien. The other remaining UCC was filed by

---

longer an owner, director, officer, etc., of the Debtor, and is working as a W-2 employee for the Debtor to save the company's legacy.

[2] There are two UCC's recorded in favor of Great American Leasing Corporation, dated March 3, 2008, and July 1, 2010, the Debtor believes those UCC's are for certain leased equipment, and, that the Debtor is current on the obligations and will continue to pay timely post-petition.

one of companies owned by Mr. Butler's father-in-law, for loan(s) provided since the purchase of the Debtor. The Debtor is informed that Mr. Butler's father-in-law consents to the use of cash collateral, will defer payments until confirmation of a proposed Chapter 11 Plan of Reorganization, and will work with the Debtor to facilitate a consensual Chapter 11 Plan of Reorganization.

**2. Status of Debtor's Pre-Petition and Post-Petition Litigation**

The Debtor is not aware of any pre-petition and/or post-petition litigation at this time.

**3. Potential Avoidance Actions**

The Debtor may have certain avoidance actions under 11 U.S.C. §§ 547, 548, 549, 550, and 551, relating to certain pre-petition payments made to the MCA lenders.

**4. Retention of Professionals**

Debtor will seek to employ Marshack Hays Wood LLP ("MHW"), as its General Counsel and Grobstein Teeple LLP ("GT"), as its Financial Advisor and Accountants. Note, as discussed above, Mr. Joshua Teeple is the Debtor's Chief Restructuring Officer. Mr. Teeple will be filing an employment application seeking approval of a *Knudsen* payment structure for his services as CRO.

**5. Compliance with Duties**

Debtor is working to meet its duties and responsibilities under the Bankruptcy Code and the requirements of the United States Trustee. As of the filing of the Status Report, Debtor believes that it is in compliance with all of its duties under 11 U.S.C. §§ 521, 1106, and 1107 and all applicable guidelines of the Office of the United States Trustee.

**6. Single Asset Real Estate Case**

This case is not a single asset real estate case as contemplated in 11 U.S.C. § 101(51B).

**7. Proposed Deadline for Filing Plan and Disclosure Statement**

Debtor anticipates filing a proposed plan of reorganization within the exclusivity period provided by 11 U.S.C. § 1121.

**8. Proposed Deadline for Filing Proofs of Claims**

Debtor requests that the Court set a claims bar date at the status conference. Specifically, Debtor requests that the Court fix the bar date for filing proofs of claim or interest in this case

("Claims Deadline") at a date that is no sooner than sixty calendar days after date of service of the formal notice to creditors and parties in interest of the last day to file proofs of claim or interest in the case. To the extent that the Court does not do so, Debtor will file a motion to establish a claims bar date to ensure that it has the correct amounts for all its outstanding obligations.

Debtor further requests that if, after giving notice of the Claims Deadline, additional creditors are discovered who did not receive timely service of the notice of the Claims Deadline, the Debtors may serve such creditor(s) with a supplemental notice advising that the Claims Deadline was set by the Court, and that said creditor(s) must file a proof of claim within thirty days from the date of service of the supplemental notice.

## 9. Proposed Deadline for Filing Objections to Claims

The Debtor's plan will propose a claim objection deadline of 180 days after the Effective Date of Debtor's plan.

## 10. Proposed Deadline for Filing Avoidance Actions

The Debtor will likely file any avoidance actions before the expiration of the deadline set forth under 11 U.S.C. §§ 546 and/or 549(d).

Dated: January 20, 2026

MARSHACK HAYS WOOD LLP

By: */s/ David A. Wood*
DAVID A. WOOD,
MATTHEW W. GRIMSHAW
AARON E. DE LEEST
SARAH R. HASSELBERGER
Proposed Attorneys for
Pappas Piping Service Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **DEBTOR'S CHAPTER 11 SUBCHAPTER V INITIAL STATUS REPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 20, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR:** Aaron E. De Leest adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **US TRUSTEE: United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood** dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **January 20, 2026**, I delivered the document described above via email to Stretto, Debtor's claims and noticing agent, for service on the interested parties at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. Upon completion of the service by Stretto to interested parties, Stretto will file a Certificate of Service listing the addresses served.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
23832 ROCKFIELD BLVD., SUITE 245
LAKE FOREST, CA 92630-2884

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 20, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK D. HOULE
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 20, 2026 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| Date | Printed Name | Signature |

**2. SERVED BY UNITED STATES MAIL**: CONTINUED:

**UST**
UNITED STATES TRUSTEE (SA)
411 W FOURTH ST., SUITE 7160
SANTA ANA, CA 92701-4500

**SECURED CREDITOR**
BLUE VINE CAPITAL
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
30 MONTGOMERY ST.
SUITE 1400
JERSEY CITY, NJ 07302-3857

**SECURED CREDITOR**
CT CORPORATION SYSTEMS
U240026990432
3300 N. BRAND BLVD, STE 700
ATTN: SPRS
GLENDALE, CA 91203

**SPECIAL NOTICE**
CT CORPORATION SYSTEMS
U240026990432
C/O WOLTERS KLUWER LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209

**SECURED CREDITOR**
FERGUSON ENTERPRISES, INC., #686
P.O. BOX 740827
LOS ANGELES, CA 90074-0827

**SECURED CREDITOR**
GREAT AMERICAN LEASING CORP
U107236837087
625 1ST ST, SE
CEDAR RAPIDS, IA 524012030

**SPECIAL NOTICE**
GREAT AMERICAN LEASING CORP
U107236837087
C/O CT CORPORATION SYSTEMS
3300 N. BRAND BLVD, STE 700
GLENDALE, CA 91203

**SECURED CREDITOR**
GREAT AMERICAN LEASING CORP
U087149114661
625 1ST ST, SE
CEDAR RAPIDS, IA 524012030

**SECURED CREDITOR**
LIVE OAK BANKING COMPANY
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
1741 TIBURON DR.
WILMINGTON, NC 28403-6244

**SECURED CREDITOR**
LIVE OAK BANKING COMPANY
C/O THE COLLIE FIRM, PLLC
3957 GASPAR DRIVE
DALLAS, TX 75220

**SECURED CREDITOR**
PACE SUPPLY CORP.
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
P.O. BOX 744915
LOS ANGELES, CA 90074-4915

**SPECIAL NOTICE**
PIRS/AMA RECOVERY
C/O PIRS CAPITAL LLC
1688 MERIDIAN AVE., STE. 700
MIAMI BEACH, FL 33139-2713

**SECURED CREDITOR**
PIRS/AMA RECOVERY
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
3131 EASTSIDE ST., #435
HOUSTON, TX 77098-1947

**SPECIAL NOTICE**
PIRS/AMA RECOVERY
AMA RECOVERY GROUP, LLC
3131 EASTSIDE ST., #435
HOUSTON, TX 77098-1947

**SECURED CREDITOR**
SUNSTATE EQUIPMENT RENTALS
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
P.O. BOX 208439
DALLAS, TX 75320-8439

**TOP 20 UNSECURED CREDITOR**
ALAMEDO CO. RECORDER'S OFFICE
1106 MADISON ST.
OAKLAND, CA 94607-4901

**TOP 20 UNSECURED CREDITOR**
AMERICAN EXPRESS
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
200 VESEY STREET
NEW YORK, NY 10285-0002

**UTILITY CREDITOR / TOP 20 UNSECURED CREDITOR**
AT&T
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
208 S. AKARD STREET
DALLAS, TX 75202-4206

**TOP 20 UNSECURED CREDITOR**
BUSINESS TELEPHONE EXCHANGE
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
929 BERRYESSA RD., #10
SAN JOSE, CA 95133-1084

**TOP 20 UNSECURED CREDITOR**
CAPITAL ONE
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
1680 CAPITAL ONE DR.
MC LEAN, VA 22102-3407

**TOP 20 UNSECURED CREDITOR**
CINTAS
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
6800 CINTAS BLVD.
MASON, OH 45040-9151

**TOP 20 UNSECURED CREDITOR**
CITY & COUNTY OF SAN FRANCISCO
P.O. BOX 7425
SAN FRANCISCO, CA 94120-7425

**TOP 20 UNSECURED CREDITOR**
EARL'S PEST CONTROL
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
1040 COMMERCIAL AVE., STE 101
SAN JOSE, CA 95112-1418

**TOP 20 UNSECURED CREDITOR**
GRAINGER
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
2261 RINGWOOD AVE.
SAN JOSE, CA 95131-1792

**TOP 20 UNSECURED CREDITOR**
GUILLERMO SILVA
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
1610 MAIDEN CANE WAY
LOS BANOS, CA 93635-8546

**TOP 20 UNSECURED CREDITOR**
HDS WHITE CAP CONST. SUPPLY
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
P.O. BOX 4944
ORLANDO, FL 32802-4944

**TOP 20 UNSECURED CREDITOR**
HILTI, INC.
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
P.O. BOX 70299
PHILADELPHIA, PA 19176-0299

**TOP 20 UNSECURED CREDITOR**
HITACHI GLOBAL AIR POWER US LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
4659 LAS POSITAS RD.
SUITE A
LIVERMORE, CA 94551-9663

**TOP 20 UNSECURED CREDITOR**
PIRTEK SFO
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
1997 BURROUGHS AVE.
SAN LEANDRO, CA 94577-5609

**TOP 20 UNSECURED CREDITOR**
PURETEC INDUSTRIAL WATER
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
3151 STURGIS ROAD
OXNARD, CA 93030-8931

**TOP 20 UNSECURED CREDITOR**
SHEPPARD MULLIN RICHTER & HAMPTON
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
P.O. BOX 840728
LOS ANGELES, CA 90084-0728

**TOP 20 UNSECURED CREDITOR**
STEVE HARMSEN
26 N. STATE STREET
SALT LAKE CITY, UT 84103-2059

**TOP 20 UNSECURED CREDITOR**
WEST AMERICA FINANCE
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
26 NORTH STATE STREET
SALT LAKE CITY, UT 84103-2059

**INTERESTED PARTY**
ANNE BUTLER
730 MORA DR.
LOS ALTOS, CA 94024-6616

**INTERESTED PARTY**
BBSI (BARRET BUSINESS SERVICES, INC.)
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
2560 N FIRST ST, #180
SAN JOSE, CA 95131

**INTERESTED PARTY / PRIORITY CREDITOR**
WILLIAM D. BUTLER
730 MORA DR.
LOS ALTOS, CA 94024-6616

# EXHIBIT 10

DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for
PAPPAS PIPING SERVICE, INC.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor. | Case No. 8:26-bk-10033-MH<br><br>Chapter 11<br><br>DISCLOSURE STATEMENT DESCRIBING DEBTOR-IN-POSSESSION'S CHAPTER 11 PLAN OF REORGANIZATION<br><br><u>Disclosure Statement Hearing</u><br>Date: August 4, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 6C – Via Zoom Gov<br>411 W. Fourth St., Santa Ana, CA 92701<br><br><u>Plan Confirmation Hearing</u><br>Date: TBD<br>Time: TBD.<br>Place: 411 W. Fourth St., Courtroom 6C<br>Santa Ana, CA 92701 |

/ / / /

## Declaration of Joshua Teeple

I, JOSHUA TEEPLE, declare as follows:

1. I am an individual over 18 years of age and competent to make this Declaration.

2. If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3. The facts set forth below are true of my personal knowledge.

4. I am the Chief Restructuring Officer of the debtor, Pappas Piping Service, Inc. ("Debtor").

5. I make this declaration in support of the Disclosure Statement ("Disclosure Statement") which describes the Chapter 11 Plan of Reorganization ("Plan").

6. All terms not defined herein are used as they are defined in the Disclosure Statement.

7. A true and correct copy of this Court's webPACER Claims Register Docket for Case No. 8:26-bk-10033-MH as June 10, 2026, is attached here as Exhibit "1."

8. A true and correct copy of the Plan Projections are attached here as Exhibit "2."

9. A true and correct copy of the First Amended Pirs Settlement is attached here as Exhibit "3."

10. A true and correct copy of the Unsecured Creditor List is attached here as Exhibit "4."

11. A true and correct copy of the liquidation analysis is attached here as Exhibit "5."

12. I have reviewed the information contained within the Disclosure Statement, including related financial information. To the best of my knowledge, information, and belief, I believe that the information contained in this Disclosure Statement is accurate.

///

///

///

///

///

13. I have agreed to the terms set forth in the Disclosure Statement and Plan.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 10, 2026.

JOSHUA TEEPLE

# Exhibit "4"

| Claim Number | Creditor | Attn | Address | Amount | Type | Basis of Claims | Disputed | Contingent | Unliquidated | Claim Filed Y/N? | Amount of Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claims Register** | | | | | | | | | | | |
| 1 | Hitachi Global Air Power US LLC | | 4569 Las Positas Rd. Suite A Livermore, CA 94551 | 81,166.68 | Unsecured | Unsecured | | | | | |
| 2 | Puretec Industrial Water | | 3151 Sturgis Road Oxnard, CA 93031 | 50,813.98 | Unsecured | Unsecured | | | | | |
| 3 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | 400,000.00 | Unsecured | Unsecured | | | | | |
| 4 | GreatAmerica Financial Services Corp | Peggy Upton | 625 First St. SE Cedar Rapids, IA 52401 | 12,496.90 | Unsecured | Unsecured | | | | | |
| 5 | Internal Revenue Service | | PO Box 7346 Philadelphia, PA 19101 | 1,000.00 | Priority | Priority | | | | | |
| 6 | Live Oak Banking Company | | 1741 Tiburon Dr. Wilmington, NC 28403 | 3,189,601.40 | Secured | Secured | | | | | |
| 7 | American Express National Bank | c/o Becket and Lee LLP | PO Box 3001 Malvern PA 19355 | 5,144.50 | Unsecured | Unsecured | | | | | |
| 8 | PG&E | c/o Bankruptcy | PO Box 8329 Stockton, CA 95208 | 696.59 | Unsecured | Unsecured | | | | | |
| 9 | Guillermo Silva | | 1610 Maiden Cane Way Los Banos, CA 93635 | 400,000.00 | Unsecured | Unsecured | | | | | |
| 10 | Able Plumbing Sewer & Drain | | 1020 Ruff Drive San Jose, CA 95110 | 7,368.00 | Unsecured | Unsecured | | | | | |
| 11 | American Contractors Indemnity Company | | 801 S. Figueroa St. Ste. 700 Los Angeles, CA 90017 | - | Unsecured | Unsecured | | | | | |
| 12 | West American Finance Corporation | | 26 North State Street Salt Lake City, UT 84103 | 1,485,000.00 | Unsecured | Unsecured | | | | | |
| 13 | Sheppard, Mullin, Richter & Hampton LLP | | 650 Town Cetner Drive, 10th Floor Costa Mesa, CA 92626 | 69,949.57 | Unsecured | Unsecured | | | | | |
| 14 | WEX | | 1 Hancock Street Portland, ME 04101 | 8,031.43 | Unsecured | Unsecured | | | | | |
| 15 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 537,923.70 | Secured | Secured | | | | | |
| 16 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 20,786.00 | Unsecured | Unsecured | | | | | |
| 17 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | 210.90 | Unsecured | Unsecured | | | | | |
| 17 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | 2,553.31 | Priority | Priority | | | | | |
| | | | **TOTAL** | **6,272,742.96** | | | | | | | |
| **Part 1 : Priority Unsecured Claims** | | | | | | | | | | | |
| 2.1 | Adhara A. Lopez | | 2651 Aida Ave San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.2 | Alexis J. Rincon Cortes | | 1430 S. Wolfe Rd Richmond, CA 94807 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.3 | Alfredo Lucio Fernandez | | 1555 Marburg Way Apt. 15C San Jose, CA 9513 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.4 | Andrea T. Carabello | | 2717 Keppler Ct. San Jose, CA 95148 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.5 | Andy R. Mendex-Mellado | | 5365 St. Mark Ave Newark, CA 94560 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.6 | CA Dept of Tax and Fee Admin | Account Info Group, MIC: 29 | PO Box 942789 Sacramento, CA 94279 | - | Unsecured | - | | | | No | |
| 2.7 | Carlos Suacedo-Chavez | | 2745 Ophelia Ave San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.8 | Cristobal Rodriguez | | 5300 Verner Ave Sacramento, CA 95841 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.9 | Daniel Suarez | | 982 Princess Ann Dr. San Jose, CA 95128 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.10 | Darelyn Youngker | | 59 Bella Flora Lane Patterson, CA 95363 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.11 | Eduardo Hernandez Gonzalez | | 1525 Marbury Way #3E San Jose, CA 95133 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.12 | Employment Development Dept | Bankruptcy Group MIC 92E | PO Box 826880 Sacramento, CA 94280 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.13 | Faustino T. Gonzalez | | 3323 Coachlight Dr San Jose, CA 9511 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.14 | Franchise Tax Board | Bankruptcy Section, MS:A-340 | PO Box 2952 Sacramento, CA 95812 | - | Unsecured | - | | | | **YES** | $2,764.21 |
| 2.15 | Gary L. Barnes | | 9104 Brea Way Roseville, CA 95747 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.16 | Hector Hugo Acosta Macias | | 1801 Bermuda Way San Jose, CA 95122 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.17 | Internal Revenue Service | | PO Box 7346 Philadelphia, PA 19101 | - | Unsecured | - | | | | **YES** | $1,000 |
| 2.18 | Isaac Martinex Perez | | 57 Berkshire Ave., Apt 4 Redwood City, CA 94063 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.19 | Jorge F. Cisneros | | 5290 Great oaks Drive San Jose, CA 9511 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.20 | Juan Guevara | | 450 Bell St. Palo Alto, CA 94303 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.21 | Julio C. Pena Alvarez | | 540 E Maude Ave., Apt 24 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.22 | Julio Cesar Herrera Martinez | | 620 E. Maude Ave., #205 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.23 | Kevin M. Kashishian | | 2460 Benton Street Santa Clara, CA 95051 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.24 | Leonard Rodriguez Lopez | | 5300 Verner Ave Sacramento, CA 95841 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.25 | Luis Suarez | | 3210 Pearl Ave., #526 San Jose, CA 95136 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.26 | Luke S. Sanchez | | 1899 MacDuee Way San Jose, CA 95121 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.27 | Maynor Rodriquez Valdez | | 540 E. Mandue Ave., Apt 18 Sunnyvale, CA 94085 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.28 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.29 | Miriana De Rosas Silva | | 2175 Aborn Rd., #119 San Jose, CA 95121 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.30 | Olises Rivera Vargas | | 4469 Hanalei Place San Jose, CA 95118 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.31 | Rigoberto Lopez Hernandez | | 26361 Regal Ave Hayward, CA 94544 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.32 | Robert Delgado | | 3161 Cadillac Dr., Apt 2 San Jose, CA 95117 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.33 | Santa Clara County Dept of Tax | | 110 W. Tasman Dr San Jose., CA 95134 | - | Unsecured | Notice purpose | | | | No | |
| 2.34 | Steven Kitzerow | | 2435 Azevedo Pkwy San Jose, CA 95125 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.35 | Vincente Quiej Cal | | 1748 Norando Dr., #2 Sunnyvale, CA 94087 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.36 | Vinicio Cruz | | 5365 Saint Mark Ave Newark, CA 94560 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.37 | Wilfred T. Goo | | 16 Lavonne Drive Campbell, CA 95008 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| 2.38 | William D. Butler | | 730 Mora Dr. Los Altos, CA 94024 | - | Unsecured | Current Employee - Notice purpose | | | | No | |
| | | | | | **TOTAL** | | | | | | **$3,764** |
| **Part 2: Nonpriority Unsecured Claims** | | | | | | | | | | | |
| 3.1 | A&B Concrete Pumping | | PO Box 981 San Jose, CA 95108 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.2 | Able Septic Tank Service | | 1020 Ruff Drive San Jose, CA 95110 | - | Unsecured | Notice purpose only | | | | **YES** | 7,368.00 |
| 3.3 | Alamedo Co. Recorder's Office | | 1106 Madison St. Oakland, CA 94607 | 105.00 | Unsecured | Vendor | | | | No | |
| 3.4 | American Express | | 200 Vesey Street New York, NY 10285 | 5,000.00 | Unsecured | Credit Card | | | | **YES** | $5,144.50 |
| 3.5 | AT&T | | 208 S. Akard Street Dallas, TX 75202 | - | Unsecured | Utility | | | | No | |
| 3.6 | Azuga Inc | | PO Box 735291 Chicago, IL 60673 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.7 | Bay Area Asphalt & Cement Work | | 545 Nipper Avenue San Jose, CA 95133 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.8 | Bayshore Automotive | | 1394 N. Fourth St. San Jose, CA 95112 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.9 | Bennett Marine Utility | | PO Box 11710 Burlingame, CA 94010 | - | Unsecured | Notice purpose only | | | | No | |
| 3.10 | Berlin Food & Lab Equip Co | c/o Mark Cottonaro | 43 S. Linden Ave South San Francisco., CA 94080 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.11 | Bruce Tire, Inc. | c/o GB Auto Service | PO Box 280942 Dallas, Tx 75320 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.12 | Burdick Painting | | 705 Nuttman Street Santa Clara, CA 95054 | - | Unsecured | Vendor - Notice purpose only | | | | No | |
| 3.13 | Business Telephone Exchange | | 929 Berryessa Rd., #10 San Jose, CA 95133 | 876.00 | Unsecured | Vendor | | | | No | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3.14 | Capital One | | 1680 Capital One Dr. Mc Lean VA, 22102 | 180,000.00 | Unsecured | Credit Card | No | |
| 3.15 | Cintas | | 6800 Cintas Blvd. Mason, OH 45040 | - | Unsecured | Medical Supplies | No | |
| 3.16 | Cintas | | PO Box 631025 Cincinnati, OH 45263 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.17 | City & County of San Francisco | | PO Box 7425 San Francisco, CA 94120 | - | Unsecured | Vendor | No | |
| 3.18 | Colonia Life Insurance | | PO Box 903 Columbia, SC 29202 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.19 | County of San Mateo - Env Health | | 2000 Alameda de Las Pulgas St. 100 San Mateo, CA 94403 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.20 | Dahl's Equipment Rentals Inc | | 1110 N. Tenth St. San Jose, CA 95112 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.21 | De Lage Landen | | PO Box 825736 Philadelphi, PA 19182 | 782.24 | Unsecured | Vendor | No | |
| 3.22 | Digital Concrete Scanning Serv | | 2257 Harbor Bay Pkwy Alameda, CA 94502 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.23 | Earl's Pest Control | | 1040 Commercial Ave., Ste 101 San Jose, CA 95112 | - | Unsecured | Vendor | No | |
| 3.24 | Exxell Fire Systems | | 360 Grand Ave. #355 Oakland, CA 94610 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.25 | Faultline Marketing | | 1821 S. Bascom Ave., #301 Campbell, CA 95008 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.26 | FedEx | | PO Box 7221 Duarte, CA 91009 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.27 | Grainger | | 2261 Ringwood Ave San Jose, CA 95131 | 935.01 | Unsecured | Vendor | No | |
| 3.28 | Grant Phillips Law, PLLC | | 670 Long Beach Blvd Long Beach, NY 11561 | 27,000.00 | Unsecured | Legal | No | |
| 3.29 | Guillermo Silva | | 1610 Maiden Cane Way Los Banos, CA 93635 | 400,000.00 | Unsecured | Sale Agreement with Former Owner | **YES** | $0.00 |
| 3.30 | Harrington Industrial Plastics | | PO Box 676273 Dallas Tx, 75267 | - | Unsecured | Notice Purpose Only | No | |
| 3.31 | Haynie & Company | | 1785 West 2300 South 2nd Floor Salt Lake City, UT 84119 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.32 | HDS White Cap Const. Supply | | PO Box 4944 Orlando, FL 32802 | - | Unsecured | Notice Purpose Only | No | |
| 3.33 | Heffernan Insurance Brokers | | PO Box 4006 Walnut Creek, CA 94596 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.34 | Hilti, Inc. | | PO Box 70299 Philadelphia, PA 19176 | 240.93 | Unsecured | Vendor | No | |
| 3.35 | Hitachi Global Air Power US LLC | | 4659 Las Positas RD Suite A Livermore, CA 94551 | - | Unsecured | Notice Purpose Only | **YES** | $81,166.68 |
| 3.36 | Home Depot | Dept 32-2188824647 | PO Box 9001030 Louisville, KY 40290 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.37 | Kad Technical Services, Inc. | c/o Kenneth Demers | 5566 Tyler Place Fremont, CA 94538 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.38 | Kaiser Foundation Health Plan | | File 5915 Los Angeles, CA 90074 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.39 | Lefevre Welding Inc | | 2511 Isabelle Ave San Mateo, CA 94403 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.40 | Linde Gas & Equipment, Inc | | Dept LA 21511 Pasadena, CA 91185 | - | Unsecured | Notice Purpose Only | No | |
| 3.41 | Michael P. Pappas | | 3063 Salisbury Dr Santa Cruz, CA 95065 | 400,000.00 | Unsecured | Sale Agreement | **YES** | $400,000 |
| 3.42 | Microsoft One | | Microsoft Way Redmond, WA 98052 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.43 | Milpitas Materials Co | | 1125 N. Milpitas Blvd Milpitas, CA 95035 | - | Unsecured | Notice Purpose Only | No | |
| 3.44 | MRC - Rabbit | | PO Box 843760 Los Angeles, CA 90084 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.45 | Oil Changers | | PO Box 847488 Los Angeles, CA 90084 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.46 | On-Site Health & Safety | | PO Box 248947 Oklahoma City, OK 73124 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.47 | Pavion | | 4151 Lafayette Center Drive Suite 700 Chantilly, VA 20151 | - | Unsecured | Security System | No | |
| 3.48 | Pearl Capital | | Washington Blvd 22nd Fl Jersey City, NJ 07310 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.49 | PG&E | | 300 Lakeside Dr. Oakland, CA 94612 | - | Unsecured | Notice Purpose | **YES** | $696.59 |
| 3.50 | Pirtek SFO | | 1997 Burroughs Ave San Leandro, CA 94577 | 390.51 | Unsecured | Vendor | No | |
| 3.51 | Printos Studio | | 74 Race St. San Jose, CA 95126 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.52 | Puretec Industrial Water | | 3151 Sturgis Road Oxnard, CA 93031 | - | Unsecured | Notice Purpose | **YES** | $50,813.98 |
| 3.53 | Red Wing Bus. Advantage | | PO Box 844329 Dallas, TX 75284 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.54 | Republic Services | | 18500 N. Allied Way Phoenix, AZ 85054 | - | Unsecured | Trash Services | No | |
| 3.55 | Ryan Herco Products Corp | | PO Box 74007459 Chicago, IL 60674 | - | Unsecured | Notice Purpose | No | |
| 3.56 | Santa Clara Windustrial | | 1525 Walsh Ave Santa Clara, CA 95050 | - | Unsecured | Notice Purpose | No | |
| 3.57 | Sheppard Mullin Richter & Hampton | | PO Box 840728 Los Angeles, CA 90084 | 66,871.23 | Unsecured | Attorneys Fees | **YES** | $69,949.57 |
| 3.58 | Spectrum VOIP | | 7600 Windrose Ave St. 350 Plano, TX 75024 | - | Unsecured | Phone Services | No | |
| 3.59 | Steve Harmsen | | 26 N. State Street Salt Lake City, UT 84103 | 439,000.00 | Unsecured | Loans to Company | No | |
| 3.60 | Swagelok | | PO Box 51624 Los Angeles, CA 90051 | 2,090.38 | Unsecured | Vendor | No | |
| 3.61 | Sweeny Mason | | 983 University Ave., Ste. C104 Los Gatos, CA 95032 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.62 | SYS IT | | 303 Twin Dolphin Dr. Suite 600 Redwood City, CA 94065 | - | Unsecured | IT Dept | No | |
| 3.63 | Traveler's Claim | | 13607 Collections Center Chicago, IL 60693 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.64 | Travelers CL Remittance Center | | PO Box 660317 Dallas, TX 75266 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.65 | U Line | | 8800 Military Rd Reno, NV 89506 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.66 | U-Save Rockery | | 598 E. Gish Rd San Jose, CA 95112 | - | Unsecured | Notice Purpose | No | |
| 3.67 | Unified Cleaning Services | | 3000 Haas Drive Aptos, CA 95003 | 1,570.00 | Unsecured | Vendor | No | |
| 3.68 | United Concrete Cutting Inc | | 2127 Jamaica Way San Jose, CA 95122 | 31,757.00 | Unsecured | Vendor | No | |
| 3.69 | University Electric | | 1500 Martin Ave Santa Clara, CA 95050 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.70 | Verizon Wireless | | PO Box 660108 Dallas, TX 752266 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.71 | VRC | | 5384 Poplar Ave Suite 500 Memphis, TN 38119 | - | Unsecured | Shredding Services | No | |
| 3.72 | VRC Companies LLC | Vital Records Dept 5874 | PO Box 11407 Birmingham, AL 35246 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.73 | West America Finance | | 26 North State Street Salt Lake City, UT 84103 | 50,000.00 | Unsecured | Loans to Company | **YES** | $1,485,000.00 |
| 3.74 | Western States Fire Protection Co | Attn Brad Smith | 470 Division Street Campbell, CA 95008 | - | Unsecured | Vendor - Notice purpose only | No | |
| 3.75 | Wex Bank | | PO Box 6293 Carol Stream, IL 60197 | 6,502.02 | Unsecured | Vendor | **YES** | $8,031.43 |
| 3.76 | William Butler | | 730 Mora Dr. Los Altos, CA 94024 | 495,000.00 | Unsecured | Loans to Company | **YES** | 558,709.70 |
| 3.77 | WinSupply of Silicon Valley | | 2514 Channing Ave San Jose, CA 95131 | - | Unsecured | Vendor | No | |
| 3.78 | Wolfpack Insurance Services | | PO Box 156 Belmont, CA 94002 | - | Unsecured | Vendor - Notice purpose only | No | |
| | | | | | **TOTAL** | | | **$3,233,621.58** * |

| | |
|---|---|
| *** This does not include the following unsecured claims:** | |
| **Claim 4 - Great Americawn Financial Services** | **$12,496.00** |
| **Claim 11 - American Contractors Indemnity Co.** | **$0.00** |
| **TOTAL** | **$12,496.00** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **DISCLOSURE STATEMENT DESCRIBING DEBTOR-IN-POSSESSION'S CHAPTER 11 PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 10, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR: Aaron E. De Leest** adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR LIVE OAK BANKING COMPANY:** Bernard J Kornberg bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **US TRUSTEE: United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood** dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **June 10, 2026**, I delivered the document described above via email to Stretto, Debtor's claims and noticing agent, for service on all interested parties at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. Upon completion of the service by Stretto to Debtor, Stretto will file a Certificate of Service listing the address served.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
23832 ROCKFIELD BLVD., SUITE 245
LAKE FOREST, CA 92630-2884

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 10, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE MARK D. HOULE
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 10, 2026 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| Date | Printed Name | Signature |

# EXHIBIT 11

DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for Debtor and Debtor-in-Possession,
PAPPAS PIPING SERVICE, INC.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

In re

PAPPAS PIPING SERVICE, INC.,

Debtor.

Case No. 8:26-bk-10033-MH

Chapter 11

**NOTICE OF ENTERED ORDER GRANTING DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING CHAPTER 11 PLAN OF REORGANIZATION AND SETTING CONFIRMATION SCHEDULE**

[ORDER – DOCKET NO. 151]

**Disclosure Statement Hearing**
Date: August 4, 2026
Time: 1:30 p.m.
Courtroom: 6C
Place: 411 W. Fourth St., Santa Ana, CA 92701

**Plan Confirmation Hearing**
Date: October 27, 2026
Time: 1:30 p.m.
Courtroom: 6C
Place: 411 W. Fourth St., Santa Ana, CA 92701

/ / /

/ / /

TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that on August 12, 2026, as Docket No. 151, the Court entered the Order Granting Debtor and Debtor-in-Possession's Motion for Approval of Disclosure Statement Describing Debtor's Liquidating Chapter 11 Plan of Reorganization and Setting Confirmation Schedule ("Scheduling Order").

As set forth in the Scheduling Order, the Court scheduled the following deadlines:

1. Debtor is to serve the solicitation package, including the Plan and ballots, by August 18, 2026. A true and correct copy of the ballot is attached as **Exhibit "1."**

2. Completed ballots must be served on the Debtor's counsel such that they are received on or before the close of business on September 8, 2026.

3. The deadline for the Debtor to file its confirmation brief, memorandum of points and authorities in support of plan confirmation, and evidence of feasibility is September 22, 2026.

4. The deadline for the Debtor to file a ballot summary attaching copies of the ballots is September 22, 2026.

5. The deadline for creditors, the U.S. Trustee, or any other party in interest, to file any opposition or response to plan confirmation is October 6, 2026.

6. The deadline to file a reply to any opposition or response to plan confirmation, if any, is October 13, 2026.

7. A Confirmation Hearing is set for October 27, 2026 at 1:30 p.m.

A true and correct copy of the Scheduling Order is attached as E**xhibit "2."**

Dated: August 17, 2026

MARSHACK HAYS WOOD LLP

By: */s/ David A. Wood*
DAVID A. WOOD,
MATTHEW W. GRIMSHAW
AARON E. DE LEEST
SARAH R. HASSELBERGER
Attorneys for Debtor and Debtor-in-Possession,
Pappas Piping Service Inc.

# Exhibit "1"

| Attorney or Party Name, Address: | FOR COURT USE ONLY |
|---|---|
| DAVID A. WOOD, #272406<br>dwood@marshackhays.com<br>MATTHEW W. GRIMSHAW, #210424<br>mgrimshaw@marshackhays.com<br>AARON E. DE LEEST, #216832<br>adeleest@marshackhays.com<br>SARAH R. HASSELBERGER, #340640<br>shasselberger@marshackhays.com<br>MARSHACK HAYS WOOD LLP<br>870 Roosevelt, Irvine, CA 92620<br>Telephone: 949-333-7777<br>Facsimile: 949-333-7778<br><br>Attorneys for Debtor and Debtor-in-Possession | |
| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>SANTA ANA DIVISION | Case No. 8:26-bk-10033-MH<br><br>Chapter 11 |
| In re:<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor and Debtor-in-Possession. | Plan Confirmation Hearing:<br>Date: October 27, 2026<br>Time: 1:30 p.m.<br>Ctrm: 5C<br>Address: 411 W. Fourth Street<br>Santa Ana, CA 92701 |

**BALLOT FOR ACCEPTING OR REJECTING CHAPTER 11 PLAN**

1. Plan proponent, Pappas Piping Service, Inc. ("Debtor"), has filed a Plan of Reorganization ("Plan"). By this ballot, you have the right to vote on acceptance or rejection of the Plan.

2. If confirmed by the Court, the Plan referred to in this ballot will alter your legal rights. The Plan can be confirmed if it is accepted by the holders of at least two-thirds in the amount and more than one-half in number of allowed claims in each class of creditors and the holders of at least two-thirds in amount of equity security interests in each class voting on the Plan. *See* 11 U.S.C. § 1126 ("Acceptance of plan").

3. If the requisite acceptances are not obtained in each voting class, the Court may nevertheless confirm the Plan if the Court finds the Plan accords fair and equitable treatment to each class rejecting it and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

4. The Court has approved the Debtor's Disclosure Statement in Support of Plan of Reorganization ("Disclosure Statement"). The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have the Disclosure Statement, you may obtain a copy from either the clerk of the Court or upon request made to counsel for the Debtor whose contact information is in the top-left corner of this Ballot. Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

5. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.

   **Your claim/equity interest has been placed in a Class under the Plan. If you hold claim(s) or equity interest(s) in more than one Class, please return a completed ballot for each Class in which you are entitled to vote.**

6. The deadline by when Ballots to accept or reject the Plan must be returned to Debtor such that they are actually received by Debtor's counsel is on or before the close of business on **September 8, 2026**, either by mail at the following address: Marshack Hays Wood LLP, Attn. David A. Wood, Matthew W. Grimshaw, Aaron E. de Leest, and Sarah R. Hasselberger, 870 Roosevelt, Irvine, CA 92620; or by email or at the following email addresses: dwood@marshackhays.com, mgrimshaw@marshackhays.com, adeleest@marshackhays.com, and shasselberger@marshackhays.com.

7. **If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**ACCEPTANCE OR REJECTION OF THE PLAN**

8. Complete the appropriate line below that describes your claim or equity interest *[select only one]*:

The undersigned is the holder of a Class *[insert Class]* ________ *[check one]* ☐ **secured** ☐ **priority** ☐ **unsecured non-priority** claim against the Debtor in the unpaid amount of $ ________________________________.

**BALLOT FOR ACCEPTING OR REJECTING A PLAN**

The undersigned (check one box only):

☐ ACCEPTS THE PLAN ☐ REJECTS THE PLAN

Dated:________________________

Print or type name of Creditor:___________________________________

Authorized Signature:___________________________________________
Name of person signing this ballot

Title (if corporation or partnership):_______________________________

Address:___________________________________________
___________________________________________
___________________________________________
Telephone Number:___________________________________
Fax Number:________________________________________

FOR YOUR COMPLETED AND SIGNED BALLOT TO COUNT, IT MUST BE MAILED OR E-MAILED TO DEBTOR'S COUNSEL TO BE RECEIVED ***ON OR BEFORE THE CLOSE OF BUSINESS ON SEPTEMBER 8, 2026.***

RETURN THIS BALLOT TO:

DAVID A. WOOD
dwood@marshackhays.com
MATTHEW W. GRIMSHAW
mgrimshaw@marshackhays.com
AARON E. DE LEEST
adeleest@marshackhays.com
SARAH R. HASSELBERGER
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620

# Exhibit "2"

DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
SARAH R. HASSELBERGER, #340640
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for
PAPPAS PIPING SERVICE, INC.

FILED & ENTERED

AUG 12 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY jle DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>PAPPAS PIPING SERVICE, INC.,<br><br>Debtor. | Case No. 8:26-bk-10033-MH<br><br>Chapter 11<br><br>ORDER GRANTING DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING CHAPTER 11 PLAN OF REORGANIZATION AND SETTING CONFIRMATION SCHEDULE<br><br><u>Disclosure Statement Hearing</u><br>Date: August 4, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6C<br>Place: 411 W. Fourth St., Santa Ana, CA 92701<br><br><u>Plan Confirmation Hearing</u><br>Date: October 27, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6C<br>Place: 411 W. Fourth St., Santa Ana, CA 92701 |

/ / /

/ / /

On August 4, 2026, the Court held a hearing on the *Debtor and Debtor-in-Possession's Motion for Approval of Disclosure Statement Describing Debtor's Liquidating Chapter 11 Plan of Reorganization* ("Motion"), filed by the debtor and debtor-in-possession, Pappas Piping Service, Inc. ("Debtor"), on June 10, 2026, as Docket No. 127. All appearances were noted on the record.

Having reviewed the Motion, the *Debtor-in-Possession's First Amended Chapter 11 Plan of Reorganization* ("Plan"), filed by the Debtor on August 11, 2026, as Docket No. 148, the *Disclosure Statement Describing Debtor-in-Possession's First Amended Chapter 11 Plan of Reorganization* ("Disclosure Statement"), filed by the Debtor on August 11, 2026, as Docket No. 149, and the record in this case, the Court enters its order as follows:

IT IS ORDERED:

1. The Motion is granted.

2. The Disclosure Statement is approved.

3. The deadline for the Debtor to serve the solicitation package, including the Plan and ballots, is August 18, 2026.

4. Completed ballots must be served on the Debtor's counsel such that they are received on or before the close of business on September 8, 2026.

5. The deadline for the Debtor to file its confirmation brief, memorandum of points and authorities in support of plan confirmation, and evidence of feasibility is September 22, 2026.

6. The deadline for the Debtor to file a ballot summary attaching copies of the ballots is September 22, 2026.

7. The deadline for creditors, the U.S. Trustee, or any other party in interest, to file any opposition or response to plan confirmation is October 6, 2026.

8. The deadline to file a reply to any opposition or response to plan confirmation, if any, is October 13, 2026; and

/ / /

/ / /

/ / /

/ / /

9. A hearing on plan confirmation will be held on October 27, 2026, at 1:30 p.m.

###

Date: August 12, 2026

Mark Houle
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **NOTICE OF ENTERED ORDER GRANTING DEBTOR AND DEBTOR-IN- POSSESSION'S MOTION FOR APPROVAL OF DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING CHAPTER 11 PLAN OF REORGANIZATION AND SETTING CONFIRMATION SCHEDULE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 17, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTOR: Aaron E. De Leest** adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR: LIVE OAK BANKING COMPANY: Bernard J Kornberg** bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **US TRUSTEE: United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood** dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdri v e.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **August 17, 2026**, I delivered the document described above via email to Stretto, Debtor's claims and noticing agent, for service on all interested parties at the last known addresses in this bankruptcy case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed. Upon completion of the service by Stretto to Debtor, Stretto will file a Certificate of Service listing the address served.

**DEBTOR**
PAPPAS PIPING SERVICE, INC.
23832 ROCKFIELD BLVD., SUITE 245
LAKE FOREST, CA 92630-2884

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 17, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY - VIA PERSONAL DELIVERY**
HONORABLE MARK D. HOULE
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 6135 / COURTROOM 6C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 17, 2026 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| Date | Printed Name | Signature |