David N. Chandler, Jr. SBN 235427
DAVID NYLE CHANDLER P.C.
1747 Fourth Street
Santa Rosa, CA 95404
Telephone: (707) 528-4331

Attorney for William D. Butler

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE No. 25-51814 CMP |
| WILLIAM DOKOS BUTLER and ANNE HARMSEN BUTLER,<br><br>Debtors. / | CHAPTER 11<br><br>OPPOSITION TO MOTION TO DISMISS CHAPTER 11 CASE FILED BY BANK OF AMERICA, N.A.<br>Date: October 23, 2026<br>Time: 10:00 a.m.<br>Place: 1300 Clay Street<br>Courtroom 215<br>Oakland, California 94612<br>or via Zoom |

Debtor William D. Butler, by and through Counsel, hereby opposes the Motion to Dismiss Chapter 11 Case filed by Bank of America, N.A. [Doc. # 73] , and represents:

I. INTRODUCTION

Debtor William D. Butler (hereinafter “Mr. Butler”) acknowledges that certain disclosures filed in the case require amendment and that monthly operating reports for the months of July, 2026 and August, 2026 were filed after the date they were due. Mr. Butler does not ask the court to excuse the delay. However, weighing against dismissal or conversion are the steps already taken by Mr. Butler and the steps underway to preserve value for the bankruptcy estate and to address creditor claims and to cure disclosure

deficiencies.

The Debtors' Los Altos residence is under an executed $5.2 million purchase contract. Both senior secured lenders, Citadel Servicing and Live Oak Bank, agreed to proceed with a proposed sale at that price or better through a Court-supervised § 363 process. Competitive overbidding could further increase net proceeds, further reduce obligations for which the Debtors remain liable, and furtehr enhance the resources available to address other creditor claims.

Additionally, Pappas Piping Service, Inc. ("Pappas") proposed a plan of reorganization contemplating 100% payment of creditors over five-years. There are claims asserted by Mr. Butler of approximately $558,709.70 against the Pappas estate, and the Debtors anticipate combined compensation of approximately $175,000 annually from Pappas future operations. These prospective amounts are contingent, and do not represent immediately available funds, but nonetheless warrant consideration relative to what is in the best interests of the bankruptcy estate.

Mr. Butler requests that the Court either deny the Motion to Dismiss or, if the Court finds cause, give consideration to the timing of any appropriate statutory remedy to afford the parties a reasonable opportunity to complete the sale of real property and fully address the disclosure and reporting requirements.

## II. BACKGROUND

### A. <u>DPD Closure and Loss of Employment</u>.

Decorative Plumbing Distributors ("DPD") experienced substantial financial difficulties, entered bankruptcy, was converted from Chapter 11 to Chapter 7, and ceased operations. Both Debtors lost their employment and compensation from DPD. Historical

compensation of approximately $100,000 to Mr. Butler and $125,000 to Ms. Butler no longer represents sources income for the Debtors.

DPD's ledger reflects a "Loan from W. Butler" balance of approximately $1,336,824.92 on December 31, 2024. The claim and its ostensible value should be disclosed, but Mr. Butler anticipates little or no realizable recovery from the DPD estate.

B. Bankruptcy, Divorce, and Separate Households.

The Debtors filed their joint Chapter 11 petition November 20, 2025. Their divorce was finalized in Utah on December 16, 2025. Ms. Butler established a separate household in Utah in 2025, with reported rent of approximately $3,000 and utilities of approximately $400 monthly. Schedules and monthly operating reports might be amended to accurately reflect these circumstances.

C. Los Altos Property

The residence at 730 Mora Drive, Los Altos, California, was marketed before the petition and is now under an executed contract for $5.2 million. Citadel Servicing holds the first mortgage, and Live Oak Bank asserts the second-position obligation. Both lenders agreed to the terms of a § 363 sale at the contracted price or better, subject to the required approvals. A proposed overbid process would permit competitive offers. Citadel previously obtained relief from stay, but the Debtors continue to seek an orderly sale rather than foreclosure because a sale is in the best interests of the Debtors and the bankruptcy estate.

D. Pappas Restructuring.

Pappas is the debtor in its own Chapter 11 case. Its proposed plan of reorganization contemplates 100% repayment of creditor claims over five years, subject to confirmation and performance. Mr.

Butler is an officer and has asserted claims for loans and expense reimbursements. Anticipated compensation for the two Debtors is approximately $175,000 combined annually, with the allocation of same not yet being finalized.

## III. LEGAL STANDARD

§ 1112(b)(1) authorizes dismissal or conversion for 'cause', whichever is in the best interests of creditors and the estate. Bank of America invokes § 1112(b)(4)(A), substantial or continuing loss or diminution together with no reasonable likelihood of rehabilitation; § 1112(b)(4)(B), gross mismanagement; and § 1112(b)(4)(F), unexcused failure to meet reporting requirements. The Court should assess the relevant evidence for each alleged ground for dismissal.

## IV. RESPONSE TO FINANCIAL DISCLOSURE ALLEGATIONS

### A. Pappas Claims and Compensation.

| Underlying claim | Amount |
|---|---|
| Original principal | $495,000.00 |
| Accrued interest | $42,923.70 |
| Loan principal plus interest | $537,923.70 |
| Expense reimbursement | $20,786.00 |
| Total asserted claims | $558,709.70 |

Pappas' disclosures of debts separately list the original $495,000 principal and the $537,923.70 interest-inclusive balance owing, creating an apparent duplicate entry. The debt should be counted twice. Claim classification, including any secured status, remains subject to reconciliation. The proposed Pappas plan distributions and anticipated compensation represent potential resources for the bankruptcy estate in this case. The $175,000

annual compensation is combined for both Debtors, although the precise allocation has not yet been determined.

B. Ormond Corporation and Retirement Ownership.

The Ormond Corporation is held through Mr. Butler's 401(k) arrangement and, through an intermediate entity, it holds an interest in Pappas. The ownership chain, interests, and valuations must be disclosed accurately, and Mr. Butler is prepared to amend the disclosure based on his knowledge and understanding. Aggregate retirement assets were previously reported at approximately $945,462.23, including a substantial Ormond component. An updated annual Ormond retirement valuation is expected later in 2026.

C. HFLP Holding Company LLC.

Ms. Butler holds approximately 13% of HFLP. Bank of America disputes the substantial reduction in its reported value. Book value, fair market value, operating-agreement restrictions, and any minority or liquidity discount are relevant factors, although quantifying the factors is largely a subjective process.

D. DPD Compensation, Loan and Credits.

Mr. Butler will disclose historical DPD salaries accurately, while distinguishing those former wages from current income. The DPD loan ledger shows a $1,336,824.92 balance at December 31, 2024 and approximately $180,000 in credits between June and September 2024. The credits must be reconciled with underlying records before being characterized as cash repayments. The face value of the loan is distinct from its likely nominal collectible value.

E. Closed Bank of America Accounts.

Bank of America identifies seven accounts closed on or about

June 18, 2025, account nos. ending 3831, 4131, 4186, 4748, 6565, 5096 and 5122. The subject accounts were family accounts associated with children that werre closed following termination of the family's banking relationship. The Debtors did not own the accounts or the funds in the accounts. The Debtors were only associated with the accounts because they were opened while the Debtors' children were minors.

F. Merrill Lynch Accounts.

| Account | January 21, 2025 reported value |
|---|---|
| Merrill XX-X4923 | $504,500.77 |
| Merrill XXX-X2465 | $17,253.43 |
| Total | $521,754.20 |

To date, the disposition of these investments remains under review with the former Merrill adviser who is working with available records. Absent specific evidence of a transaction, it is premature if not completely misplaced to suggest that funds went to Chase or were otherwise spent on the Debtors' living expenses. Merrill Lynch savings account no. XXXX2535 also needs to be reconciled.

G. Fidelity and Schwab.

Bank of America identified approximately $19,309.63 in cash and $52,795.41 in securities moved from Fidelity account no. XXX1614 in May and June 2025. Mr. Butler believes that the securities were moved to a disclosed Schwab account and the funds were subsequently used for living expenses. The actual transfers, ownership, and ultimate disposition require statement-level reconciliation which has not yet occurred, but which Mr. Butler is prepared to do.

H. Mountain America Transfer to Chase.

Bank of America questioned a March 6, 2026 Mountain America withdrawal of $72,484.97. Mr. Butler believes the amount was transferred to Chase account no. XXXX4886. If the transfer is accompanied by matching bank records, this constitutes an internal transfer rather than a depletion of resources or diminution in value.

I. SBA EIDL and American Express

Amendments to the Statement of Financial Affairs will be prepared for Home Plumbing SBA EIDL payments and approximately $26,185.41 in American Express payments during the relevant prepetition period. However, there first needs to be a thorough review of the underlying records.

V. DIMINUTION, REHABILITATION, AND THE PROPERTY SALE

A. Pappas Provides a Potential Financial Path.

The proposed Pappas plan contemplates full creditor payment over five-years. Mr. Butler's underlying asserted claims total approximately $558,709.70, and the Debtors anticipate combined annual compensation of approximately $175,000. Although distributions and compensation are not guaranteed, they potentially represent significant value for the bankruptcy estate.

B. A $5.2 Million § 363 Sale Benefits Creditors and the Estate.

The executed $5.2 million contract, cooperation of Citadel and Live Oak, and an overbid process represents a significant benefit to the bankruptcy estate and creditors. The objective is to maximize value under Court supervision, with transparent accounting for senior liens, taxes, costs, and any remaining proceeds.

Maximizing net sale proceeds will benefit all creditors, not just those secured by the property. To the extent sale proceeds reduce enforceable obligations for which the Debtors are liable, the remaining debt burden decreases, potentially increasing a pro rata distribution to creditors under a Chapter 11 Plan or in a Chapter 7 liquidation. A foreclosure by Citadel, in contrast, likely will produce a lower net realization for junior lien-holders and/or additional costs, which will increase unsecured deficiency claims.

C. Bank of America Writ of Attachment.

Bank of America obtained prejudgment attachment orders in the Santa Clara County civil action and recorded notices against the 730 Mora property within the 90-days preceding the filing of this case. Mr. Butler does not dispute that those orders were obtained and recorded. However, it appears the resulting judicial lien of Bank of America is avoidable as a preferential transfer under § 547(b).

Substantial senior liens will likely exhaust sale proceeds, leaving no economic recovery from a sale for Bank of America. Nonethess, Bank of America will benefit from a sale of real property because significant debts will be satisfied from a sale, which wculd theoretically increase the return to Bank of America under a Chapter 11 Plan or in a Chapter 7 liquidation.

## VI. GROSS MISMANAGEMENT AND CORRECTIVE ACTIONS

Bank of America mis-characterizes transfers among accounts and entities as gross mismanagement. The Debtors acknowledge reporting gaps which require reconciliation. However, each transaction needs to be independently assessed. Internal transfers do not inherently diminish aggregate resources. Furthermore, an uncollectible loan

receivable is not liquid wealth, historical salaries are not current earnings and retirement ownership requires deliberate treatment to comply with applicable legal requirements. Mr. Butler is committed to accurate disclosure notwithstanding any inherent complexities and the need to reconcile transactions.

The Debtors' divorce and their living in separate households complicated reporting and budgeting. The Debtors are in the process of correcting identified accounts, payments, ownership interests, and valuations. Mr. Butler vehemently disputes Bank of America's allegations of intentional concealment.

## VII. MONTHLY OPERATING REPORTS

Bank of America correctly identified the July and August 2026 monthly operating reports as being unfiled when its Motion to Dismiss was filed on September 25, 2026. Monthly Operating Reports for July, 2026 [Doc. # 87] and August, 2026 [Doc. # 88] were filed on October 7, 2026. Mr. Butler is committed to timely future filings and the correction of any reporting discrepancies.

## VIII. RULE 2004 EXAMINATION AND PRODUCTION

The Debtors submit to examination under Rule 2004 on July 22, 2026. Mr. Butler produced responsive documents available to him and pursued additional third-party records, including HFLP information. Bank of America disputes completeness of the production, although it has not filed a motion to compel. Nonetheless, Mr. Butler remains willing to discuss any categories of documents with Bank of America that it contends were not fully produced, and to produce responsive documents within his possession, custody or control.

## IX. DISMISSAL, CONVERSION, AND CREDITORS' INTERESTS

Dismissal or conversion to Chapter 7 would likely derail the contemplated sale of the real property, which will likely then increase the unsecured deficiency claims of creditors whose liens are exhausted from a foreclosure of the senior-most Deed of Trust. Mr. Butler desires the opportunity to proceed with the sale, subject to completing any necessary amendments to the Schedules and/or Statement of Financial Affairs, complying with Chapter 11 reporting requirements and completing the sale by a date-certain.

## XII. CONCLUSION

Based on the foregoing, Mr. Butler respectfully requests that the Court deny Bank of America's Motion to Dismiss or, in the alternative, delay any order of dismissal or conversion of the case until at least December 31, 2026, conditional on the Debtors timely amending Schedules and/or Statement of Financial Affairs and timely submitting future Monthly Operating Reports.

Respectfully submitted,

Dated: 10/9/2026 DAVID NYLE CHANDLER P.C.

By: */s/ David N. Chandler, Jr.*
DAVID N. CHANDLER, Jr.
Attorney for William D. Butler